**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC. DBA THE FAIR HOUSING CENTER** | : | |
| **326 N. Erie Street** | : | |
| **Toledo, OH 43604** | : | |
| | | **Judge:** |
| **and** | : | **Case No.** |
| **SILMA ESPINOSA** | : | |
| **26777 Lakevue Drive, Unit 17** | | |
| **Perrysburg, OH 43551** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | | |
| | : | |
| **EDWARD ROSE DEVELOPMENT** | : | **COMPLAINT** |
| **COMPANY, LLC** | | <u>**JURY TRIAL DEMANDED**</u> |
| **4400 Easton Commons Way, #125** | : | |
| **Columbus, OH 43219** | | |
| **Defendant.** | : | |

---

Now come Plaintiffs, Fair Housing Opportunities of Northwest Ohio, Inc. DBA The Fair Housing Center or Toledo Fair Housing Center ("Plaintiff" or "The Fair Housing Center" or "TFHC"), and Silma Espinosa ("Plaintiff" or "Plaintiff Espinosa"), (collectively referred to as "Plaintiffs"), by and through counsel, and hereby state for their Complaint the following:

## INTRODUCTION

1.  Plaintiffs bring this action for declaratory, injunctive, and monetary relief against Edward Rose Development Company, LLC, ("Defendant"), for discrimination on the basis of

1

disability in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*., the federal Fair Housing Amendments Act of 1988 ("FHAA"), and the fair housing laws of the state of Ohio, Ohio Rev. Code § 4112.01, *et seq.*, (collectively the "Fair Housing Laws").

2. This action originates from Defendant's noncompliance with the Fair Housing Laws pursuant to requests for reasonable accommodations for an emotional support animal ("ESA"). Additionally, Defendant's noncompliance with the Fair Housing Laws is the result of Defendant's negligent training and supervision of its property managers, leasing agents, and office staff.

3. An assistance animal is an animal that works, provides assistance, or performs tasks for the benefit of a person with a disability, or that provides emotional support that alleviates one or more identified effects of a person's disability.

4. Assistance animals and ESAs are not pets.[1]

5. The Fair Housing Act requires a housing provider to allow a reasonable accommodation involving an assistance animal or emotional support animal in situations where the request was made to the housing provider by or for a person with a disability; and the request was supported by reliable disability-related information.

6. The Ohio Civil Rights Commission determined that it was probable that Defendant, Edward Rose Development Company, LLC, engaged in an unlawful discriminatory practice on the basis of disability in violation of Chapter 4112 of the Ohio Revised Code.

---

[1] See Assistance Animals, U.S. Department of Housing and Urban Development, https://www.hud.gov/program_offices/fair_housing_equal_opp/assistance_animals (retrieved June 12, 2023)

7.  Defendant denied Plaintiff Espinosa's reasonable accommodation requests for the use of an ESA at their property and subjected Plaintiff Espinosa to different rental terms and conditions than applicants without a disability.

8.  Such violations of the Fair Housing Laws include failure to grant a reasonable accommodation for an ESA; failure to accept the proper documentation for the ESA; failure to engage in an interactive process as required by law; failure to waive pet fees for the ESA; and failure to permit applicants to request a reasonable accommodation without having to first submit an application, pay fees, and sign a lease agreement.

9.  Defendant's policies and procedures for addressing reasonable accommodation requests as described herein are in violation of the Fair Housing Laws, discourage applications from disabled prospective tenants, depress requests for reasonable accommodations, and make housing unavailable for persons with disabilities.

10. Defendant's actions and policies violate the Fair Housing Laws and their rental practices have harsh consequences for persons with disabilities who are routinely denied the opportunity to reside at Defendant's property while being subjected to differential treatment in the terms and conditions of applying for and renting units.

11. Defendant's actions, policies, and practices, as described herein, violate the federal Fair Housing Act, 42 U.S.C. 3601, *et seq*.; and the Ohio Fair Housing Law found at Ohio Rev. Code §4112.02(H), *et seq.*

## PARTIES

12. Plaintiff, Fair Housing Opportunities of Northwest Ohio, Inc. DBA The Fair Housing Center, is a private, non-profit corporation, organized under the laws of the State of Ohio. The Fair Housing Center's mission is to be a nonprofit civil rights agency that promotes

housing choice, the creation of inclusive communities of opportunity, and the protection and expansion of fair housing rights to support strong communities free from housing discrimination.

13. Plaintiff, The Fair Housing Center, routinely advocates on behalf of clients when housing providers violate the Fair Housing Laws; provides training and education to housing providers to avoid discrimination; and conducts investigations, including testing, to ensure civil rights law are being followed in housing accommodations, services, and transactions.

14. Plaintiff, Silma Espinosa, is a resident of Wood County, Ohio and prospective applicant at Defendant's apartment complex, known as Tracy Creek Apartment Homes, located at 29181 Tracy Creek Drive, Perrysburg, OH 43551. Plaintiff Espinosa is protected from discrimination on the basis of disability as Plaintiff Espinosa has a mental disability and utilizes an ESA.

15. Defendant, Edward Rose Development Company, LLC, is a large real estate development and property management company doing business in Ohio and Michigan.  Defendant is incorporated in the State of Michigan and has a physical presence in Wood County, Ohio. Defendant, Edward Rose Development Company, LLC, owns and operates the apartment complex known as Tracy Creek Apartment Homes, located at 29181 Tracy Creek Drive, Perrysburg, OH 43551 (the "Subject Property").

16. In acting or omitting to act as alleged herein, each Defendant was acting through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees, officers, and/or agents.

17. In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority

pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by Defendant as principal.

18. A housing provider is vicariously liable for discriminatory housing practices by their agents or employees, "regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law."[2]

## JURISDICTION AND VENUE

19. Jurisdiction is appropriate in that this civil action is brought under the federal Fair Housing Act ("FHA") and federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601, *et seq.*

20. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the complaint raises federal questions under the FHA and FHAA.

21. This Court has supplemental jurisdiction over related state law claims, Ohio Rev. Code § 4112, *et seq.* (the "Ohio Fair Housing Act"), and tort claims, under 28 U.S.C. § 1367.

22. Defendant is subject to the jurisdiction of this Court as they are "Persons" under the FHA and Ohio Fair Housing Act, and the acts described herein occurred in Perrysburg, Wood County, Ohio.

23. Additionally, Defendant is subject to the jurisdiction of the Court as they conduct business across Ohio, including but not limited to: owning property, managing property, leasing property, and performing contractual obligations in Ohio.

24. Venue is proper in that the Defendant's discriminatory acts occurred primarily in Perrysburg, Wood County, Ohio.

---

[2] Code of Federal Regulations Part 100 – Discriminatory Conduct Under the Fair Housing Act, https://www.govinfo.gov/content/pkg/CFR-2017-title24-vol1/xml/CFR-2017-title24-vol1-part100.xml.

25. Wherefore, Plaintiff respectfully request that this honorable Court take jurisdiction of this Complaint and award such relief as is appropriate under the federal and state Fair Housing Laws.

## FACTS

26. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 25 as if fully restated herein.

27. Plaintiff Espinosa is a person with a disability under the Fair Housing Laws.

28. Plaintiff Espinosa and their spouse both utilize the assistance of an ESA.

29. Plaintiff Espinosa sought housing with Defendant at Tracy Creek Apartments (the "Subject Property") in June 2021.

30. Plaintiff Espinosa contacted Defendant at Tracy Creek Apartments, the Subject Property, because it was in a perfect location and met their needs.

31. Defendant's property manager, Mary Lynn Bick, asked whether Plaintiff Espinosa had any pets.

32. Plaintiff Espinosa notified Defendant that they and their spouse each had an ESA.

33. Defendant's property manager falsely stated, "Well, that is basically a pet."

34. Plaintiff Espinosa asked about making a reasonable accommodation request to have their ESAs at the Subject Property and to waive any pet fees.

35. Defendant's property manager stated that pet fees may be waived if Plaintiff Espinosa's physician completed and submitted Defendant's verification form directly to the Defendant.

36. Defendant's property manager made clear that Defendant would only accept verification on their company form rather than a letter from the health provider.

37. Plaintiff Espinosa notified Defendant that they were in possession of a verification letter from their therapist regarding the need for their emotional support animal.

38. Defendant stated that their company policy was to obtain the physician information from the applicant and work directly with the medical provider to obtain the verification.

39. Defendant notified Plaintiff Espinosa that the verification form from a therapist would not be sufficient nor was it compliant with Defendant's company policy.

40. Defendant further stated that their policy is to require the use of their company verification form, which includes direct communication with the medical practitioner.

41. After this interaction, Defendant failed to provide Plaintiff Espinosa with general information on the apartments via email as was requested during their initial discussion.

42. Defendant's statements and failure to follow up discouraged Plaintiff Espinosa from applying for or renting a unit with Defendant.

43. Plaintiff Espinosa then contacted Plaintiff, The Fair Housing Center, to seek guidance regarding Plaintiff Espinosa's rights under the Fair Housing Laws.

44. Plaintiff, The Fair Housing Center, researched the issue, investigated Defendant, reviewed documents, advised Plaintiff Espinosa, and conducted testing at the Subject Property.

45. The Fair Housing Center's testing showed that Defendant's policy is not to consider reasonable accommodation requests for ESAs until an applicant has applied for, been approved for, and signed a lease for an apartment.

46. Testing further showed that Defendant's policy is that a tenant or prospective tenant's physician must directly provide Defendant's verification form to Defendant.

47. Testing uncovered a consistent pattern of conduct by Defendant in violation of the Fair Housing Laws when responding to reasonable and necessary accommodation requests.

48. On May 6, 2022, Plaintiff Espinosa filed an administrative complaint with the Ohio Civil Rights Commission (the "Commission").

49. Plaintiff, The Fair Housing Center, also filed an administrative complaint with the Commission on that same date.

50.  The Commission completed a thorough investigation of Defendant's actions and housing policies, practices, and services related to this Complaint.

51. The Commission found that Defendant did not engage in the interactive process to reasonably accommodate Plaintiff Espinosa.

52. The Commission further found that Defendant's policies and procedures of not considering a reasonable accommodation request until after a prospective applicant has applied for, been approved, and signed a lease agreement deters persons with disabilities from accessing housing at Tracy Creek Apartment Homes.

53. The Commission further found that Defendant's policies and procedures of requiring a doctor's verification directly to management was overly restrictive and not compliant with the Fair Housing Act's requirements for requesting reasonable accommodations.

54. On or around February 9, 2023, the Commission issued a Letter of Determination, attached as Exhibit 1, finding that it was probable that Defendant engaged in an unlawful discriminatory practice in violation of Ohio Rev. Code § 4112.

55. Defendant's conduct and policies violate the Fair Housing Laws and discourage prospective applicants with disabilities from applying for or leasing units with Defendant which reduces housing choice for tenants with disabilities like Plaintiff Espinosa.

56. Defendant failed to properly train or supervise its property managers, leasing agents, and office staff which resulted in injury to Plaintiffs.

57. Defendant's failure to properly train and supervise its property managers, leasing agents, and office staff results in discriminatory treatment in processing applications and granting reasonable accommodations.

**INJURY TO PLAINTIFFS**

58. Plaintiff requested reasonable accommodations to Defendant's policies and procedures regarding emotional support animals.

59. Plaintiff Espinosa utilizes an ESA for emotional and social support and wellbeing.

60. Defendant denied the requested accommodation, and as a result, Plaintiff Espinosa was denied equal housing opportunity.

61. Plaintiff Espinosa was subjected to differential treatment in the terms, conditions, privileges, and services in applying for and renting a unit compared to non-disabled residents.

62. As a direct, proximate, and foreseeable result of Defendant's discriminatory conduct as described herein, Plaintiff Espinosa suffered and continues to suffer substantial harm and injury, economic and non-economic.

63. As a direct, proximate, and foreseeable result of Defendant's actions as described herein, Plaintiff, The Fair Housing Center, has suffered, continues to suffer, and will in the future suffer substantial, particularized, and concrete injuries.

64. Defendant's unlawful actions, conduct, policies, and practices have frustrated and impaired The Fair Housing Center's mission and purpose, forced them to drain their limited and scarce resources, and interfered with their ability to operate.

65. Defendant's conduct frustrated The Fair Housing Center's mission by interfering with their mission-related activities, impairing their ability to achieve their goals of ensuring equal and fair access to housing opportunities, and harming their community.

66. Defendant's discriminatory conduct has forced and required The Fair Housing Center to engage in numerous activities to identify and counteract the Defendant's unlawful conduct, policies, and practices, in order to protect residents from unlawful housing discrimination on the basis of disability.

67. Plaintiff, The Fair Housing Center, has conducted extensive investigations of disability-related issues at Defendant's properties, including testing at the Subject Property to identify and counteract the discriminatory conduct.

68. The Fair Housing Center investigations included research and investigation, site visits, education and outreach, extensive staff discussions, and advocacy and negotiation at the Commission, in an effort to resolve and ameliorate the discriminatory housing actions, policies, practices, and services of Defendant.

69. The Fair Housing Center's diversion of time and resources to address Defendant's discriminatory conduct has forced TFHC to suspend other projects that would have helped to further its mission, including multiple training sessions, investigation of other housing providers, missed speaking engagements, delaying its Analysis of Impediments to Fair Housing Study in the Greater Toledo Area, and other testing-related activity.

70. The Fair Housing Center will continue to divert its scarce resources and have its mission frustrated until Defendant's discriminatory conduct ceases and the harm caused by Defendant on residents and prospective residents are remedied and resolved.

71. Plaintiff Espinosa incurred actual economic and non-economic damages because of Defendant's discriminatory conduct of denying their reasonable accommodation request and subjecting them to different terms, conditions, privileges, and services in renting their unit compared to non-disabled residents.

72. Defendant's failure to properly train and supervise its staff results in discriminatory treatment and injury to Plaintiffs in the application and request for reasonable accommodation process.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF THE FAIR HOUSING ACT OF 1968, as amended

### 42 U.S.C. § 3601, *et seq.*

73. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 72 as if fully restated herein.

74. Defendant's conduct and policies as described in this Complaint constitute a refusal to make reasonable accommodations in rules, policies, practices, or services when such an accommodation may be necessary to afford a person with a disability an opportunity to use and enjoy a dwelling in violation of 42 U.S.C §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

75. Defendant's conduct and policies as described in this Complaint constitute discrimination against the Plaintiffs in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the disability of a person residing in or intending to reside in a dwelling, including through the refusal to make reasonable accommodations, in violation of 42 U.S.C. §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

76. As a direct and proximate result of Defendant's discriminatory conduct and policies, Plaintiffs have suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

77. There are no valid or legitimate reasons for denying Plaintiffs' reasonable accommodation requests or having overly restrictive policies and procedures.

78. Defendant made housing unavailable for Plaintiff Espinosa by failing to consider, or grant reasonable accommodations until after an application was submitted, approved, and a lease agreement was signed.

79. Defendant frustrated the mission of The Fair Housing Center and forced them to divert their scarce and limited resources to remedy the discriminatory conduct of Defendant as referenced in this Complaint.

80. Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, along with attorney fees and costs, in an amount to be determined at trial.

## COUNT II: VIOLATION OF THE OHIO CIVIL RIGHTS ACT
## OHIO REV. CODE § 4112.02(H), *et seq.*

81. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 80 as if fully restated herein.

82. Defendant's conduct and policies as described in this Complaint constitute a refusal to make reasonable accommodations in rules, policies, practices or services when necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, in violation of Ohio Rev. Code §§ 4112.02(H)(15) and 4112.02(H)(19).

83. Defendant's conduct and policies as described in this Complaint constitute an unlawful refusal to rent, denial or withholding of a housing accommodation because of disability in violation of Ohio Rev. Code § 4112.02(H)(1) and (H)(4).

84. Defendant's conduct and policies as described in this Complaint constitute unlawful discrimination in the terms or conditions of transferring, assigning, renting, leasing, or subleasing a unit; or in the furnishing of facilities, services, or privileges, in connection with the occupancy or use of the premises on the basis of disability in violation of Ohio Rev. Code §§ 4112.02(H)(4) and 4112.02(H)(16).

85. As a direct, proximate, and foreseeable result of Defendant's discriminatory conduct and policies, Plaintiffs have suffered damages and are aggrieved persons, as defined in Ohio Rev. Code § 4112.051.

86. There are no valid or legitimate reasons for denying Plaintiffs' reasonable accommodation requests or having overly restrictive policies.

87. Defendant made housing unavailable to Plaintiff Espinosa by failing to consider, or grant reasonable accommodations until after an application was submitted, approved, and a lease agreement was signed.

88. Defendant frustrated the mission of The Fair Housing Center and forced them to divert their scarce and limited resources to remedy the discriminatory conduct of Defendant as referenced in this Complaint.

89. Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, along with attorney fees and costs, in an amount to be determined at trial.

**COUNT III – NEGLIGENT TRAINING AND SUPERVISION**

90. Plaintiffs restate and reallege each and every allegation in Paragraphs 1 through 89 as if

fully restated herein.

91. Defendant owed a duty of care to properly train and supervise its employees, including its property managers and leasing agents at the Subject Property and corporate headquarters, on fair housing laws and non-discriminatory practices.

92. Defendant breached its duty of care by negligently providing inadequate training and failing to supervise its property managers, leasing agents, and office staff, including but not limited to, Mary Lynn Bick, on how to respond and process reasonable accommodation requests.

93. As a direct and proximate result of Defendant's negligent training and supervision, Plaintiff Espinosa suffered harm in the form of unfair and discriminatory treatment during the application process.

94. As a result of Defendant's negligent training and supervision, Plaintiff Espinosa was denied fair and equal housing opportunities with Defendant.

95. As a result of Defendant's negligent training and supervision, prospective applicants with disabilities encounter barriers and obstacles to requesting and receiving approvals for reasonable accommodations with respect to ESAs and waiving pet fees.

96. Plaintiff, The Fair Housing Center, was injured by Defendants' actions as described herein and diverted its scarce resources and had its mission frustrated by Defendant's discriminatory conduct as described herein.

97. Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, due to Defendant's discriminatory conduct and policies as described herein, Plaintiffs respectfully request that this Court grant judgment in their favor, and against Defendant, as follows:

A. Declaring that Defendant's actions violate the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.,* and Ohio Rev. Code § 4112, *et seq.;*

B. Permanently enjoining Defendant from engaging in the conduct described herein and directing Defendant to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

C. Awarding all compensatory damages, economic and non-economic, to Plaintiffs in an amount to be determined by a jury that would fully compensate Plaintiffs for the injuries caused by the conduct of Defendant as alleged herein;

D. Awarding punitive damages to Plaintiffs in an amount to be determined by a jury that would punish Defendant for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

E. Awarding reasonable attorneys' fees and costs as permitted by the Fair Housing Laws; and

F. Awarding such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury on all issues triable as of right.

Respectfully submitted,

/s/ C. Jacob Davis
_____
C. Jacob Davis (#0101745)
Nalls Davis | Attorneys at Law
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 200-7285
Jacob.Davis@nallslaw.com
Attorney for Plaintiffs, Fair Housing Opportunities of
Northwest Ohio, Inc., and Silma Espinosa

/s/ George Thomas
_____
George Thomas (#0083354)
The Fair Housing Center
326 N. Erie Street
Toledo, Ohio 43604
Phone: (419) 243-6163
Email: gthomas@toledofhc.org
Attorney for Plaintiffs, Fair Housing Opportunities
of Northwest Ohio, Inc., and Silma Espinosa

Dated: June 30, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that service of the Summons and Complaint is being made upon Defendant as required by the Federal Rules of Civil Procedure, via certified mail return receipt requested, or another form of proper service at the addresses listed in the caption of this Complaint.

*/s/ C. Jacob Davis*

_____
C. Jacob Davis (#0101745)

**EXHIBIT 1 – LETTER OF DETERMINATION**



# OHIO CIVIL RIGHTS COMMISSION

Governor Mike DeWine

Commissioners:  Lori Barreras, Chair | J. Rita McNeil Danish | William Patmon, III | Madhu Singh | Charlie Winburn
Executive Director Angela Phelps-White

**February 9, 2023**

Silma Espinosa
26777 Lakevue Drive
Perrysburg OH  43551
silma.espinosa@gmail.com



**Mailed Date: February 9, 2023**

Warren Rose, CEO
Edward Rose Development Company
LLC
6101 Newport Road
P.O. Box 3015
Kalamazoo, MI  49003

### LETTER OF DETERMINATION
Silma Espinosa v. Edward Rose Development Company, L.L.C.
TOLH2(41468)05112022/05-22-5840-8

**FINDINGS OF FACT:**

On May 11, 2022, Charging Party, Silma Espinosa filed an affidavit with the Ohio Civil Rights Commission ("Commission") alleging Respondent(s), Edward Rose Development Company, L.L.C. (herein after referred to as the "Respondent") applied different terms and conditions and denied a reasonable accommodation based on disability. All jurisdictional requirements for filing a charge have been met.

Respondent, Edward Rose Development Company, L.L.C. is a real estate development and management company that manages multifamily housing communities. Respondent, Edward Rose Development Company, L.L.C. is the owner and manager of the premises known as Tracy Creek Apartments. Tracy Creek Apartments are located at 29181 Tracy Creek Drive, Perrysburg, Ohio 43551. Tracy Creek Apartments is a three-story apartment complex with 576 units. The subject property was built in 2004.

Charging Party is a disabled individual. Charging Party states her partner and her were looking for a new apartment. Charging Party called Tracy Creek Apartments to ask about vacancies. The property manager asked her if she had any pets. Charging Party stated that her partner and her each have an Emotional Support Animal (ESA). The property manager said "well, that's basically a pet".

Charging Party asked about making a reasonable accommodation request for the ESA's to waive any pet fees. The manager stated that the pet fees would be waived if Charging Party provided Tracy Creek's verification form to her physician and her physician faxed it back to Tracy Creek. Charging Party explained that her partner and her already had verification letters and that Charging Party's is from a therapist. The property manager insisted on the physician's verification form she would provide and that it had to be faxed from the physician.

Charging Party contacted The Toledo Fair Housing Center, and they conducted testing. The testing showed that Tracy Creek's policy is that reasonable accommodation requests for ESA's are not considered until an applicant has applied for, been approved for, and signed a lease for an apartment. It is also the policy of Tracy Creek to request verification be provided directly from a doctor to management. This policy is more restrictive than the Fair Housing Act's requirements to make a reasonable accommodation request, under which the request can be made at any time during the process with verification from a qualified third party.

Silma Espinosa v. Edward Rose Development Company, L.L.C.
TOLH2(41468)05112022/05-22-5840-8
Page 2

This policy deters people with disabilities from accessing housing at Tracy Creek.

Respondent denies any discriminatory conduct in this matter. Respondent states on or around June 9, 2021, Charging Party called Tracy Creek Apartments to inquire about an apartment. Mary Lynn Bick, leasing agent spoke with Charging Party. Bick does not recall the conversation with Charging Party, as this conversation took place approximately a year ago.

Respondent states Bick emailed Charging Party following their conversation. In the email, Bick informed Charging Party of the availability of a two-bedroom apartment along with the rental rate, utilities, and internet. Bick informed Charging Party of the general procedure for requesting an ESA, which included signing a release form to be submitted to the physician, and in turn, having the physician fill out the form provided by Respondent. However, this is not the sole procedure Respondent uses for ESA requests.

Respondent states the ESA policy simply requires:

1. Verification from a licensed medical practitioner.
2. Verification must show the relationship between the disability and the accommodation requested.
3. Practitioner must be licensed and practicing within the same state as the applicant and support animal.

Respondent states if Charging Party provided the verification letter from her therapist, then such a letter would have been accepted by Respondent, provided the letter showed a relationship between the disability and the accommodation requested. If Bick received such a letter, she would have forwarded it to her property manager. The property manager would then direct the letter to the Assistant Director of Property Management and/or the Director of Property Management, and they would assess the request for an accommodation.

Respondent states that they provide tenants a verification form in the event the tenant or prospective tenant does not already possess a verification letter. This form assists the tenant as the tenant is not required to follow up with his or her practitioner, and Respondent sends the verification form directly to the practitioner. In the verification form, a provider is not prompted to provide the disability or diagnosis but instead must merely affirm or deny if the individual has a disability and has a disability related need for a service/companion animal.

Respondent states Charging Party never provided her verification letter. Consequently, Respondent never denied any accommodation request, as Bick never engaged in the interactive process. Respondent states Bick followed up and emailed Charging Party twice after their conversation on June 11 and June 25, 2021. This was to check to see if Charging Party wanted to schedule a tour and if Charging Party was still interested in Tracey Creek Apartments. MeetElise, Respondent's virtual assistant also checked in with Charging Party on June 11 and June 16, 2021, to see if Charging Party was interested in an apartment. Charging Party never followed up, ever applied for an apartment, and never submitted any note regarding an ESA. Charging Party is welcome to submit her verification letter and Respondent will consider it.

Respondent states they merely require some verification of a disability and its relationship to the accommodation requested. While Charging Party claims they had verification letters, they never submitted any such letters. Therefore, Respondent could do nothing despite multiple attempts to contact Charging Party. Charging Party alleges they informed the agent that they had a verification letter and the agent insisted that Respondent required the physician to fill out Respondent's verification form.

Silma Espinosa v. Edward Rose Development Company, L.L.C.
TOLH2(41468)05112022/05-22-5840-8
Page 3

Staff reviewed relevant documentation. Documents show that Charging Party did inquire to the subject property on or about June 9, 2022. Charging Party did inform Respondent of a reasonable accommodation request regarding her ESA.

Information shows that Respondent requested documents be completed and faxed to the physician by Respondent without requesting the medical documents from Charging Party or any knowledge of the documents that the Charging Party could provide.

The Ohio Civil Rights Commission's Technical Policy T-31.3 states, in relevant part:

"Under the federal Fair Housing Act and R.C. Chapter 4112, the requester must demonstrate one or more persons living or intending to reside in the unit have a disability, and there must be a relationship between the requested accommodation of an animal and the disability. Once the request is made, a housing provider has a limited right to additional information. On occasions, the person verifying the need for the emotional support animal is at issue. The Commission takes the position that any health service providers may have a role in supporting a disabled person's need for an ESA not just a medical doctor. The Commission also recognizes that a tenant may provide information from a non-medical entity supporting the need for an ESA.

Information shows Respondent did not engage in the interactive process to accommodate the Charging Party's requests. Respondent discontinued the interactive process, at the point Charging Party queried about the medical documents already obtained. Respondent never answered or provided follow up discussion.

Upon discovery Respondent's policies and reasonable accommodation request form states in part:

> According to federal law, 24 CFR § 100.204, you are eligible for a reasonable accommodation to our policies. We routinely make accommodations for residents who are eligible for a companion animal. We do have a concern regarding the breed of your companion animal.

> Despite our reservations, we will approve your request for an exception to our policy with the following conditions:

> Dog will be made available for an individualized assessment of the animal's conduct. Please contact the Property Manager for this evaluation;

> Resident will comply with all state and local ordinances regarding immunization, licensing and control of animal. Resident agrees to treat dog for and maintain preventative flea, tick and heartworm control;

The Ohio Civil Rights Commission's Technical Policy T-31.3 states, in relevant part:

> "Landlords should treat each situation on a case-by-case basis and not deny an ESA simply because of the breed of the animal, such as a pit bull or mixed breed dog. Ohio law was amended to remove breed specific restrictions. If concerns are raised, more exploration can be conducted with the disabled person about the animal.

Silma Espinosa v. Edward Rose Development Company, L.L.C.
TOLH2(41468)05112022/05-22-5840-8
Page 4

Respondent's documents also show the following:

> "Practitioner must be licensed and practicing within the same state as the applicant and support animal."

The Ohio Civil Rights Commission's Technical Policy T-31.3 states, in relevant part:

"The Commission takes the position that a health services provider does not have to hold an Ohio license to verify the need for the animal. First, a provider, who holds a valid Ohio telemedicine certificate, may so attest. Additionally, if the patient has seen a health care professional licensed in another state, the provider may verify the disability or need for an ESA as long as the last contact with the patient occurred within the past twelve months from the date of the accommodation request."

Information shows that Respondent's have policies and procedures that are a violation of Ohio Revised Code 4112.

**DECISION:**
The Ohio Civil Rights Commission determines it is **PROBABLE** that Respondent has engaged in an unlawful discriminatory practice in violation of Ohio Revised Code Chapter 4112. Therefore, the Commission hereby orders that this matter be scheduled for **CONCILIATION**.

In accordance with Ohio Revised Code § 4112.05(A) and Ohio Administrative Code § 4112-3-03(C), the Commission invites you to participate in conciliation by informal methods of conference, conciliation, and persuasion. Enclosed is a draft Conciliation Agreement and Consent Order for your consideration.

Brad Adams has been assigned as Conciliator and can be reached by telephone at 419-245-2911 or by email at Brad.Adams@civ.ohio.gov@civ.ohio.gov. **Please contact the Conciliator to discuss the conciliation process.**

If the Commission's attempts at conciliation are unsuccessful, a formal complaint will be issued, and the case will be scheduled for a public hearing.

**NOTICE OF RIGHT TO REQUEST RECONSIDERATION:**
Pursuant to Ohio Administrative Code § 4112-3-04, you have the right to request reconsideration of this determination of the Commission. The application must be in writing and state specifically the grounds upon which it is based. If you wish to appear before the Commissioners to present oral arguments supporting your request, you must specifically make a request to appear in writing.

This request must be sent to the Compliance Department, Ohio Civil Rights Commission, 30 East Broad Street, 5th Floor, Columbus, Ohio 43215. You must submit the request for reconsideration, along with all additional evidence or supporting documentation, within **TEN (10) days** of the date of mailing of this notice.

Silma Espinosa v. Edward Rose Development Company, L.L.C.
TOLH2(41468)05112022/05-22-5840-8
Page 5

Any application for reconsideration or additional materials received by the Compliance Department in the Commission's Columbus Central Office after the ten-day period has expired will be deemed untimely filed. Extensions of this ten-day filing period are not permitted.

**\*\*Please note, conciliation efforts do not toll the applicable time period for submitting a Request for Reconsideration. See, Ohio Administrative Code § 4112-3-04.**

FOR THE COMMISSION,

*William E. Baskin, Jr.*

William E. Baskin, Jr.
Toledo Regional Supervisor

WEB/sms

Enclosure: Draft Conciliation Agreement and Consent Order

cc: **Charging Party's Representative**
Rachael Fortlage, Staff Attorney
The Fair Housing Center
326 N. Erie Street
Toledo, OH 43604
rfortlage@toledofhc.org

**Respondent's Representative**
Haba K. Yono
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
hyono@honigman.com