**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **Fair Housing Opportunities Of Northwest Ohio, Inc., *et al.*** | : | **Case No.: 3:23-cv-01297** |
| | : | **Judge: Jeffrey Helmick** |
| **Plaintiffs,** | : | |
| **v.** | : | |
| **Edward Rose Development Company, LLC** | : | **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY** |
| | : | |
| **Defendant.** | : | |

---

## MOTION FOR SUMMARY JUDGMENT ON LIABILITY

Now come Plaintiffs, Fair Housing Opportunities of Northwest Ohio, Inc. d/b/a The Fair Housing Center, and Silma Espinosa, by and through counsel, and move the Court for an order granting them Summary Judgment against Defendant, Edward Rose Development Company, LLC, pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Motion is required as there are no issues as to any material fact and Plaintiffs are entitled to judgment as a matter of law.

The Court should enter Summary Judgment for the following reasons: (1) Defendant denied Plaintiff Espinosa a reasonable accommodation pursuant to 42 U.S.C. § 3604(f)(3)(B); (2) Defendant imposed different terms, conditions, and privileges in the rental of a dwelling which made housing unavailable, as prohibited by 42 U.S.C. §§ 3604(f)(1) and (2); (3) Defendant negligently trained and supervised its property managers and leasing agents which resulted in discriminatory treatment; and (4) Fair Housing Opportunities of Northwest Ohio diverted its

scarce resources and had its mission frustrated by the unlawful discrimination committed by Defendant. This Motion is supported by Plaintiffs' Exhibits #1-5 to this Motion, along with citations to exhibits.

For the reasons identified above, and the reasons that follow in Plaintiffs' Memorandum in Support of Summary Judgment, the Court should grant Summary Judgment to Plaintiffs on all claims and schedule a separate hearing to determine damages.

Respectfully submitted,

/s/ C. Jacob Davis

C. Jacob Davis (#0101745)
Nalls Davis | Attorneys at Law
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 660-4400
Jacob.Davis@nallslaw.com
*Attorney for Plaintiffs, Fair Housing Opportunities of Northwest Ohio, Inc. and Silma Espinosa*

TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... i, ii, iii

MEMORANDUM OF SUPPORT .......... 1

STATEMENT OF FACTS .......... 2

STANDARD OF REVIEW .......... 5

LAW AND ARGUMENT .......... 6

I. Defendant denied Plaintiff Espinosa a reasonable accommodation pursuant to 42 U.S.C. § 3604(f)(3)(B). 8

A. The initial inquiry by the housing provider must be limited in scope. 8

B. The housing provider cannot reject a reasonable accommodation. 9

C. Defendant violated the Fair Housing Act during the inquiry and follow-up process. 11

D. Espinosa did seek housing and a reasonable accommodation. 13

E. Defendant may argue that the request imposed an undue financial or administrative burden, but that is unsubstantiated. 14

II. Defendant imposed different terms, conditions, and privileges in the rental of a dwelling which made housing unavailable, as prohibited by 42 U.S.C. §§ 3604(f)(1) and (2). 16

III. Defendant negligently trained and supervised its managers and leasing agents which resulted in discriminatory treatment. 17

IV. The Fair Housing Center of Toledo diverted its scarce resources frustrating its mission. 18

CONCLUSION .......... 20

CERTIFICATION REGARDING PAGE LIMITATIONS .......... 21

CERTIFICATE OF SERVICE .......... 21

# TABLE OF AUTHORITIES

## Cases


| | |
|---|---|
| *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986) | 6 |
| *Bhogaita v. Altamonte Heights Condo. Ass'n,* 765 F.3d 1277 (11th Cir. 2014) | 10, 11 |
| *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) | 5, 6 |
| *Corey v. Sec'y, United States HUD*, 719 F.3d 322, 326 (4th Cir. 2013) | 16 |
| *Dadian v. Village of Wilmette*, 269 F.3d 831, 838-39 (7th Cir. 2001) | 15 |
| *Hooker v. Weathers*, 990 F.2d 913, 915 (6th Cir. Apr. 13, 1993) | 18 |
| *Johnson v. Kroger Co.*, S.D. Ohio No. 2:18-cv-1240, 2019 U.S. Dist. LEXIS 115094, *10, 2019 WL 3024460 (July 11, 2019) | 18 |
| *Laflamme v. New Horizons, Inc.*, 605 F. Supp. 2d 378 (D.Conn 2009) | 8, 9, 13, 17 |
| *McClendon v. Bresler*, 9th Cir. No. 22-55068, 2022 U.S. App. LEXIS 35649, *2, 2022 WL 17958633 (Dec. 27, 2022) | 9, 10, 11 |
| *McNamara v. Ohio Bldg. Authority*, 697 F.Supp.2d at 829 (N.D. Ohio 2010) | 7 |
| *Or. Bureau of Lab. and Indus. ex rel. Fair Hous. Council of Or. v. Chandler Apartments, LLC*, 702 Fed. Appx. 544, 547 (9th Cir. July 26, 2017) | 9 |
| *Overlook Mut. Homes, Inc. v. Spencer*, 415 Fed. Appx. 617, 621 (6th Cir. 2011) | 8 |
| *Revock v. Cowpet Bay W. Condominium Assn.,* 853 F.3d 96, 110 (3rd Cir. 2017) | 10 |
| *Smith & Lee Assocs., Inc. v. City of Taylor, Michigan*, 102 F.3d 781, 795 (6th Cir. 1996) | 8 |
| *Southeastern Community College v. Davis*, 442 U.S. 397, 412, 99 S. Ct. 2361, 2370 (1979) | 7, 8 |

*Vance v. City of Maumee*, 960 F. Supp. 2d 720, 730 (N.D. Ohio 2013) 7, 8, 10, 14, 15

*Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 850 (7th Cir. 1999) 15

**Statutes**

Ohio Rev. Code § 4112.01, *et seq.* ........................................................ 1

Ohio Rev. Code § 4112.02. ............................................................. 1, 6

42 U.S.C. § 3601, *et seq.* ............................................................. 1, 6

42 U.S.C. § 3602. ................................................................... 7, 9

42 U.S.C. § 3604 .................................................................... 1, 6, 7, 8, 9, 16

42 U.S.C. §§ 3601-3631 ............................................................... 6

24 C.F.R. § 100.202(c) ............................................................... 7, 15

**Other Materials**

U.S. Dep't of Justice & U.S. Dep't of Hous. & Urban Dev., Joint Statement of the Department of Justice and the Department of Housing and Urban Development on Reasonable Accommodations Under the Fair Housing Act (May 17, 2004), https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/joint_statement_ra.pdf. 12

**MEMORANDUM IN SUPPORT**

Plaintiffs, Fair Housing Opportunities of Northwest Ohio, Inc. and Silma Espinosa ("Plaintiffs"), initiated a lawsuit against Defendant, Edward Rose Development Company, LLC (hereinafter the "Defendant" or "Edward Rose"). Plaintiffs' Complaint states claims for discrimination on the basis of disability in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*., the federal Fair Housing Amendments Act of 1988 ("FHAA"), the fair housing laws of the state of Ohio, Ohio Rev. Code § 4112.01, *et seq*., (collectively the "Fair Housing Laws"), and state tort law. (Am. Compl. ¶ 1.) Specifically, Plaintiffs alleged that Defendant: (1) failed to grant a reasonable accommodation in violation of 42 U.S.C. § 3604(f)(3)(B) and the substantially equivalent state law, R.C. § 4112.02(H); (2) imposed different terms, conditions, and privileges on Plaintiff Espinosa because of their disability which made housing unavailable in violation of 42 U.S.C. §§ 3604(f)(1) and (2) and the substantially equivalent state law, R.C. § 4112.02(H); and (3) negligently trained its leasing agents and on-site management which routinely results in unlawful discrimination during the leasing process.

Defendant's refusal to grant Plaintiff Espinosa's reasonable accommodation request is an act of unlawful discrimination under the Fair Housing Laws, because the request to allow Plaintiff's emotional support animal ("ESA") in the dwelling without incurring pet fees is reasonable and necessary. Granting Plaintiff Espinosa's reasonable accommodation request would not create an administrative or financial burden, as it is well established that permitting an ESA is generally required under the Fair Housing Act absent a health or safety risk. Finally, Defendant's unreasonable accommodations policy in demanding direct communication and access to Plaintiff's physician was discriminatory on the basis of Plaintiff's disability. Specifically, Defendant's expansive inquiry and requirement that the company speak directly with

Plaintiff Espinosa's physician is not permitted under the Fair Housing Act.

Fair Housing Opportunities of Northwest Ohio, Inc. ("The Fair Housing Center" or "TFHC"), was notified by Plaintiff Espinosa of this unlawful treatment in the leasing process. TFHC investigated the issue and determined that testing was required to determine if this was a widespread issue within Edward Rose properties. TFHC engaged in testing which confirmed that Defendant routinely discriminates against prospective residents with disabilities in the reasonable accommodation process by requiring that applicants provide direct access to their physician—which is in itself a violation of the Fair Housing Act. TFHC also confirmed that Espinosa's treatment was not an isolated incident and that it is in fact the policy of Edward Rose to communicate directly with physicians. TFHC further found that Edward Rose instructs applicants that they must apply for an apartment and pay fees first *before* requesting an accommodation. Such treatment frustrated the mission of The Fair Housing Center and forced them to divert their scarce resources to counteract the discriminatory treatment experienced by Plaintiff Espinosa. As such, Plaintiff Espinosa and TFHC are aggrieved parties in this matter and have been injured by a discriminatory housing practice.

The issues to be decided by the Court are: (1) whether Defendant denied Plaintiff Espinosa a reasonable accommodation; (2) whether Defendant subjected Plaintiff Espinosa to different terms, conditions, and privileges; and (3) whether Defendant negligently trained and supervised its employees. For the reasons summarized in their Motion and as demonstrated below, Summary Judgment should be entered in favor of Plaintiffs and against Defendant on all claims.

## STATEMENT OF FACTS

Plaintiff, Silma Espinosa ("Espinosa") (they/them), is a person with a disability under the Fair Housing Laws and has been prescribed an ESA to assist with emotional and social wellbeing.

Espinosa Aff. ¶ 3. Plaintiff Espinosa sought housing with Defendant at Tracy Creek Apartments (the "Subject Property") in June 2021. Espinosa Aff. ¶ 4. Tracy Creek is owned and managed by Defendant, Edward Rose. Rodriguez Aff. ¶ 6. Espinosa contacted Tracy Creek Apartments to inquire about leasing there because it was closer to work and generally met their needs. Espinosa Aff. ¶ 5. As part of the leasing process, Defendant's employee asked whether Plaintiff had any pets. Espinosa Aff. ¶ 6. Plaintiff notified Defendant that they had a cat which was an ESA. *Id.* Defendant's property manager/leasing agent stated, "Well, that is basically a pet." *Id*. Espinosa, having previously worked for The Fair Housing Center, stated their belief that ESAs are not pets. Espinosa Aff. ¶¶ 6-7. Notwithstanding the foregoing conversation, Espinosa asked Defendant's employee about making a reasonable accommodation request to have their ESA at the Subject Property and to waive any pet fees. Espinosa Aff. ¶ 8. Defendant's employee stated that pet fees may be waived if Espinosa's physician completed and submitted Defendant's disability verification form directly to the Defendant. Espinosa Aff. ¶ 9. Defendant's employee made it clear to Plaintiff Espinosa that Defendant would only accept verification on their company form rather than a letter from Espinosa's therapist. Espinosa Aff. ¶ 9.

Espinosa again notified Defendant that they were in possession of a verification letter from their therapist regarding the need for their ESA. Espinosa Aff. ¶ 11. Defendant's agent stated that their company policy was to obtain the physician information from the applicant and work directly with the medical provider to obtain the verification. Espinosa Aff. ¶ 12. Defendant notified Plaintiff that the verification form from a therapist would not be sufficient nor was it compliant with Defendant's company policy. Espinosa Aff. ¶ 13. Defendant's employee further stated that their policy is to require the use of their company verification form, which includes direct communication with the applicant's physician. Espinosa Aff. ¶ 14. This intrusive application

process resulted in Plaintiff Espinosa no longer wanting to reside at Tracy Creek; however, Espinosa politely requested general information from Defendant's employee during the call and requested an email follow up so that they could discuss with their partner. Espinosa Aff. ¶¶ 14-15. Plaintiff Espinosa never received any follow up from Defendant. Espinosa Aff. ¶ 15. Defendant's statements, policy, and failure to follow up discouraged Espinosa from applying for or renting a unit with Defendant. Espinosa Aff. ¶ 16.

Espinosa then contacted Plaintiff, The Fair Housing Center ("TFHC"), to seek guidance regarding their rights under the Fair Housing Laws. Rodriguez Aff. ¶ 7. TFHC researched the issue, investigated Defendant, reviewed documents, advised Espinosa, and conducted testing at Edward Rose properties. Rodriguez Aff. ¶ 8. TFHC's testing showed that Defendant's policy is not to consider reasonable accommodation requests for ESAs until an applicant has applied for, been approved for, and signed a lease for an apartment. Rodriguez Aff. ¶ 9. Testing further showed that Defendant's policy is that a tenant or prospective tenant's physician must directly participate, fill out, and provide Defendant's verification form to Defendant. Rodriguez Aff. ¶ 10. Testing uncovered a consistent pattern of conduct by Defendant in violation of the Fair Housing Laws when responding to reasonable and necessary accommodation requests. Rodriguez Aff. ¶ 11. The FHC's work on this matter diverted a significant amount of FHC resources and resulted in delays on other projects and open case files. Rodriguez Aff. ¶ 13.

On or around May 6, 2022, Plaintiff Espinosa filed an administrative complaint with the Ohio Civil Rights Commission (the "Commission"). Espinosa Aff. ¶ 17. Plaintiff, TFHC, also filed an administrative complaint with the Commission on that same date. Rodriguez Aff. ¶ 12. The Complaints are attached as Plaintiffs' Exhibit #3. The Commission completed a thorough investigation of Defendant's actions and housing policies, practices, and services related to this

Complaint. The Commission issued a letter of determination and found that Defendant did not engage in the interactive process to reasonably accommodate Plaintiff Espinosa. The Commission's letter is attached as Plaintiffs' Exhibit #4. The Commission further found that Defendant's policies and procedures of requiring a doctor's verification be submitted directly to management was overly restrictive and not compliant with the Fair Housing Act or Technical Policy T-31.3 of the Commission, which limits the ability of housing providers to require an Ohio medical license to verify the need of a disability. Rodriguez Aff. ¶ 14.

On or around February 9, 2023, the Commission formally issued its finding that it was probable that Defendant engaged in an unlawful discriminatory practice in violation of Ohio Rev. Code § 4112. Defendant's conduct and policies violated the Fair Housing Laws and discouraged prospective applicants with disabilities from applying for or leasing units with Defendant, which reduces housing choice for tenants with disabilities like Plaintiff Espinosa. Finally, Defendant failed to properly train or supervise its property managers, leasing agents, and office staff which resulted in injury to Plaintiffs. Defendant's failure to properly train and supervise its property managers, leasing agents, and office staff results in discriminatory treatment in processing applications and granting reasonable accommodations.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a motion for summary judgment shall be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *See also* Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court accepts all of the opponent's evidence as true and construes all of the evidence in the opponent's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513

(1986).

The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. A "genuine issue" is one whose resolution could establish an element of a claim or defense, and therefore, affect the outcome of the action. *Id.* at 322; *Anderson*, 422 U.S. at 248. Once this burden has been met with the support of evidentiary materials, the nonmoving party must set forth specific facts in support that there is a genuine issue for trial, otherwise, the moving party's motion should be granted. Fed. R. Civ. P. 56(e).

**LAW AND ARGUMENT**

Summary judgment must be entered because Plaintiffs' Complaint and the supporting documentary evidence displays unlawful discrimination under the Fair Housing Laws, with no issue of material fact, and Plaintiffs are entitled to judgment as a matter of law on all claims. Congress enacted the Fair Housing Act in 1968 to prevent unlawful discrimination in housing practices and granted aggrieved persons the right to challenge such practices in federal court under 42 U.S.C. § 3613(a). In 1988, Congress enacted the Fair Housing Amendments Act (FHAA), 42 U.S.C. §§ 3601-3631, to expand the FHA's antidiscrimination protections to include individuals with disabilities. *Id*. Ohio's fair housing protections are found in R.C. § 4112.02(H) and are substantially equivalent to the federal FHA. As such, state claims are analyzed together with the federal claims.

Unlawful discrimination on the basis of disability includes the refusal to make reasonable accommodations in rules or policies when such accommodations may be necessary to afford disabled individuals an equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(F)(3)(b). An accommodation is considered to be reasonable so long as it does not impose an undue financial or administrative burden. *Southeastern Community College v. Davis*, 442

U.S. 397, 412, 99 S. Ct. 2361, 2370 (1979). This Court follows the determination that the reasonableness and necessity of a requested accommodation is a fact-specific inquiry. *Vance v. City of Maumee,* 960 F. Supp. 2d 720, 730 (N.D. Ohio 2013) (citing *McNamara v. Ohio Bldg. Authority*, 697 F.Supp.2d at 829). It is generally unlawful for a housing provider to make an expansive inquiry to determine whether an applicant for a dwelling, . . , or any person associated with that person, has a handicap or to make inquiry as to the nature or severity of a handicap of such a person. 24 C.F.R. § 100.202(c).

In this matter, Plaintiff Espinosa's request to have an ESA and for Defendant to waive pet fees was both reasonable and necessary to afford them equal opportunity to housing, thus making it a reasonable accommodation request under the FHA. The denial of an emotional support animal as a reasonable accommodation constitutes discrimination under the FHA when the animal is necessary to alleviate symptoms of the disability and enable the individual to use and enjoy their dwelling on an equal basis with others. 42 U.S.C. § 3604(f)(3)(B). In addition, the initial inquiry made by Defendant was more expansive than what is permitted under the Fair Housing Laws, as their company policy required direct access to Plaintiff Espinosa's physician despite the reliability of Espinosa and the letter from their therapist. TFHC diverted its scarce resources to counteract the discriminatory treatment by assisting Plaintiff Espinosa in righting the wrongs that had been inflicted upon them. Furthermore, Defendant's unlawful conduct frustrates the mission of TFHC. As such, both Plaintiff Espinosa and TFHC are aggrieved persons pursuant to 42 U.S.C. § 3602(i).

Testing evidence demonstrates that Defendant's failure to grant a reasonable accommodation prior to signing the lease discourages and bars prospective residents with a disability from applying for housing with the Tracy Creek Apartment Homes. Granting Plaintiff

Espinosa's reasonable accommodation request would not create an administrative or financial burden on Defendant, as courts have routinely held that ESAs are reasonable and necessary under the FHA. Furthermore, granting Plaintiffs' reasonable accommodation request would not fundamentally alter the nature of Defendant's program. For these reasons and the reasons that follow, summary judgment must be entered for Plaintiffs.

## I. Defendant denied Plaintiff Espinosa a reasonable accommodation pursuant to 42 U.S.C. § 3604(f)(3)(B).

Plaintiff Espinosa's request to have their ESA in the apartment, with a waiver of pet fees, was both reasonable and necessary. The FHA protects the right of disabled individuals to enjoy the housing of their choice. *Vance*, 960 F. Supp. 2d at 730 (citing *Smith*, *supra*, 102 F.3d at 794-95). "A qualified disabled individual's request for an accommodation must be granted if it is both: (1) reasonable and (2) necessary." *Vance v. City of Maumee*, 960 F. Supp. 2d 720, 728 (N.D. Ohio 2013) ((citing *Smith & Lee Assocs., Inc. v. City of Taylor, Michigan*, 102 F.3d 781, 795 (6th Cir. 1996) (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 412, 99 S. Ct. 2361, 60 L. Ed. 2d 980 (1979)).

### A. The initial inquiry by the housing provider must be limited in scope.

Housing providers are limited in the inquiry that they can make of persons with a disability during the leasing process. *Laflamme v. New Horizons, Inc.*, 605 F. Supp. 2d 378 (D.Conn 2009) (granting plaintiff summary judgment in disability discrimination case because housing provider's form requirements were too broad of an inquiry). Although a housing provider may request reliable disability related information, the initial inquiry need not be highly intrusive. *Overlook Mut. Homes, Inc. v. Spencer*, 415 Fed. Appx. 617, 621 (6th Cir. 2011). In most cases, an individual's medical records or detailed information about the nature of a person's disability is not necessary. *Id.* at 621-622. A housing provider's policy of inquiring into prospective

tenants' medical and personal histories is the exact discrimination that was forbidden by the FHA. *Laflamme*, 605 F. Supp.2d 378, 379.

**B. The housing provider cannot reject a reasonable accommodation.**

The Fair Housing Act asserts that the refusal to make reasonable accommodations in rules or policies when such accommodations may be necessary to afford disabled individuals an equal opportunity to use and enjoy a dwelling is unlawful housing discrimination. 42 U.S.C. § 3604(F)(3)(b). To prove such a claim, plaintiffs generally need to prove that: (1) the plaintiff or their associate has a disability within the meaning of 42 U.S.C. § 3602(h); (2) the defendant knew or should reasonably be expected to have known of the disability; (3) an accommodation may be necessary to afford the disabled person an equal opportunity to use and enjoy the dwelling; (4) the requested accommodation is reasonable; and (5) the defendant refused to make the requested accommodation. *McClendon v. Bresler*, 9th Cir. No. 22-55068, 2022 U.S. App. LEXIS 35649, *2, 2022 WL 17958633 (Dec. 27, 2022).

For the first and second prong, knowledge of a housing applicant's disability status can be actual or constructive, and a "prospective tenant who requests accommodation[s] for a service animal need not affirmatively identify his or her disability to trigger FHA protection." *Id.* citing *Or. Bureau of Lab. and Indus. ex rel. Fair Hous. Council of Or. v. Chandler Apartments, LLC*, 702 Fed. Appx. 544, 547 (9th Cir. July 26, 2017). For example, statements such as "I have a therapy animal" or "I have an assistance dog" should reasonably place a building manager on notice of the individuals' disability statuses. *Id*. For prongs three and four, an accommodation request is determined to be reasonable if it does not require a fundamental alteration in the nature of a program or impose an undue financial or administrative burden. *Smith*, 102 F.3d 781, 795 (6th Cir. 1996) (Citing *Davis*, 442 U.S. 397, 412, 99 S. Ct. 2361, 2370

(1979)). An accommodation request is necessary when, without it, disabled individuals are not afforded an equal opportunity to use and enjoy a dwelling. *Smith*, at 790. Necessity is defined, under anti-discrimination laws, as a showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability. *Vance v. City of Maumee*, 960 F. Supp. 2d 720, 729 (N.D. Ohio 2013) (citing *Smith*, *supra*, 102 F.3d at 795). A reasonable accommodation under the Fair Housing Act may include the use of an emotional support animal in one's own home, despite the existence of a rule, policy or law prohibiting such an animal, and a failure to deviate from the rule or policy is in effect a violation of the FHA. *Revock v. Cowpet Bay W. Condominium Assn.*, 853 F.3d 96, 110 (3rd Cir. 2017).

A housing provider will be held liable for disability discrimination under the Fair Housing Act when they fail to make reasonable accommodations to their policies and procedures. For example, in *McClendon*¸ the housing provider had a no pets policy. 9th Cir. No. 22-55068, 2022 U.S. App. LEXIS 35649, *1. The housing provider attempted to argue that they were unaware of any disability. *Id.* at *3. However, Plaintiff's co-applicant used the terms "verified support animal," "reasonable accommodation," and "discrimination" in initial communications with the housing provider. *Id.* at *3. As such, the Ninth Circuit reversed the district court's issuance of summary judgment in favor of the housing provider and found that that the applicant did provide enough information by utilizing the terms support animal and reasonable accommodation to demonstrate that they had a disability-related need. *Id.* at *2-4. The court reversed and remanded to the trial court to take further action consistent with the Ninth Circuit's opinion that the applicant provided sufficient information to start the accommodations process.

Likewise, in *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277 (11th Cir. 2014), a tenant was granted partial summary judgment on the failure to grant an ESA as a reasonable

accommodation. In that case, plaintiff suffered from PTSD. *Id.* at 1281. Plaintiff purchased a condo managed by the defendant, and defendant had a rule against animals over 25 pounds. *Id.* Plaintiff acquired a dog that exceeded the weight limit and was subsequently given a notice to remove the animal. *Id.* Plaintiff responded by notifying the defendant that it was an emotional support animal. *Id.* The defendant association then requested additional information including a sworn statement from plaintiff's doctor and sought documentation on the training that the dog had received. *Id.* at 1283. Rather than responding to the defendant's inquiries, plaintiff filed a complaint. *Id.* In affirming the district court's grant of partial summary judgment to plaintiff, the Eleventh Circuit found that housing providers need only the information necessary to apprise itself of the disability and the desire and possible need for an accommodation. *Id.* at 1287. The court also noted that in most cases an individual's medical records or detailed information about the nature of a person's disability is not necessary for determining whether an accommodation is required. *Id.* As such, the additional information requested after the initial notification of a disability by the plaintiff exceeded what was required to decide on the accommodation requested. *Id.* Consequently, defendant was liable to plaintiff for the failure to grant a reasonable accommodation.

**C. Defendant violated the Fair Housing Act during the inquiry and follow-up process.**

Similar to *McClendon* and *Bhogaita*, Plaintiff Espinosa sought housing and attempted to submit initial documentation proving the necessity for their emotional support animal. Espinosa Aff. ¶¶ 10-13. Espinosa notified Defendant's agent that they had a letter from their therapist regarding the need for an ESA. *Id.* Defendant's agent stated that ESAs are pets and that their policy was to have direct contact with Espinosa's physician and that an internal company form had to be filled out by Espinosa's physician. Espinosa Aff. ¶ 14. Defendant's agent expressed that the therapist's letter was not sufficient. Espinosa Aff. ¶ 10. As such, the accommodation

request was denied as a result of Defendant stating that the letter from Plaintiff Espinosa's therapist was insufficient and would not be accepted. Espinosa was further stonewalled when the agent opined that the ESA was a pet. Espinosa Aff. ¶¶ 6, 16. Neither statement from Defendant's agent is in line with the Fair Housing Act, because disability verification can be provided by any third party who knows about the disability, including a medical professional, a peer support group, a non-medical service agency, or any reliable third party.[1] Espinosa and their therapist were both reliable third parties who could have verified the disability and need for an ESA.

Consequently, Plaintiff Espinosa was unable to apply for and move into the apartment requested as Defendant claimed Plaintiff Espinosa's ESA was a pet, and the Edward Rose policy is to require the use of their company verification form to prove the need for a reasonable accommodation request, which also includes direct communication with the applicant's physician. Espinosa Aff. ¶ 14.[2] Plaintiff Espinosa's request to have their ESA reside at the Subject Property without incurring pet fees was a reasonable accommodation request that was both reasonable and necessary under the applicable Fair Housing Laws. Plaintiff Espinosa's ESA is necessary to assist with emotional and social support as well as overall well-being. Espinosa Aff. ¶ 3. Plaintiff proffered evidentiary documentation to support the reasonable accommodation request which was rejected by Defendant's agent on two separate occasions. *See* Espinosa's Therapist Letter, Exhibit #5.

---

[1] *See* U.S. Dep't of Justice & U.S. Dep't of Hous. & Urban Dev., Joint Statement of the Department of Justice and the Department of Housing and Urban Development on Reasonable Accommodations Under the Fair Housing Act (May 17, 2004), https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/joint_statement_ra.pdf.

[2] Edward Rose argued during the administrative proceeding that their policy "simply requires: (1) Verification from a licensed medical practitioner… 3. Practitioner must be licensed and practicing within the same state as the applicant and support animal." Such a policy violates the FHAA because a person with a disability is not required to provide proof from a licensed medical practitioner or one practicing in the same state. *See* U.S. Dep't of Justice & U.S. Dep't of Hous. & Urban Dev., Joint Statement of the Department of Justice and the Department of Housing and Urban Development on Reasonable Accommodations Under the Fair Housing Act (May 17, 2004), https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/joint_statement_ra.pdf.

**D. Espinosa did seek housing and a reasonable accommodation.**

Defendant may attempt to argue that Plaintiff Espinosa did not request a reasonable accommodation or apply for a unit. However, both arguments lack merit. Plaintiff Espinosa requested a reasonable accommodation when they sought housing with Defendant and offered their therapist verification letter describing the need for the ESA. Defendant was also on notice of the disability and desire for housing because Espinosa requested that (1) Defendant accept the therapist verification letter; and (2) pet fees be waived because ESAs are not pets. Espinosa Aff. ¶ 8. Defendant's agent opined that an ESA is a pet and stonewalled Espinosa by stating that Defendant's policy was to have direct contact with Espinosa's physician. Espinosa Aff. ¶¶ 6, 10-14. These comments and policy requirements of Edward Rose contradict FHA regulations which generally require a landlord to use the lease invasive means necessary to verify eligibility. *Laflamme*, 605 F. Supp. 2d 378, 391 (D. Conn. 2009). After experiencing push back from Espinosa about whether or not an ESA was a pet, Defendant's agent did not seek assistance from her manager but rather doubled down and made it clear to Espinosa that the therapist verification letter would not be accepted. Espinosa Aff. ¶ 10.

Espinosa then requested follow-up information regarding available apartments and no such information was ever received by Espinosa. Espinosa Aff. ¶ 15. As such, Espinosa was at a minimum constructively denied an accommodation for the ESA and pet fee waiver, and she could not have lived in or enjoyed the unit because she had been prescribed an ESA for social and emotional wellbeing. Espinosa Aff. ¶ 3. Likewise, there is no requirement under the FHA that a prospective applicant apply for a unit in order to receive consideration for a reasonable accommodation, and any Edward Rose policy to the contrary would be discriminatory on its face.

For these reasons, Plaintiff Espinosa brought forth a valid reasonable accommodation

request under the FHA that was both reasonable and necessary. TFHC conducted testing which corroborated the discriminatory policy of Defendant. As such, TFHC diverted its scarce resources and had its mission frustrated because of Defendant's unlawful actions and policies. Rodriguez Aff. ¶ 8. Such diversion of resources includes investigating Defendant's housing policies and practices, engaging in testing, and advising Plaintiff Espinosa regarding their rights. Rodriguez Aff. ¶¶ 8, 13. TFHC was able to corroborate through testing that Edward Rose routinely engages in an unlawful inquiry during the application process which deters disabled applicants from applying. Rodriguez Aff. ¶¶ 8-10. Defendant's denial of the accommodation request is a form of unlawful discrimination under the Fair Housing Laws, and as such, there are no genuine disputes as to any material fact and Plaintiffs and entitled to judgment as a matter of law on the state and federal reasonable accommodation claims.

**E. Defendant may argue that the request imposed an undue financial or administrative burden, but that is unsubstantiated.**

A reasonable accommodation request cannot impose an undue financial or administrative burden. An accommodation request is determined to be reasonable if it does not require a fundamental alteration in the nature of a program or impose an undue financial or administrative burden. *Smith*, 102 F.3d 781, 795 (6th Cir. 1996) (Citing *Davis*, 442 U.S. 397, 412, 99 S. Ct. 2361, 2370 (1979)). In the case at bar, Plaintiffs impose no administrative burden on Defendant because the only task Defendants would need to complete upon granting the reasonable accommodation is processing an application and waiving the pet fees since an ESA is not a "pet." As demonstrated in *Vance*, this Court found that plaintiff's accommodation request was reasonable because defendants would incur no burden of construction or costs for granting plaintiff's reasonable accommodation request and therefore granted plaintiffs motion for partial summary judgment. *Vance,* supra, 960 F. Supp. 2d 720, 733 (N.D. Ohio 2013). As such, there is

no administrative burden or financial hardship imposed on Defendants in this matter by granting Plaintiff's reasonable accommodation request. However, Defendant failed to do so here and are liable for their FHA violation to Plaintiff Espinosa and TFHC.

Additionally, Plaintiff Espinosa's reasonable accommodation request to allow their ESA in the apartment would not fundamentally alter the pet policy at Tracy Creek Apartments, because processing an ESA request is required under the FHA. In cases involving waiver of applicable rules and regulations, the overall focus should be on "whether waiver of the rule in the particular case would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change." *Dadian v. Village of Wilmette,* 269 F.3d 831, 838-39 (7th Cir. 2001) (quoting *Washington v. Indiana High Sch. Athletic Ass'n, Inc*., 181 F.3d 840, 850 (7th Cir. 1999)).

In the case at bar, waiving the pet fee does not fundamentally alter the purpose of the pet policy because Plaintiff's ESAs are not pets. Additionally waiving the pet fee does not bar Defendant from recouping costs from damages, if any, caused by Plaintiff Espinosa's cat. However, as TFHC testing demonstrated, disabled applicants often never get to that step because Defendant requires a verification form and direct physician contact with an applicant's medical provider which is prohibited by the FHA and stifles housing choice for applicants with a disability. Espinosa Aff. ¶ 14; Rodriguez Aff. ¶¶ 10-11; *see also* 24 C.F.R. 100.202(c).

For these reasons, Plaintiff Espinosa's valid reasonable accommodation request under the FHA would not fundamentally alter the nature of Tracy Creek Apartments pet policies and procedures or impose an undue financial or administrative burden. TFHC's testing evidence confirmed that Defendant routinely engages in unlawful housing discrimination on the basis of disability in violation of the FHA. Thus, Defendant's denial of the accommodation request is a form of unlawful discrimination under the Fair Housing Laws, and as such, there are no genuine

disputes as to any material fact and Plaintiffs and entitled to judgment as a matter of law.

### II. Defendant imposed different terms, conditions, and privileges in the rental of a dwelling which made housing unavailable, as prohibited by 42 U.S.C. §§ 3604(f)(1) and (2).

There is no dispute that Plaintiff was treated differently than other non-disabled residents who have the opportunity to reside at and enjoy their dwellings at Tracy Creek Apartment Homes. Under the Fair Housing Act, it is unlawful:

> To discriminate in the . . rental, or to otherwise make unavailable or deny, a dwelling to any . . renter because of a handicap of—
>
> (A) that . . renter, [;]
>
> (B) a person . . intending to reside in that dwelling after it is so . . rented, or made available; or
>
> (C) any person associated with that . . renter; <u>or</u>
>
> (2) To discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
>
> (A) that person; or
>
> (B) a person residing in or intending to reside in that dwelling after it is so . . rented, or made available; or
>
> (C) any person associated with that person.

*See* 42 U.S.C. 3604(f)(1) and (2). Courts have generally held that the "otherwise make unavailable" and terms, conditions, and privileges language includes "[t]he imposition of more burdensome application procedures, of delaying tactics, and of various forms of discouragement by resident managers and rental agents". *See Corey v. Sec'y, United States HUD*, 719 F.3d 322, 326 (4th Cir. 2013).

In the instant matter, Plaintiff could not complete an application because they were discouraged from applying by the Defendant's statements and discriminatory and invasive

accommodations policy which required direct access to and communication with Espinosa's physician despite Espinosa offering the verification letter from their therapist. Espinosa Aff. ¶¶ 10-14. By requiring every disabled applicant submit to their company form and provide direct access the applicant's physician, Edward Rose in effect creates a barrier to housing that non-disabled applicants will never experience. *See Laflamme v. New Horizons, Inc.*, 605 F.Supp.2d 378 (D.Conn. 2009) (finding that housing provider's policy of leasing apartments only after inquiring into prospective tenants' medical and personal histories constituted exactly the discrimination that was forbidden by the FHA).

In addition, Defendant never provided any follow up information to Espinosa, and even if it did, it would have been futile for Espinosa to apply given the unreasonable documentation demands of Defendant and request for direct communication with Espinosa's physician. Espinosa Aff. ¶ 15. Therefore, Defendant has violated the Fair Housing Laws because they denied Plaintiff reasonable accommodation requests and imposed different terms, conditions, and privileges on Espinosa during the leasing process which otherwise made housing unavailable. There is no dispute as to any material fact and Plaintiffs are entitled to judgment as a matter of law on their 42 U.S.C. §§ 3604(f)(1) and (2) claims.

**III. Defendant negligently trained and supervised its managers and leasing agents which resulted in discriminatory treatment.**

Defendant negligently trained and supervised its employees; therefore, it is liable in tort to Plaintiff Espinosa and TFHC. For a negligent training claim, Plaintiffs must prove: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of that incompetence; (4) the employee's act or omission that caused the plaintiff's injuries; and (5) the employer's negligence in hiring, retaining, training, or supervising the employee proximately caused the plaintiff's injuries. *Johnson v. Kroger Co.*, S.D.

Ohio No. 2:18-cv-1240, 2019 U.S. Dist. LEXIS 115094, *10, 2019 WL 3024460 (July 11, 2019). "These elements correspond with the basic elements of negligence—duty, breach, proximate cause, and damages. *Id.* By establishing the first three elements, a plaintiff proves that the employer had a duty to protect the plaintiff from or to control the acts of a third person." *Id.*

In this matter, Defendant failed to ensure that leasing agents and property managers received adequate training regarding how to process reasonable accommodation requests under the Fair Housing Act. This resulted in Plaintiff Espinosa and TFHC's testers receiving false information which deters persons with disabilities from applying for a unit at the Subject Property. Espinosa Aff. ¶¶ 6; 9-14. In effect, Defendant's policies, practices, and actions reduced housing choice for persons with disabilities. Rodriguez Aff. ¶ 11. Defendant owed a duty to properly train and supervise leasing agents and office staff regarding processing reasonable accommodation requests. It failed to do so thereby breaching its duty. Damages resulted in the form of Plaintiff Espinosa being forced to live further from work, paying utilities that would have been covered at Tracy Creek, and forcing TFHC to counteract the false and discriminatory information conveyed to Plaintiff Espinosa. Espinosa Aff. ¶ 16. The failure of the leasing agent to provide accurate information was directly and proximately caused by Defendant's failure to train and supervise frontline staff at the property level. As such, Defendant is liable to Plaintiffs for negligence and Plaintiff Espinosa is entitled to damages.

## IV. The Fair Housing Center of Toledo diverted its scarce resources and had its mission frustrated by Defendant.

The Fair Housing Center can recover for its diversion of resources and frustration of mission. Fair housing organizations generally establish standing by devoting resources to investigating and confirming defendant's discriminatory practices. *Hooker v. Weathers*, 990 F.2d 913, 915 (6th Cir. Apr. 13, 1993).

In the instant matter, TFHC is a non-profit organization dedicated to promoting fair housing practices and addressing discrimination within the Toledo housing market. As part of its mission, TFHC relies on limited financial and staff resources to conduct outreach, education, advocacy, and enforcement efforts aimed at combating housing discrimination and supporting fair housing practices. Rodriguez Aff. ¶ 3. TFHC has been forced to divert its scarce resources away from its primary mission due to having to investigate issues arising from the Defendant's actions. Rodriguez Aff. ¶¶ 8, 13. TFHC was forced to reallocate funds and staff time to investigate and address the discriminatory practices of the Defendant. Id. TFHC was also required to engage in testing to determine if the discriminatory treatment encountered by Plaintiff Espinosa was widespread. Rodriguez Aff. ¶¶ 9-11. The foregoing diversion of resources is costly and detrimental to the organization's core functions and undermines TFHC's ability to engage in its regular educational programs and outreach initiatives that serve the Toledo community. Rodriguez Aff. ¶ 13.

Resources that would have been used to conduct workshops, distribute informational materials, and provide direct support to individuals facing discrimination have been diverted to manage the immediate needs of this case. Rodriguez Aff. ¶ 13. Therefore, the organization's capacity to prevent and address housing discrimination on a wider scale was diminished. *Id.* The need for additional staff time to investigate detracts from FHC's ability to perform its essential advocacy work for the mission. *Id.* Staff who would otherwise be focused on monitoring housing practices, helping victims of discrimination, and collaborating with community organizations are now burdened with investigations and legal proceedings. *Id.* This shift not only impedes the effectiveness of TFHC's advocacy efforts but also places undue strain on its staff. *Id.* The diversion of resources here also has an effect on FHC's stability and long-term goals. The

organization's financial restrictions mean that every dollar spent litigating is not spent on mission-critical activities. Furthermore, the unanticipated expenses associated with this litigation further exacerbate financial stresses, potentially jeopardizing future projects and initiatives. Rodriguez Aff. ¶ 13.

Therefore, the diversion of FHC's resources to address the issues raised by the Defendant's conduct has significantly frustrated its mission. The organization's ability to fulfill its primary objectives is compromised because of having to allocate resources away from mission essential activities. Rodriguez Aff. ¶ 13. As such, Defendant frustrated the mission of The Fair Housing Center and forced it to divert its scarce resources to counteract the discriminatory treatment experienced by Plaintiff Espinosa. Consequently, Defendant, Edward Rose is liable to both Plaintiff Espinosa and The Fair Housing Center.

## CONCLUSION

For the reasons in this Motion and Memorandum in Support, Plaintiffs, Fair Housing Opportunities of Northwest Ohio, Inc., and Silma Espinosa, respectfully request that the Court grant their Motion for Summary Judgment on all claims and schedule a hearing on damages.

Respectfully submitted,

/s/ C. Jacob Davis

C. Jacob Davis (#0101745)
George Thomas (#0083354)
NALLS DAVIS
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 660-4400
Jacob.Davis@nallslaw.com
gthomas@toledofhc.org
*Attorneys for Plaintiffs, Fair Housing Opportunities of Northwest Ohio, Inc. and Silma Espinosa*

## CERTIFICATION REGARDING PAGE LIMITATIONS

This matter is assigned to a standard track. I certify this Memorandum complies with the page limitations specified in Local Rule 7.1(f).

/s/ C. Jacob Davis
C. Jacob Davis (#0101745)
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I, C. Jacob Davis, Attorney for Plaintiffs, hereby state that the foregoing Plaintiffs' Motion for Summary Judgment and Memorandum in Support was electronically filed on this 16th day of August, 2024. Defendants' counsel will receive an electronic copy via the Pacer E-filing system.

**EDWARD ROSE DEVELOPMENT COMPANY, LLC**
**ATTN: Matthew Disbrow and Haba Yono**
***Attorneys for Defendant***
**hyono@honigman.com**
**mdisbrow@honigman.com**

Respectfully submitted,

/s/ C. Jacob Davis
C. Jacob Davis (#0101745)
*Attorney for Plaintiffs*

**Dated:** August 16, 2024