Plaintiffs' Exhibit #4
Letter of Determination

# OHIO CIVIL RIGHTS COMMISSION

Governor Mike DeWine
Commissioners: Lori Barreras, Chair | J. Rita McNeil Danish | William Patmon, III | Madhu Singh | Charlie Winburn
Executive Director Angela Phelps-White

**February 9, 2023**

**Mailed Date: February 9, 2023**

Silma Espinosa
26777 Lakevue Drive
Perrysburg OH 43551
silma.espinosa@gmail.com

RECEIVED
FEB 13 2023

Warren Rose, CEO
Edward Rose Development Company LLC
6101 Newport Road
P.O. Box 3015
Kalamazoo, MI 49003

**LETTER OF DETERMINATION**
Silma Espinosa v. Edward Rose Development Company, L.L.C.
TOLH2(41468)05112022/05-22-5840-8

**FINDINGS OF FACT:**
On May 11, 2022, Charging Party, Silma Espinosa filed an affidavit with the Ohio Civil Rights Commission ("Commission") alleging Respondent(s), Edward Rose Development Company, L.L.C. (herein after referred to as the "Respondent") applied different terms and conditions and denied a reasonable accommodation based on disability. All jurisdictional requirements for filing a charge have been met.

Respondent, Edward Rose Development Company, L.L.C. is a real estate development and management company that manages multifamily housing communities. Respondent, Edward Rose Development Company, L.L.C. is the owner and manager of the premises known as Tracy Creek Apartments. Tracy Creek Apartments are located at 29181 Tracy Creek Drive, Perrysburg, Ohio 43551. Tracy Creek Apartments is a three-story apartment complex with 576 units. The subject property was built in 2004.

Charging Party is a disabled individual. Charging Party states her partner and her were looking for a new apartment. Charging Party called Tracy Creek Apartments to ask about vacancies. The property manager asked her if she had any pets. Charging Party stated that her partner and her each have an Emotional Support Animal (ESA). The property manager said "well, that's basically a pet".

Charging Party asked about making a reasonable accommodation request for the ESA's to waive any pet fees. The manager stated that the pet fees would be waived if Charging Party provided Tracy Creek's verification form to her physician and her physician faxed it back to Tracy Creek. Charging Party explained that her partner and her already had verification letters and that Charging Party's is from a therapist. The property manager insisted on the physician's verification form she would provide and that it had to be faxed from the physician.

Charging Party contacted The Toledo Fair Housing Center, and they conducted testing. The testing showed that Tracy Creek's policy is that reasonable accommodation requests for ESA's are not considered until an applicant has applied for, been approved for, and signed a lease for an apartment. It is also the policy of Tracy Creek to request verification be provided directly from a doctor to management. This policy is more restrictive than the Fair Housing Act's requirements to make a reasonable accommodation request, under which the request can be made at any time during the process with verification from a qualified third party.

This policy deters people with disabilities from accessing housing at Tracy Creek.

Respondent denies any discriminatory conduct in this matter. Respondent states on or around June 9, 2021, Charging Party called Tracy Creek Apartments to inquire about an apartment. Mary Lynn Bick, leasing agent spoke with Charging Party. Bick does not recall the conversation with Charging Party, as this conversation took place approximately a year ago.

Respondent states Bick emailed Charging Party following their conversation. In the email, Bick informed Charging Party of the availability of a two-bedroom apartment along with the rental rate, utilities, and internet. Bick informed Charging Party of the general procedure for requesting an ESA, which included signing a release form to be submitted to the physician, and in turn, having the physician fill out the form provided by Respondent. However, this is not the sole procedure Respondent uses for ESA requests.

Respondent states the ESA policy simply requires:

1. Verification from a licensed medical practitioner.
2. Verification must show the relationship between the disability and the accommodation requested.
3. Practitioner must be licensed and practicing within the same state as the applicant and support animal.

Respondent states if Charging Party provided the verification letter from her therapist, then such a letter would have been accepted by Respondent, provided the letter showed a relationship between the disability and the accommodation requested. If Bick received such a letter, she would have forwarded it to her property manager. The property manager would then direct the letter to the Assistant Director of Property Management and/or the Director of Property Management, and they would assess the request for an accommodation.

Respondent states that they provide tenants a verification form in the event the tenant or prospective tenant does not already possess a verification letter. This form assists the tenant as the tenant is not required to follow up with his or her practitioner, and Respondent sends the verification form directly to the practitioner. In the verification form, a provider is not prompted to provide the disability or diagnosis but instead must merely affirm or deny if the individual has a disability and has a disability related need for a service/companion animal.

Respondent states Charging Party never provided her verification letter. Consequently, Respondent never denied any accommodation request, as Bick never engaged in the interactive process. Respondent states Bick followed up and emailed Charging Party twice after their conversation on June 11 and June 25, 2021. This was to check to see if Charging Party wanted to schedule a tour and if Charging Party was still interested in Tracey Creek Apartments. MeetElise, Respondent's virtual assistant also checked in with Charging Party on June 11 and June 16, 2021, to see if Charging Party was interested in an apartment. Charging Party never followed up, ever applied for an apartment, and never submitted any note regarding an ESA. Charging Party is welcome to submit her verification letter and Respondent will consider it.

Respondent states they merely require some verification of a disability and its relationship to the accommodation requested. While Charging Party claims they had verification letters, they never submitted any such letters. Therefore, Respondent could do nothing despite multiple attempts to contact Charging Party. Charging Party alleges they informed the agent that they had a verification letter and the agent insisted that Respondent required the physician to fill out Respondent's verification form.

Staff reviewed relevant documentation. Documents show that Charging Party did inquire to the subject property on or about June 9, 2022. Charging Party did inform Respondent of a reasonable accommodation request regarding her ESA.

Information shows that Respondent requested documents be completed and faxed to the physician by Respondent without requesting the medical documents from Charging Party or any knowledge of the documents that the Charging Party could provide.

The Ohio Civil Rights Commission's Technical Policy T-31.3 states, in relevant part:

"Under the federal Fair Housing Act and R.C. Chapter 4112, the requester must demonstrate one or more persons living or intending to reside in the unit have a disability, and there must be a relationship between the requested accommodation of an animal and the disability. Once the request is made, a housing provider has a limited right to additional information. On occasions, the person verifying the need for the emotional support animal is at issue. The Commission takes the position that any health service providers may have a role in supporting a disabled person's need for an ESA not just a medical doctor. The Commission also recognizes that a tenant may provide information from a non-medical entity supporting the need for an ESA.

Information shows Respondent did not engage in the interactive process to accommodate the Charging Party's requests. Respondent discontinued the interactive process, at the point Charging Party queried about the medical documents already obtained. Respondent never answered or provided follow up discussion.

Upon discovery Respondent's policies and reasonable accommodation request form states in part:

> According to federal law, 24 CFR § 100.204, you are eligible for a reasonable accommodation to our policies. We routinely make accommodations for residents who are eligible for a companion animal. We do have a concern regarding the breed of your companion animal.
>
> Despite our reservations, we will approve your request for an exception to our policy with the following conditions:
>
> Dog will be made available for an individualized assessment of the animal's conduct. Please contact the Property Manager for this evaluation;
>
> Resident will comply with all state and local ordinances regarding immunization, licensing and control of animal. Resident agrees to treat dog for and maintain preventative flea, tick and heartworm control;

The Ohio Civil Rights Commission's Technical Policy T-31.3 states, in relevant part:

> "Landlords should treat each situation on a case-by-case basis and not deny an ESA simply because of the breed of the animal, such as a pit bull or mixed breed dog. Ohio law was amended to remove breed specific restrictions. If concerns are raised, more exploration can be conducted with the disabled person about the animal.

Respondent's documents also show the following:

> "Practitioner must be licensed and practicing within the same state as the applicant and support animal."

The Ohio Civil Rights Commission's Technical Policy T-31.3 states, in relevant part:

"The Commission takes the position that a health services provider does not have to hold an Ohio license to verify the need for the animal. First, a provider, who holds a valid Ohio telemedicine certificate, may so attest. Additionally, if the patient has seen a health care professional licensed in another state, the provider may verify the disability or need for an ESA as long as the last contact with the patient occurred within the past twelve months from the date of the accommodation request."

Information shows that Respondent's have policies and procedures that are a violation of Ohio Revised Code 4112.

**DECISION:**
The Ohio Civil Rights Commission determines it is **PROBABLE** that Respondent has engaged in an unlawful discriminatory practice in violation of Ohio Revised Code Chapter 4112. Therefore, the Commission hereby orders that this matter be scheduled for **CONCILIATION**.

In accordance with Ohio Revised Code § 4112.05(A) and Ohio Administrative Code § 4112-3-03(C), the Commission invites you to participate in conciliation by informal methods of conference, conciliation, and persuasion. Enclosed is a draft Conciliation Agreement and Consent Order for your consideration.

Brad Adams has been assigned as Conciliator and can be reached by telephone at 419-245-2911 or by email at Brad.Adams@civ.ohio.gov@civ.ohio.gov. **Please contact the Conciliator to discuss the conciliation process.**

If the Commission's attempts at conciliation are unsuccessful, a formal complaint will be issued, and the case will be scheduled for a public hearing.

**NOTICE OF RIGHT TO REQUEST RECONSIDERATION:**
Pursuant to Ohio Administrative Code § 4112-3-04, you have the right to request reconsideration of this determination of the Commission. The application must be in writing and state specifically the grounds upon which it is based. If you wish to appear before the Commissioners to present oral arguments supporting your request, you must specifically make a request to appear in writing.

This request must be sent to the Compliance Department, Ohio Civil Rights Commission, 30 East Broad Street, 5th Floor, Columbus, Ohio 43215. You must submit the request for reconsideration, along with all additional evidence or supporting documentation, within **TEN (10) days** of the date of mailing of this notice.

Any application for reconsideration or additional materials received by the Compliance Department in the Commission's Columbus Central Office after the ten-day period has expired will be deemed untimely filed. Extensions of this ten-day filing period are not permitted.

***Please note, conciliation efforts do not toll the applicable time period for submitting a Request for Reconsideration. See, Ohio Administrative Code § 4112-3-04.*

FOR THE COMMISSION,

*William E. Baskin, Jr.*

William E. Baskin, Jr.
Toledo Regional Supervisor

WEB/sms

Enclosure: Draft Conciliation Agreement and Consent Order

cc: **Charging Party's Representative**
Rachael Fortlage, Staff Attorney
The Fair Housing Center
326 N. Erie Street
Toledo, OH 43604
rfortlage@toledofhc.org

**Respondent's Representative**
Haba K. Yono
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
hyono@honigman.com