IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.

and

SILMA ESPINOSA,

Plaintiffs,

v.

EDWARD ROSE DEVELOPMENT COMPANY, LLC,

Defendant.

Case No. 3:23-cv-01297-JJH
Hon. Jeffrey J. Helmick

---

**DEFENDANT EDWARD ROSE DEVELOPMENT COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT**

Defendant Edward Rose Development Company, LLC ("Edward Rose" or the "Company"), by and through its attorneys Honigman LLP, respectfully moves this Court, pursuant to Rule 56 of the Federal Rules Civil Procedure, for the entry of summary judgment in its favor. Edward Rose is entitled to summary judgment as a matter of law, and all the claims asserted by Plaintiffs Fair Housing Opportunities of Northwest Ohio, Inc. d/b/a The Fair Housing Center ("TFHC") and Silma Espinosa ("Espinosa") (collectively, "Plaintiffs") should be dismissed with prejudice. In support of its motion, Edward Rose relies on the accompanying Memorandum of Points and Authorities, as well as all attached exhibits and applicable case law.

WHEREFORE, Edward Rose respectfully requests that this Court grant this motion, award judgment in Edward Rose's favor on all of Plaintiffs' claims, dismiss the Complaint in its entirety, with prejudice, and grant Edward Rose any other relief the Court deems just and proper.

Respectfully submitted,

HONIGMAN LLP

By: <u>*/s/ Matthew S. Disbrow /*</u>
Matthew S. Disbrow (MI-P65378)
(Admitted *pro hac vice*)
Haba K. Yono (MI-P81114)
(Admitted *pro hac vice*)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7000
F: (313) 465-8271
mdisbrow@honigman.com
hyono@honigman.com

August 16, 2024

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC.

and

SILMA ESPINOSA,

Plaintiffs,

v.

EDWARD ROSE DEVELOPMENT COMPANY, LLC,

Defendant.

Case No. 3:23-cv-01297-JJH
Hon. Jeffrey J. Helmick

---

**<u>DEFENDANT EDWARD ROSE DEVELOPMENT COMPANY, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

STATEMENT OF ISSUES .......... v

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

II. STATEMENT OF MATERIAL FACTS .......... 1

A. Edward Rose Complies With All Fair Housing Laws and Provides Comprehensive FHA Training .......... 1

B. Residents Are Not Required to Use the ESA Request Form .......... 2

C. Edward Rose's Application Process .......... 2

D. Leasing Agent Mary Lynn Bick's Employment and Training at Tracy Creek .......... 3

E. Espinosa Shows No Sign of any Alleged Disability .......... 3

F. Espinosa's Alleged Apartment Search and Their One Call with Tracy Creek .......... 4

G. Tracy Creek Contacts Espinosa on Multiple Occasions, Without a Response .......... 5

H. TFHC Conducts Testing, But Finds No Evidence of Discrimination .......... 6

I. Despite the Lack of Evidence, Plaintiffs File Their Baseless Lawsuit .......... 7

III. STANDARD OF REVIEW .......... 7

IV. ARGUMENT .......... 8

A. Plaintiffs' Discrimination Claims Lack All Merit .......... 8

(a) Espinosa Cannot Establish a Covered "Disability" .......... 9

(b) Espinosa Never Applied for an Apartment and Was Not Qualified to Rent .......... 10

(c) Edward Rose Never Denied Espinosa Housing Nor an ESA .......... 11

(d) Housing Was Not Available .......... 11

1. Edward Rose Had Non-Discriminatory Reasons for Its Actions and Plaintiffs Cannot Establish Pretext .......... 11

B. Plaintiffs' Failure-to-Accommodate Claims Lack All Merit .......... 12

1. Edward Rose Did Not Know of any Alleged Disability .......... 12

2. The Requested Accommodation Was Not Necessary ........................................ 14

3. Edward Rose Did Not Refuse to Make the Accommodation .............................. 15

C. Plaintiffs Cannot Establish Negligent Training and Supervision ................................... 16

1. Plaintiffs Cannot Prove Bick Was Incompetent ................................................. 17

2. Edward Rose Had No Actual of Constructive Knowledge of Incompetence ..... 17

3. Plaintiffs Have Suffered No Injury ..................................................................... 18

4. Edward Rose Provides Comprehensive Training on Fair Housing Laws.......... 19

V. CONCLUSION ................................................................................................................ 20

CERTIFICATE OF COMPLIANCE WITH L.R. 7.1 ................................................................. 21

# TABLE OF AUTHORITIES

**Cases**


*Beckloff v. Amcor Rigid Plastics USA, LLC*, 93 N.E.3d 329, 342 (Ohio Ct. App. 2017)............. 19

*Bogdan ex rel. Terry v. Serv. Specialties, II, Inc. ex rel. Davis*, No. 05-72186, 2006 WL 1494951, at *6 (E.D. Mich. May 25, 2006).................................................................... 8

*Brower v. Roose*, No. 24-CV-10702, 2024 WL 1694860, at *5 (E.D. Mich. Apr. 19, 2024)...... 17

*Camp v. Star Leasing Co.*, No. 11AP–977, 2012 WL 3291798 (Ohio Ct. App. Aug. 14, 2012). 10

*Clark v. Lafayette Place Lofts*, No. 14-12519, 2016 WL 11486917, at *4 (E.D. Mich. Aug. 3, 2016)........................................................................................................................... 13

*Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1180 (9th Cir. 2006) 18

*Fair Hous. Ctr. of Cent. Ind. v. Grandville Coop., LLC*, No. 1:16-CV-00300, 2017 WL 75447, at *4 (S.D. Ind. Jan. 9, 2017)........................................................................................... 22

*Farm Bureau Gen. Ins. Co. of Mich. v. Schneider Nat'l Carriers*, 552 F. Supp. 3d 750, 761 (S.D. Ohio 2021)................................................................................................................ 20

*Fry v. Wheatland Tube, LLC*, 135 N.E.3d 420, 439 (Ohio Ct. App. 2019)................................. 19

*Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*, 508 F.3d 366, 371 (6th Cir. 2007)........................................................................................... 8, 9, 13

*Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 468 (11th Cir. 2009) ........................................................................................................................... 14, 15

*Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014).................. 14, 16

*Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 745 (N.D. Ohio 2008)...................................... 21

*Johnson v. Levy*, 812 F. Supp. 2d 167, 180 (E.D.N.Y. 2011)..................................................... 11

*Kennedy v. Related Mgmt.*, No. 08 Civ. 3969(PAC), 2009 WL 2222530, at *4 (S.D.N.Y. July 23, 2009)........................................................................................................................... 11

*LaMusga v. Summit Square Rehab, LLC*, 94 N.E.3d 1137, 1144 (Ohio Ct. App. 2017) . 19, 22, 23

*Landmark Properties v. Olivo*, 5 Misc. 3d 18, 783 N.Y.S.2d 745, 747 (App. Term 2004)......... 17

*Lindsay v. Yates*, 578 F.3d 407, 421 (6th Cir. 2009).................................................................. 13

*Mancuso v. Douglas Elliman, LLC*, 808 F. Supp. 2d 606, 619 (S.D.N.Y. 2011)......................... 12

*McCree v. Lexington Vill. Apartments*, No. 08-14185, 2010 WL 931859, at *6 (E.D. Mich. Mar. 11, 2010) ........ 10

*Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634-35 (6th Cir. 2000)........ 9, 11

*Nason v. Stone Hill Realty Ass'n*, No. 961591, 1996 WL 1186942, at *3 (Mass. Super. Ct. 1996) ........ 16, 18

*Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617 (6th Cir. 2011)........ 9, 14, 18

*Reeves v. Rose*, 108 F. Supp. 2d 720, 726 (E.D. Mich. 2000)........ 13

*Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1038 (2d Cir. 1979) ........ 12

*Savel v. MetroHealth Sys.*, 96 F.4th 932, 939 (6th Cir. 2024)........ 22

*Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 678 (Ohio Ct. App. 2015)........ 19

*Silvers v. Clay Twp. Police Dep't*, 117 N.E.3d 954, 968 (Ohio Ct. App. 2018) ........ 20

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-10 (1993)........ 9

*Strader v. Johnson*, No. 98AP-202, 1998 WL 894602, at *3 (Ohio Ct. App. Dec. 22, 1998) ........ 8

**Statutes**

24 C.F.R. § 100.201(b) ........ 9

42 U.S.C. § 3602(h) ........ 9

42 U.S.C. § 3604(f)(2)(A)........ 8

OHIO REV. CODE ANN. § 4112.01(A)(13) ........ 9

## STATEMENT OF ISSUES

1. **Should the Court grant Defendant's Motion for Summary Judgment where Defendant did not discriminate against Plaintiff Espinosa or deny them housing because Espinosa never applied for housing, nor did they submit an ESA request, and their discrimination claims otherwise fail as a matter of law?**

| | |
|---|---|
| Defendant answers: | Yes. |
| Plaintiffs answer: | No. |
| This Court should answer: | Yes. |

2. **Should the Court grant Defendant's Motion for Summary Judgment where Defendant never refused to make an accommodation, and, among other things, Espinosa never submitted an ESA request, Defendant did not know of the alleged disability, and Plaintiffs' failure-to-accommodate claims otherwise fail as a matter of law?**

| | |
|---|---|
| Defendant answers: | Yes. |
| Plaintiffs answer: | No. |
| This Court should answer: | Yes. |

3. **Should the Court grant Defendants' Motion for Summary Judgment where Plaintiffs fail to show negligent training and supervision, Defendant provided comprehensive fair housing training to employees, Defendant never received a complaint of its employee's purported incompetence, and the negligence claim otherwise fails as a matter of law?**

| | |
|---|---|
| Defendant answers: | Yes. |
| Plaintiffs answer: | No. |
| This Court should answer: | Yes. |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' entire complaint arises from one call, lasting less than ten minutes, between Espinosa and an Edward Rose leasing agent. Espinosa claims a leasing agent at Tracy Creek Apartments ("Tracy Creek") stated that a resident must fill out a verification form for an emotional support animal ("ESA"), but Espinosa wished to submit a therapist letter. Yet, Espinosa never followed up with Edward Rose – despite the Company's multiple attempts to contact Espinosa. Moreover, Espinosa ***never*** actually applied for an apartment at Tracy Creek or submitted an ESA request. Based on this short interaction, Plaintiffs filed their three-count complaint, alleging discrimination and failure-to-accommodate under the Fair Housing Amendments Act ("FHAA") and the Ohio Civil Rights Act ("OCRA"), along with a negligent-supervision-and-training tort claim. Such claims are profoundly flawed.

Plaintiffs' claims fail for several reasons. Among other things, Plaintiffs' discrimination claim fails because Espinosa was not qualified to rent an apartment, failing to submit any application. Thus, Edward Rose never denied Espinosa anything. Plaintiffs' failure-to-accommodate claim also fails because Espinosa is not disabled as defined under the FHAA or OCRA. Further, Edward Rose had no knowledge of any disability, because Espinosa never disclosed it. Also, an ESA was not necessary. Nonetheless, Edward Rose never refused to make any accommodation because Espinosa never submitted a request. Likewise, the negligent training or supervision claims are baseless. Edward Rose provides comprehensive training to employees on an annual basis. There is simply no merit to this case.

## II. STATEMENT OF MATERIAL FACTS

### A. Edward Rose Complies With All Fair Housing Laws and Provides Comprehensive FHA Training

Edward Rose manages several housing communities, including Tracy Creek. **Ex. A**, ¶¶ 1-

2. It complies with all applicable fair housing laws and requires employees to follow its fair housing policies. *Id.* at ¶ 4; **Exs. B-C.** Employees must complete fair housing training upon hire and annually. **Ex. A**, ¶ 5. Training includes modules covering reasonable accommodations and assistance animals. **Ex. D.** Edward Rose also directs employees to submit requests to their manager for review "[i]f a prospective resident or resident requests any accommodation." **Ex. E**, ER000101 (emphasis in original).

Edward Rose's fair housing policies and training are quite detailed. For instance, where a disability and the related need are readily apparent, no supporting documentation is needed for an accommodation request. **Ex. A**, ¶ 7; *see also* **Ex. D**, ER000084. If the disability is not apparent, a resident may (i) submit a supporting letter regarding the requested accommodation (including for an ESA), or, (ii) if the resident has no documentation, they may fill out a provided verification form. **Ex. A**, ¶ 8; **Ex. F**; *see also* **Ex. D**, ER000083. The form is intended to assist the resident. **Ex. A**, ¶ 10. It avoids follow ups and ensures the correct information is obtained. *Id.* at ¶ 10. Still, the information requested is limited to: (1) if the person is disabled under the FHA; (2) if the person has a disability-related need for a service/companion animal; (3) identification of the animal; and (4) if one animal is sufficient. **Ex. F**.

**B. Residents Are Not Required to Use the ESA Request Form**

While this form is helpful, it is not required. **Ex. A**, ¶ 8; **Ex. D**, ER000083. Edward Rose routinely grants ESA requests coming directly from healthcare providers. **Ex. A,** ¶ 11; *see also* **Ex. G.** For example, one resident submitted an ESA request based on a letter from his provider that simply stated the resident had an ESA for his "health and wellness," and Tracy Creek approved it. *Id.*

**C. Edward Rose's Application Process**

If someone wants to live at Tracy Creek, they must submit an application. **Ex. A**, ¶ 12. Once they apply, Edward Rose conducts a background check including, without limitation, on the applicant's credit, criminal, and rental history. **Ex. E,** ER000104-ER000105. Edward Rose can only make a rental decision after this process is completed. *Id.* at ER000105; **Ex. A**, ¶ 13. If a person makes an inquiry, but does not apply and permit the background check, Edward Rose cannot approve or deny anything. **Ex. A**, ¶ 14. In short, they are not qualified to rent an apartment. *See id.* at ¶ 12.

**D. <u>Leasing Agent Mary Lynn Bick's Employment and Training at Tracy Creek</u>**

Maryn Lynn Bick worked as a leasing agent and then an office coordinator at Tracy Creek from October 2007 to April 2024. *Id.* at ¶ 16. She completed Edward Rose's fair housing training during her tenure. *Id.* at ¶ 21. In the last fourteen years of her employment, Bick never received any corrective action. *Id.* at ¶ 18. In fact, in her sixteen-year employment, she only has a single written corrective action in 2010, and this warning had nothing to do with accommodation requests. *Id.* at ¶ 17.

**E. <u>Espinosa Shows No Sign of any Alleged Disability</u>**

Espinosa has a consistent work history. *See* **Ex. H**, 15:19-22, 17:19-18:10. Previously, Espinosa worked for TFHC as a "fair housing specialist". *Id.* at 17:22-18:8. Espinosa currently works for the Toledo Municipal Court, where they[1] oversee a staff of eight and perform various duties. *Id.* at 15:19-16:4, 16:16-17:2. Espinosa has requested no workplace accommodations and has never submitted an ESA request for work. *Id.* at 30:16-31:2. Espinosa holds a driver's license and can travel to work with no issue. *See id.* at 20:14-19.

Espinosa acquired their cat between 2015 and 2017. *Id.* at 12:13-17. At that time, Espinosa

[1] Espinosa uses they/their pronouns.

lived with their brother. *Id.* at 12:14. In 2020, Espinosa moved into Glendale Apartments. *Id.* at 11:14-16. Glendale had a no pet policy, so Espinosa submitted a letter from a social worker recommending an ESA. *Id.* at 14:8; **Ex. I.** The social worker merely recommended an ESA to help Espinosa in "dealing with [their] disability better." **Ex. I.** Espinosa states they have bipolar and generalized anxiety disorders. **Ex. H**, 31:23-24. Espinosa further testified the treatment for their disorders are medication and therapy. *Id.* at 36:8-12.

### F. <u>Espinosa's Alleged Apartment Search and Their One Call with Tracy Creek</u>

Espinosa says they began a new apartment search in 2021. *Id.* at 41:8-12. Espinosa found Tracy Creek online and submitted a message to Tracy Creek. *Id.* at 50:10-11; **Ex. J**, Response to RFA Nos. 10-11. On June 9, 2021, Espinosa spoke with Bick – for less than ten minutes. **Ex. H**, 63:1-2; **Ex. K**. According to Espinosa, Bick asked if they had any pets, and Espinosa answered they have an ESA. **Ex. H**, 67:17-20. While Espinosa claims Bick replied, "that's basically a pet," this is disputed and of no consequence. *Id.* at 67:21-22. The Tracy Creek application includes a pet section clearly providing an option to identify ESAs/service animals. **Ex. N.** Espinosa concedes they do not know if Bick's comment was referencing the application. **Ex. H**, 72:9-15.

Espinosa then asked if they would be charged a pet fee, and Bick answered no. *Id.* at 67:24-25. According to Espinosa, Bick advised Espinosa that Tracy Creek could fax a form to Espinosa's physician and once the physician completed it, Tracy Creek would process the request. *Id.* at 67:25-68:4. Espinosa claims they advised Bick they already had a therapist letter, and Bick replied she would have to submit the form to Espinosa's physician. *Id.* at 68:7-8, 68:20-22. Espinosa then inquired "[a]re you sure I can't just submit a letter that I have?" *Id.* at 69:13-14. Espinosa claims that Bick answered she would fax the form to the physician. *Id.* at 69:17-19. However, when questioned if Bick ever informed Espinosa that their letter would not be accepted, Espinosa

stated they do not recall. *Id.* at 71:10-15. In fact, Bick did not state whether a request for an ESA would be approved or denied because she had no authority to do so. **Ex. H**, 106:25-107:2; **Ex. A**, ¶ 17. Instead, all such requests are escalated to management. **Ex. A**, ¶¶ 17-18; **Ex. E**. Moreover, there was nothing to review because Espinosa did not submit anything. **Ex**. **H**, 92:18-22. This was a short phone call. *Id.* at 63:1-2. Even Espinosa cannot swear under oath that Bick rejected their ESA letter. *Id.* at 71:11-13.

Espinosa claims to have lost interest in Tracy Creek because of the call with Bick. *Id.* at 62:14-16. However, Espinosa did not apply to any other apartment complex in the summer of 2021. *Id.* at 47:17-19. Instead, Espinosa waited until Perry Lake Village had availability and moved into that community, because their sister lived there. *See id.* at 10:4-5; 42:19-23; 44:9-11, 44:17-18. They resided at Perry Lake until April 2024. *Id.* at 10:2-5.

### G. Tracy Creek Contacts Espinosa on Multiple Occasions, Without a Response

Following the phone call, Bick followed up with Espinosa on multiple occasions to see if they were interested in applying, including contacts on June 9, 2021, June 11, 2021, and June 25, 2021. **Ex. M.** Espinosa never responded to Bick's messages. *Id.* MeetElise, Edward Rose's virtual assistant, also checked in with Espinosa on three occasions, including the following:

1. June 10, 2021--"Hi Silma, I wanted to reach out and see if you're still interested in our community? Here's the link to our website www.tracycreek-apartments.com I would love to set up a tour for you to learn more about our community. Thank you!"

2. June 11, 2021--"Hi Silma, I wanted to check in again and see if you're still looking for an apartment? If so, I'd love to set up a time for you to connect with one of our leasing agents to learn more about our community! Have a great day!"

3. June 16, 2021--"Hi Silma, I hope you're doing well! If you're still considering your options, I'd love to help with whatever you need! I would love to set up a time for you to see our community."

**Ex. K**. Altogether, Edward Rose attempted to contact Espinosa no less than **six times** following

the call with Bick.[2] **Exs. K, M.** Espinosa never responded. *Id.* Espinosa conceded they never (i) followed up with Tracy Creek, (ii) asked to speak to management, (iii) submitted their therapist letter, or (iv) submitted a rental application. **Ex. H**, 92:12-22, 107:3-8. However, the record is clear that Tracy Creek still was interested in renting an apartment to Espinosa. **Exs. K, M.**

**H. <u>TFHC Conducts Testing, But Finds No Evidence of Discrimination</u>**

Despite failing to follow up with Tracy Creek, Espinosa contacted their former employer, TFHC, to complain. *See* **Ex. H**, 87:2-4. TFHC then conducted matched pair testing at Tracy Creek, one with a disability and an assistance animal and one without. **Ex. N.** As for the individual with the disability, TFHC specifically instructed the testers to "[c]asually mention that you have an assistance [animal] and a verification letter from your **therapist** (not a physician) and ask if there is a fee for the animal." *Id.* at Plaintiffs 00082 (emphasis in original). TFHC conducted three rounds of testing. **Exs. N-P.** With the first round, a tester failed to return the materials. **Ex. N.** With the second round, the tester advised the agent that she had a therapist's letter and asked if she would be charged fees for her ESA. **Ex. Q,** 3:38-3:54. The agent answered she would not be charged and at no time during the conversation did the agent state this letter would be unacceptable. *Id.* at 3:55-3:59.

Unsatisfied, TFHC conducted another round of testing. **Ex. P.** In the third round, TFHC claims it confirmed Edward Rose's policy violated the FHAA, but this untrue. **Ex. R**, 142:17-21. At no time did the tester mention she had a therapist letter. **Ex. S.** Instead, she merely stated she had an ESA, and the agent replied, "OK, not a problem." *Id.* at 4:43-4:51. Later, the agent stated:

Once approved (for a lease) we would have you come in and fill out the service animal

[2] Espinosa claims they never received such emails as the email address was incorrect. *See* **Ex. J**, Response to RFA Nos. 3-9. However, Espinosa admits they sent a message, stating they were interested in the apartment, and Edward Rose replied to that email account. *Id.* at Response to RFA Nos. 10-11.

> paperwork so we can send it your medical provider, you would give us their name address and phone and fax number, we would send them that and it would come back and say yes, its approved and we waive the fee.

*Id.* at 13:08-13:29. Again, the tester never said she had a therapist letter. *See id.* Thus, the testing conducted by TFHC proves nothing. *See id.* Nowhere in that exchange does the agent state the form is the only way to get an ESA approved. *See id.* In fact, TFHC's testing confirms Edward Rose has no policy or procedure of rejecting a therapist's letter and mandating only use of their form. *See* **Exs. Q, S.**

### I. Despite the Lack of Evidence, Plaintiffs File Their Baseless Lawsuit

The facts in this case support no fair-housing violation or other claims.[3] Nonetheless, Plaintiffs proceeded to file the instant lawsuit (ECF # 1), costing Edward Rose substantial damages and wasting this Court's time and resources. As further demonstrated below, neither the law nor the facts support this case, and it should be dismissed with prejudice.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;

[3] Plaintiffs may attempt to support their position with the Ohio Civil Rights Commission's findings, but they have zero probative value. *See Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009) (holding the commission's finding of probable cause of unlawful discrimination "does not establish a material fact question."); *Kovacs v. Univ. of Toledo*, No. 3:22-cv-02151-JGC, 2023 WL 6518077, at *2 (N.D. Ohio Oct. 5, 2023) (the commission's finding of probable cause has "'an evidentiary value of practically zero.'") (quoting *Alexander*, 576 F.3d at 562). Moreover, the Attorney General's office elected not to pursue the OCRC's findings.

the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original). Rule 56 requires summary judgment against a party who fails to establish an essential element to their case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, a scintilla of evidence in support of the non-moving party's position will not suffice. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002). There must be evidence on which a jury could reasonably find for the non-moving party. *Id.*

## IV. ARGUMENT

### A. Plaintiffs' Discrimination Claims Lack All Merit

The FHAA prohibits discriminating "against any person...in the provision of services or facilities in connection with such dwelling, because of a handicap of...that person....'" 42 U.S.C. § 3604(f)(2)(A). Given the OCRA parallels the FHAA, courts analyze the OCRA under the "analogous federal statutes." *Strader v. Johnson*, No. 98AP-202, 1998 WL 894602, at *3 (Ohio Ct. App. Dec. 22, 1998). Plaintiffs' claims fail both under state and federal law.

Plaintiffs have no direct evidence of discrimination and must proceed under the *McDonnell Douglas* framework. *Bogdan ex rel. Terry v. Serv. Specialties, II, Inc. ex rel. Davis*, No. 05-72186, 2006 WL 1494951, at *6 (E.D. Mich. May 25, 2006). Plaintiffs first must make a *prima facie* showing of disability discrimination. *Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*, 508 F.3d 366, 371 (6th Cir. 2007). The burden then shifts to Edward Rose to articulate a legitimate, non-discriminatory basis for the decision. *Id.* Nonetheless, the burden of persuasion always remains with Plaintiffs. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-10 (1993). If Edward Rose articulates a non-discriminatory reason for the denial, then the burden shifts a final time to Plaintiffs to establish that Edward Rose's proffered reason was a pretext for discrimination. *Graoch Assocs.*, 508 F.3d at 371. Plaintiffs' claims fail at all levels of this test.

### 1. Plaintiffs Cannot Establish a *Prima Facie* Discrimination Claim

To establish a *prima facie* case of disability discrimination, Plaintiffs must show they: (1) were members of a protected class, (2) applied for and were qualified to rent or purchase the housing, (3) were rejected, and (4) the housing remained available. *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634-35 (6th Cir. 2000). A failure to put forth evidence to establish every single element of a *prima facie* case is fatal to the entire claim. *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617 (6th Cir. 2011). Here, Plaintiffs fail to establish any element above.

#### (a) <u>Espinosa Cannot Establish a Covered "Disability"</u>

The FHAA defines a "handicap" as: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h); OHIO REV. CODE ANN. § 4112.01(A)(13). "An impairment 'substantially limits' a major life activity if a person is unable to perform the major life activity, or if a person is significantly restricted in his or her ability to perform the major life activity, as compared to the average person in the general population." *Camp v. Star Leasing Co.*, No. 11AP–977, 2012 WL 3291798 (Ohio Ct. App. Aug. 14, 2012), at *10. The FHAA regulations define "major life activities" to include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201(b); OHIO REV. CODE ANN. § 4112.01(A)(13).

In *McCree v. Lexington Vill. Apartments*, No. 08-14185, 2010 WL 931859, at *6 (E.D. Mich. Mar. 11, 2010), for example, the court held the tenant's depression was not severe enough to constitute a disability where she could take care of herself, work, and attend college. Similarly, in *Camp*, the court held that plaintiff's depression did not manifest itself with sufficient frequency or sufficient duration to qualify as a "substantially limiting impairment." 2012 WL 3291798, at *12. In other words, it did not hamper "her ability to lead an ordinary life." *Id., see also Childs*

*v. Kroger Co.*, 2023-Ohio-2034, 222 N.E.3d 741, ¶ 95 (10th Dist.) (holding that plaintiff's depression did not substantially limit his ability to work or perform chores at home).

Espinosa's alleged "bi-polar and generalized anxiety disorder" does not rise to the level of disability. **Ex. H**, 31:23-24. Espinosa consistently has held a job and currently works for the Toledo Municipal Court. *Id.* at 15:21-25; 17:19-18:10. Espinosa oversees a staff of eight and performs various duties on a daily basis, including handling the judges' calendars and scheduling courtrooms. *Id.* at 16:1-2, 16:16-17:2. Espinosa has never submitted a request to bring their ESA to work. *Id.* at 30:16-31:2. Further, Espinosa recently purchased a home and has a driver's license. *Id.* at 9:12-15; 20:14-15. In short, Espinosa can work and live independently.

**(b) <u>Espinosa Never Applied for an Apartment and Was Not Qualified to Rent</u>**

Espinosa never applied to Edward Rose for an apartment. *Id.* at 92:21-22. Thus, for that reason alone, Espinosa cannot meet their *prima facie* burden. *See Mencer*, 228 F.3d at 634-35. Also, because they never applied, Espinosa was not qualified to rent. To be considered "qualified" under the FHAA, an individual must generally satisfy the applicable criteria set by the property owner, which includes submitting a rental application. *See e.g., Johnson v. Levy*, 812 F. Supp. 2d 167, 180 (E.D.N.Y. 2011) ("'To satisfy the 'qualified' element for a prima facie [housing discrimination claim], the renter must satisfy the applicable criteria that the owner established.'") (quoting *Kennedy v. Related Mgmt.*, No. 08 Civ. 3969(PAC), 2009 WL 2222530, at *4 (S.D.N.Y. July 23, 2009)); *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1038 (2d Cir. 1979) (same).

Here, Espinosa failed to complete the most basic requirement: submitting an application. No individual is qualified to rent an apartment without applying. **Ex. A**, ¶ 12. Edward Rose received no information of Espinosa's credit history, income, or criminal background to extend either an offer or denial of housing. *Cf. Mancuso v. Douglas Elliman, LLC*, 808 F. Supp. 2d 606,

619 (S.D.N.Y. 2011) (holding plaintiffs were qualified to rent where "plaintiffs have adduced evidence that they submitted all the required documentation and were able to pay similar levels of rent before and after applying to rent Apartment 2020.").

**(c) <u>Edward Rose Never Denied Espinosa Housing Nor an ESA</u>**

Importantly, Edward Rose never denied Espinosa an apartment or an ESA, because she never applied or submitted her ESA letter. *See* **Ex. H**, ¶ 92:18-22. Put another way, there was no adverse action taken whatsoever, and certainly no discriminatory action.

**(d) <u>Housing Was Not Available</u>**

Espinosa inquired about a first-floor, two-bedroom unit, but no such unit was available. **Ex. H**, 63:18-64:12; **Ex. M** (advising that only a two-bedroom second floor unit was available). Again, they cannot meet their *prima facie* burden.

**1. <u>Edward Rose Had Non-Discriminatory Reasons for Its Actions and Plaintiffs Cannot Establish Pretext</u>**

Assuming *arguendo* any adverse action occurred (which it did not), Edward Rose had legitimate, non-discriminatory reasons for not providing Espinosa an apartment or approving an ESA: She never applied for an apartment or submitted a letter regarding an ESA. *See* **Ex. H**, 92:18-22; *see Graoch Assocs.*, 508 F.3d at 371.

Having established its legitimate, non-discriminatory reasons for its actions, the burden shifts back to Plaintiffs to prove pretext. *Graoch Assocs.*, 508 F.3d at 371. Plaintiffs must show that the proffered reasons for Edward Rose's allegedly unlawful actions: "(1) had no basis in fact, (2) were not the actual reasons, or (3) were insufficient to explain the action." *Reeves v. Rose*, 108 F. Supp. 2d 720, 726 (E.D. Mich. 2000). Mere conjecture is an insufficient basis to deny summary judgment. *Lindsay v. Yates*, 578 F.3d 407, 421 (6th Cir. 2009).

There is no evidence of pretext. Edward Rose applies the same criteria to all applicants: they must submit a rental application. **Ex. A**, ¶ 12. Plaintiffs cannot show Edward Rose's action had no basis in fact or was applied only to Espinosa. Consequently, Plaintiffs cannot present a triable issue. *See Clark v. Lafayette Place Lofts*, No. 14-12519, 2016 WL 11486917, at *4 (E.D. Mich. Aug. 3, 2016), *report and recommendation adopted*, No. 14-12519, 2016 WL 5027596 (E.D. Mich. Sept. 20, 2016), *aff'd*, No. 16-2489, 2017 WL 4956920 (6th Cir. Aug. 11, 2017) (no pretext where plaintiff had no evidence he was denied an apartment because of discrimination).

**B. Plaintiffs' Failure-to-Accommodate Claims Lack All Merit**

To prove a failure-to-accommodate claim, a plaintiff must establish: (1) he or his associate suffers from a FHAA-covered disability; (2) the defendant knew or reasonably should have known of the disability; (3) the accommodation was necessary to afford an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) the defendant refused to make the accommodation. *Overlook*, 415 F. App'x at 621. "The burden is on the plaintiff to establish each element." *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014).

As detailed above, Plaintiffs cannot show Espinosa suffers from a covered disability. *See supra* Section IV(A)(1)(a). Plaintiffs also fail to show that Edward Rose knew of a disability, the accommodation was necessary, or that Edward Rose refused to make an accommodation.

**1. Edward Rose Did Not Know of any Alleged Disability**

Edward Rose had no knowledge of Espinosa's alleged disability. Espinosa merely called to inquire about an available unit. *See supra* Section II(F). At no time did Espinosa disclose they had a disability. *Id.* While Espinosa claims to have stated they had an ESA, this is insufficient to impute knowledge of a covered disability. *Id.* Espinosa provided no information about a disability or symptoms of a disability. *Id.*

In *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 468 (11th Cir. 2009), for example, the Eleventh Circuit affirmed that defendants could not have known of the plaintiff's disability when he refused to supplement documentation supporting his request for an accommodation. The plaintiff requested an exception to defendants' no animal policy, claiming he had a physical and mental disability, and his service animal was trained to assist him. 347 F. App'x at 466. In support of this request, he attached a service animal registry certificate, a chiropractor letter, and a psychologist letter, and a description of the tasks the animal could accomplish. *Id.* A month later, defendants requested additional information, including documentation supporting his disability and the qualification of his chiropractor and psychologist. *Id.* Plaintiff did not respond, and defendants denied his request. *Id.* The court stated, "[t]he duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have…the ability to conduct a meaningful review of the requested accommodation." *Id.* at 468 (internal quotation marks and citation omitted). The court reasoned that plaintiff's refusal to comply with subsequent requests prevented defendants from conducting a meaningful review; and thus, defendants "could not have actually known of [plaintiff's] disability and the necessity of a service animal." *Id.*

Like *Hawn*, Espinosa's failure to provide their therapist letter, or even respond to Edward Rose's multiple messages shows Edward Rose was not given any meaningful opportunity to review Espinosa's request. In fact, unlike *Hawn*, where the resident provided multiple documents supporting his request, Espinosa merely referenced a therapist letter on a phone call, but never submitted it. *See* **Ex. H**, 68:7-8; 92:18-20. Accordingly, Edward Rose did not actually know of Espinosa's alleged disability.

### 2. The Requested Accommodation Was Not Necessary

The "necessity element" mandates "a causation inquiry that examines whether the requested accommodation or modification would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled person would receive." *Hollis*, 760 F.3d at 541. To prove this element, plaintiffs must show that, "***but for*** the accommodation," they will be denied an equal opportunity to enjoy the housing. *Id.* (emphasis added); *see also Davis v. Echo Valley Condo. Ass'n,* 945 F.3d 483, 490 (6th Cir. 2019) ("the law does not require more or better opportunities for those with handicaps as compared to those without.") (internal quotation marks and citation omitted).

In *Nason v. Stone Hill Realty Ass'n*, No. 961591, 1996 WL 1186942, at *3 (Mass. Super. Ct. 1996), the court denied a motion for preliminary injunction, holding that the tenant could not prove that a cat was necessary. There, the tenant provided the landlord with a physician letter, which suggested there would be serious negative consequences if she had to remove the cat. *Nason*, 1996 WL 1186942 at *1. The court disagreed and held that, to succeed on her FHAA claim, the plaintiff must "provide evidence which would show a **clear nexus** between [multiple sclerosis] and the need to maintain the cat." *Id.* at *3 (emphasis added). While the court acknowledged that the affidavit provided by the tenant's neurologist did "indicate that removal of the cat would result in 'increased symptoms of depression, weakness, spasticity and fatigue,'" it did not show that such symptoms were "treatable solely by maintaining the cat or whether another more reasonable accommodation [was] available to address [the tenant's] symptoms." *Id.* Thus, the court held that the record failed to clearly establish a nexus between keeping the cat and her disability sufficient to warrant the court to issue an injunction. *Id.*

Likewise, in *Landmark Properties v. Olivo*, 783 N.Y.S.2d 745, 747 (N.Y. App. Div. 2004), the court affirmed the trial court's holding that the tenant failed to establish the necessity of keeping a dog for therapeutic reasons. The court noted that the tenant submitted only a physician note that stated, "depressed people may benefit from having pets" and medical records reflecting that he was anxious about possibly losing his dog. *Id.* at 748. Based on this record, the court held that the plaintiff failed to demonstrate that a dog was necessary for his enjoyment of the premises. *Id.*

In *Brower v. Roose*, No. 24-CV-10702, 2024 WL 1694860, at *5 (E.D. Mich. Apr. 19, 2024), the court held that plaintiffs failed to show the tenant had established necessity for an ESA. Specifically, the tenant submitted a physician's letter that stated he has a "history of anxiety" and "the presence of an emotional support animal will mitigate his symptoms." 2024 WL 1694860, at *5. The court found this letter deficient because "it says nothing about the extent of his anxiety," that his anxiety causes him to experience any "significant functional limitations," and "it does not imply" that designating the cat as an ESA was "necessary to alleviate his anxiety." *Id.*

Here, Espinosa has fails to show the necessity of their request. The therapist letter they proffered (only during discovery) fails to discuss the extent of their purported disability, and it does not provide any support for the notion that Espinosa's cat was necessary to alleviate their "mental illness." Instead, the letter alleges – in conclusory fashion – that the therapist recommends an ESA to "help [Espinosa] in dealing with [their] disability better." **Ex. I.** Furthermore, Espinosa testified their symptoms are treatable by other means: *e.g.*, medication and therapy. **Ex. H**, 36:8-12. Thus, Espinosa fails to establish a clear nexus between their purported disability and the need for the cat. *Nason*, 1996 WL 1186942 at *3.

**3. Edward Rose Did Not Refuse to Make the Accommodation**

Perhaps most critically, Plaintiffs cannot show Edward Rose refused to make any accommodation. Espinosa admits they do not recall the agent ever telling them the therapist letter would be rejected. **Ex. H**, 70:10-15; **Ex. A**, ¶¶ 22-23 (noting Bick has no authority to approve or deny an ESA request and these requests are escalated to management).

In *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1180 (9th Cir. 2006), the court held that the condominium association did not deny the residents' service animal request by asking for additional information from the residents' treating physicians. Similarly, here, even accepting Plaintiffs' allegations as true (that Edward Rose required Espinosa to fill out its ESA verification form), this does not amount to a denial of an ESA request. A request for more information, including an ESA form, is not a denial. *See Overlook*, 415 F. App'x at 621 (holding that the housing provider was entitled to additional information given the psychologist's letter was insufficient to establish a qualified disability and need for an accommodation).

**C. <u>Plaintiffs Cannot Establish Negligent Training and Supervision</u>**

Finally, Plaintiffs oddly claim that a single conversation between Bick and Espinosa establishes a negligent training and supervision claim against Edward Rose. This entirely unfounded. To prove negligent training and/or supervision, a plaintiff must demonstrate "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining [or training or supervising] the employee is the proximate cause of plaintiff's injuries." *LaMusga v. Summit Square Rehab, LLC*, 94 N.E.3d 1137, 1144 (Ohio Ct. App. 2017) (quoting *Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 678 (Ohio Ct. App. 2015) (internal quotation marks omitted). The records in this case in no way can support such a showing.

**1. Plaintiffs Cannot Prove Bick Was Incompetent**

Incompetence means both a failure to perform job duties and inappropriate or obstructive behavior towards others. *See Fry v. Wheatland Tube, LLC,* 135 N.E.3d 420, 439 (Ohio Ct. App. 2019). A mere conversation that lasted less than ten minutes is not sufficient to rise to the level of incompetence. *See, e.g., Beckloff v. Amcor Rigid Plastics USA, LLC*, 93 N.E.3d 329, 342 (Ohio Ct. App. 2017) (holding a discussion with a supervisor—even where the supervisor could be found to be unprofessional, obstructionist, or adversarial—is insufficient to show incompetence or sustain a claim for negligent retention.") Here, not only did the call last less than ten minutes, Espinosa also cannot swear under oath that Bick actually stated a therapist letter was unacceptable. *See* **Ex. H**, 63:1-2, 71:11-13. Further, Bick followed up on multiple occasions, but Espinosa never responded. *See* **Ex. M**.

**2. Edward Rose Had No Actual of Constructive Knowledge of Incompetence**

Even if Bick's conversation with Espinosa could arise to the level of incompetence, Plaintiffs cannot show Edward Rose had actual or constructive knowledge of Bick's purported incompetence. "Evidence of the employee's incompetent act giving rise to the underlying negligence claim is not alone sufficient to support a finding that an employer had actual or constructive knowledge of the incompetence." *Farm Bureau Gen. Ins. Co. of Mich. v. Schneider Nat'l Carriers*, 552 F. Supp. 3d 750, 761 (S.D. Ohio 2021). "At a very minimum, a plaintiff must show that the employer knew or should have known of the hired person's criminal or tortious propensities." *Silvers v. Clay Twp. Police Dep't*, 117 N.E.3d 954, 968 (Ohio Ct. App. 2018) (internal quotations omitted).

In this case, Bick has no material disciplinary record – and no discipline related to ESA/accommodation requests whatsoever. **Ex. A**, ¶¶ 17-18. Additionally, no resident or

prospective resident complained about Bick. *Id.* at ¶ 19. Bick also completed fair housing trainings, and there was no indication that she did not understand Edward Rose's policies or the fair housing laws. *Id.* at ¶¶ 17-21. Espinosa never asked to speak to management about the matter. **Ex. H**, 107:3-8. Nor did TFHC contact Tracy Creek with respect to Bick and Espinosa's conversation. **Ex. R**, 101:22-102:2. There simply was no way for Edward Rose to have had actual or constructive knowledge of any alleged incompetence. *See Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 745 (N.D. Ohio 2008) (noting that in a claim for negligent supervision, "foreseeability is the test of employer liability" and summary judgment should be awarded where plaintiff fails to show evidence that the employee had any criminal or tortuous propensities)(internal quotation marks and citation omitted).

**3. Plaintiffs Have Suffered No Injury**

Espinosa claims they were denied fair and equal housing opportunities because of Bick's acts or omissions, but this is false. Espinosa never submitted a request for an ESA, and no such request was denied. Furthermore, even accepting Espinosa's claim that they were deterred from applying due to a single conversation with Bick (which is untrue), this is not sufficient to show an actual injury. Espinosa's claim of denied housing is merely speculative as Espinosa never made any efforts to apply for housing. Additionally, since Espinosa is attempting to claim injury of discrimination and Espinosa fails to prove their discrimination claims, the negligence claim likewise fails. *See Hout*, 550 F. Supp. 2d at 746 (holding that plaintiffs' negligence claim fails where plaintiffs allege injury based on discrimination, but they cannot prove discrimination and thus, fail to identify any injury).

Likewise, TFHC cannot establish injury caused by Edward Rose. TFHC simply misunderstands (or feigns ignorance about) Edward Rose's policies and procedures – and their

own testing fails to support their claims. TFHC conducted three pairs of testing, with the first set being inconclusive, the second set showing no rejection of a therapist's letter, and the third failing to show Edward Rose accepts only a verification form. **Exs. N-Q, S**. Specifically, the only tester to follow TFHC's instructions of disclosing a therapist letter was never informed the therapist letter would not be accepted or instructed they must fill out the Company's ESA verification form. **Ex. Q.** Accordingly, TFHC cannot show a concrete injury. It merely claims speculative injury based on its faulty conjecture over Edward Rose's policies. *See Savel v. MetroHealth Sys.*, 96 F.4th 932, 939 (6th Cir. 2024) ("the possibility of prospective denial [of a religious accommodation request does not] amount[] to an injury in fact for standing purposes.").

### 4. Edward Rose Provides Comprehensive Training on Fair Housing Laws

Importantly, there is no obligation on landlords to train their employees under the FHAA and ORCA. *See Fair Hous. Ctr. of Cent. Ind. v. Grandville Coop., LLC*, No. 1:16-CV-00300, 2017 WL 75447, at *4 (S.D. Ind. Jan. 9, 2017) (collecting cases). Nonetheless, Edward Rose maintains a comprehensive training regime for its employees on fair housing laws. *See* **Ex. A**, ¶ 5; **Ex. D**. In *LaMusga*, 94 N.E.3d at 1145, the court affirmed summary judgment in favor of the owner for, among other reasons, failure to show negligent training. Specifically, the court held that while a security guard shot and killed a visitor on the property, the training provided was not improper and did not warrant liability on the company as the training program mirrored Ohio's peace officer training course. *Id.* at 1145.

Here, Edward Rose requires its employees to complete fair housing modules on an annual basis, including modules on reasonable accommodations, such as requests for ESAs. **Ex. A**, ¶ 5; **Ex. D**. Like *LaMusga*, this training mirrors the FHAA and OCRA, and Plaintiffs cannot show these trainings are not aligned with the fair housing laws or are otherwise improper. Additionally,

Edward Rose's training goes beyond what is necessary, including, without limitation, because line-level employees do not review or have the authority to grant or deny accommodations requests. **Ex. A**, ¶ 22. Instead, all such requests must be submitted to management for review. **Ex. A**, ¶¶ 22-23; **Ex. E**, ER000101. Management trains its employees to accept any documentation for an ESA request and in turn, escalates such documentation to management for review. *Id.* In the event the tenant or prospective tenant does not have any alternative supporting documentation, and the disability and the need for accommodation is not obvious, then leasing agents are trained to offer Edward Rose's verification form for the tenant's benefit. **Ex. A**, ¶¶ 8, 10.

Similarly, Plaintiffs cannot point to any evidence of negligent supervision. Bick was properly trained and worked at Edward Rose for sixteen years without any previous complaints of fair housing discrimination. *Id.* at ¶¶ 16-21. Accordingly, there is no proximate cause to Plaintiffs' purported injuries.

## V. CONCLUSION

For the reasons above, Edward Rose request this Court grant its Motion.

Respectfully submitted,

HONIGMAN LLP

By: */s/ Matthew S. Disbrow /*
Matthew S. Disbrow (MI-P65378)
(Admitted *pro hac vice*)

Dated: August 16, 2024

**CERTIFICATE OF COMPLIANCE WITH L.R. 7.1**

I hereby certify that this case is assigned to a Standard Case Management Track, ECF No. 9, and the foregoing Brief in Support of Edward Rose's Motion for Summary Judgment adheres to the page limitations set forth in Local Rule 7.1(f).

Respectfully submitted,

HONIGMAN LLP

By: */s/ Matthew S. Disbrow /*
Matthew S. Disbrow (MI-P65378)
(Admitted *pro hac vice*)
Haba K. Yono (MI-P81114)
(Admitted *pro hac vice*)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7000
F: (313) 465-8271
mdisbrow@honigman.com
hyono@honigman.com

**CERTIFICATE OF SERVICE**

This certifies that the foregoing was electronically filed with the Clerk of the Court on August 16, 2024 using the electronic efiling system which will automatically serve copies on all counsel of record.

By: */s/ Matthew S. Disbrow*
Matthew S. Disbrow (MI-P65378)
(Admitted *pro hac vice*)
Honigman LLP