**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **Fair Housing Opportunities of Northwest Ohio, Inc., *et al*.** | : | **Case No.: 3:23-cv-01297** |
| | : | **Judge: Jeffrey Helmick** |
| **Plaintiffs,** | | |
| | : | |
| **v.** | | |
| | : | |
| **Edward Rose Development Company, LLC** | : | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| | : | |
| **Defendant.** | | |

---

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

<u>TABLE OF CONTENTS</u>


TABLE OF AUTHORITIES iii

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 1

STATEMENT OF FACTS 1

LAW AND ARGUMENT 4

I. Plaintiff must prevail on its terms, conditions, and privileges claim because Defendant's policy made it impossible for her to obtain an accommodation, thus treating her differently from others. 5

A. Even if McDonnell-Douglas applies, Espinosa established a covered disability. 8

B. Espinosa did not have to apply for a unit as Defendant misstated the law. 9

C. Defendant cannot show a legitimate, non-discriminatory reason for its action, and its stated reason is pretext for discrimination. 11

II. Plaintiff must succeed in its claim for denial of a reasonable accommodation request as Defendants rely on the notion that it had no intent which is irrelevant. 13

A. Defendant had actual knowledge of Espinosa's disability. 14

B. The requested accommodation was necessary because ESAs have long been held to be reasonable and necessary and Espinosa's verification letter established the necessity of the accommodation requested. 15

C. Defendant refused to make the accommodation by refusing the verification letter, making discriminatory comments, requiring that all verification letters come from Ohio-licensed physicians, and failing to follow up. 18

III. Defendant failed to properly train its leasing agents. 19

CONCLUSION 20

## TABLE OF AUTHORITIES

Cases


| | |
|---|---|
| *Anderson v. City of Blue Ash*, 798 F.3d 338, 360–64 (6th Cir. 2015) | 14, 15 |
| *Arnal v. Aspen View Condo. Ass'n*, 226 F. Supp. 3d 1177, 1184 (D. Colo. 2016) | 8 |
| *Assisted Living Assocs. L.L.C. v. Moorestown Twp.,* 996 F. Supp. 409, 437 (D. N.J., 1998) | 4 |
| *Austin v. Town of Farmington*, 826 F.3d 622, 627 (2d Cir. 2016) | 13 |
| *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1287 (11th Cir. 2014). | 8, 16, 18 |
| *Brower v. Roose*, No. 24-Cv-10702, 2024 U.S. Dist. LEXIS 72233 (E.D. Mich. Apr. 19, 2024) | 16 |
| *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 919-20 (10th Cir. 2012) | 7, 13 |
| *Corey v. Sec'y, United States HUD*, 719 F.3d 322, 326-27 (4th Cir. 2013). | 6 |
| *Developmental Services of Nebraska v. City of Lincoln*, 504 F. Supp. 2d 726, 738 (D. Neb. 2007) | 13 |
| *Edwards v. Gene Salter Properties*, 671 Fed. Appx. 407 (8th Cir. 2016). | 14 |
| *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 562, 60 Fed. R. Evid. Serv. 1616 (7th Cir. 2003) | 13 |
| *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc*., 347 F. App'x 464, 468 (11th Cir. 2009). | 14, 15 |
| *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014). | 16 |
| *Hunter on behalf of A.H. v. District of Columbia*, 64 F. Supp. 3d 158, 179 (D.D.C. 2014) | 13 |
| *Jinrun Gao v. Brickyard Apts*., 495 Fed. Appx. 742, 744 (7th Cir. 2012) | 6 |
| *Laflamme v. New Horizons, Inc.,* 605 F.Supp.2d 378 (D.Conn. 2009) | 19 |
| *Martinez v. Optimus Props., LLC,* C.D.Cal. No. 2:17-cv-03581-SVW-MRW, 2018 U.S. Dist. LEXIS 228573, *11-14, 2018 WL 6039875 (June 6, 2018) | 6, 10 |

| | |
|---|---|
| *McCree v. Lexington Vill. Apts. & Amurcon Corp.,* 2010 U.S. Dist. LEXIS 22873, 2010 WL 931859*2, (E.D. Mich. 2010) | 9 |
| *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792, at 802-03 (1973). | 5, 6, 7, 8, 9,13 |
| *Mencer v. Princeton Square Apts*., 228 F.3d 631, 634-35 (6th Cir. 2000). | 9, 10 |
| *Nason v. Stone Hill Realty Ass'n*, 1996 Mass. Super. LEXIS 471, *1, 5 Mass L. Rep 305 (1996) | 16 |
| *Perez v. Cambeyro*, S.D.Fla. No. 15-21958-CIV, 2015 U.S. Dist. LEXIS 175721, *9 (Sep. 1, 2015) | 15 |
| *Reeves v. Rose,* 108 F. Supp. 2d 720, 726 (E.D. Mich. 2000). | 12 |
| *Simmons v. T.. Assocs. Mgmt.,* 287 F.Supp.3d 600, 602 (W.D. Va. 2018). | 3 |
| *Southeastern Community College v. Davis*, 442 U.S. 397, 412, 99 S. Ct. 2361, 2370 (1979). | 4 |
| *Vance v. City of Maumee*, 960 F. Supp. 2d 720, 728 (N.D. Ohio 2013). | 15 |


<u>Statutes</u>


| | |
|---|---|
| Ohio Rev. Code § 4112.02 | 5 |
| 42 U.S.C. §§ 3601-3631 | 4 |
| 42 U.S.C. § 3602 | 8 |
| 42 U.S.C. § 3604(a) | 9, 12 |
| 42 U.S.C. § 3604(f) | 9, 12 |
| 42 U.S.C. §§ 3604(f)(1) and (2) | 1, 4, 6 |
| 42 U.S.C. §§ 3604(f)(3)(B). | 1, 4, 13 |

Other Materials

*U.S. Department of Housing and Urban Development, Reasonable Accommodations and Modifications: Frequently Asked Questions,* https://www.hud.gov/program_offices/fair_housing_equal_opp/reasonable_accommodations_and_modifications/faqs#verification-of-disability (last visited Sept. 18, 2024). 9

U.S. Dep't of Justice & U.S. Dep't of Hous. & Urban Dev., Joint Statement of the Department of Justice and the Department of Housing and Urban Development on Reasonable Accommodations Under the Fair Housing Act (May 17, 2004), https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/joint_statement_ra.pdf. 18

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now come Plaintiffs, Fair Housing Opportunities of Northwest Ohio, Inc. d/b/a The Fair Housing Center ("TFHC"), and Silma Espinosa ("Espinosa") (collectively the "Plaintiffs"), by and through counsel, and issue their Response in Opposition to Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Court should GRANT Plaintiffs' Motion for Summary Judgment and DENY Defendant's Motion for Summary Judgment based on the following: (1) Defendant denied Plaintiff Espinosa a reasonable accommodation pursuant to 42 U.S.C. § 3604(f)(3)(B); (2) Defendant imposed different terms, conditions, and privileges in the rental of a dwelling which made housing unavailable, as prohibited by 42 U.S.C. §§ 3604(f)(1) and (2); (3) Defendant negligently trained and supervised its leasing agents which resulted in discriminatory treatment; and (4) Fair Housing Opportunities of Northwest Ohio diverted its scarce resources and had its mission frustrated by the unlawful discrimination committed by Defendant.

For the reasons identified above, and the reasons that follow in Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment, the Court should DENY the Defendant's Cross-Motion for Summary Judgment and should GRANT Summary Judgment to Plaintiffs on all claims and schedule a separate hearing to determine Plaintiffs' damages.

**PLAINTIFFS' STATEMENT OF FACTS**

Plaintiff, Silma Espinosa ("Espinosa") (they/them), is a person with a disability under the Fair Housing Act and substantially equivalent state law and has been prescribed an emotional support animal ("ESA") to support her emotional and social wellbeing. Espinosa Aff. ¶ 3. Plaintiff Espinosa sought housing with Defendant at Tracy Creek Apartments (the "Subject Property") in June 2021. Espinosa Aff. ¶ 4. Espinosa contacted Tracy Creek Apartments to inquire about leasing

there because it was closer to work and generally met their needs. Espinosa Aff. ¶ 5. Espinosa expressed a preference for a first-floor apartment, but they still asked about other floor plans when the Defendant's agent stated a first-floor unit was unavailable. Espinosa Dep. pg. 63–64. As part of the leasing process, Defendant's employee asked whether Plaintiff had any pets. Espinosa Aff. ¶ 6. Plaintiff notified Defendant that they had a cat which qualified as an ESA. *Id.* Defendant's representative stated, "Well, that is basically a pet." *Id.* Espinosa, having previously worked for TFHC, stated that ESAs are not pets. Espinosa Aff. ¶¶ 6-7.

Notwithstanding the foregoing conversation, Espinosa asked Defendant's employee about making a reasonable accommodation request to have their ESA at the Subject Property and to waive any pet fees. Espinosa Aff. ¶ 8. Defendant's employee stated that pet fees may be waived if Espinosa's physician completed and submitted Defendant's disability verification form directly to Defendant. Espinosa Aff. ¶ 9. Defendant's employee expressed to Plaintiff Espinosa that Defendant would only accept verification on their company form rather than a letter from Espinosa's therapist. Espinosa Aff. ¶ 9. Interestingly, Defendant now contends that it does not require prospective residents to use its ESA verification form. *Def. MSJ*, pg. 2.

Espinosa again notified Defendant that they were in possession of a verification letter from their therapist regarding the need for their ESA. Espinosa Aff. ¶ 11. Defendant's agent stated that their policy was to obtain the physician information from the applicant and collaborate directly with the medical provider to obtain the verification. Espinosa Aff. ¶ 12. Defendant notified Plaintiff that the verification form from a therapist would not be sufficient nor was it compliant with Defendant's policy, despite the fact that the agent had not yet viewed the letter. Espinosa Aff. ¶ 13; Espinosa Dep. 61:19-25. Defendant's agent further stated that their policy is to require the use of their company verification form and communicate directly with the physician. Espinosa Aff. ¶ 14.

Espinosa politely requested general information from Defendant's employee during the call and requested an email follow up so that they could discuss with their partner. Espinosa Aff. ¶¶ 14-15. Plaintiff Espinosa never received any follow up from Defendant. Espinosa Aff. ¶ 15. The Defendant claims that it contacted Espinosa six times. *Def. MSJ*, pg. 5. However, Defendant conveniently leaves out that it sent the alleged communications to an email address that does not belong to Espinosa: silma.espin**i**osa@gmail.com (emphasis added) rather than silma.espinosa@gmail.com. *Def. MSJ*, Exhibit M, Doc #17-14. Obviously, Espinosa did not respond because no follow up ever reached Espinosa. Espinosa Aff. ¶ 15. Consequently, Defendant's discriminatory comments, policy, and failure to follow up discouraged Espinosa from renting at Tracy Creek. Espinosa Aff. ¶ 16.

Espinosa then contacted TFHC to seek guidance regarding their rights under the Fair Housing Act. Rodriguez Aff. ¶ 7. TFHC researched the issue, investigated Defendant, reviewed documents, advised Espinosa, and conducted testing at Edward Rose properties. Rodriguez Aff. ¶ 8. TFHC's testing showed that Defendant's policy is not to consider reasonable accommodation requests until an applicant has applied for, been approved for, and signed a lease for an apartment.[1] Rodriguez Aff. ¶ 9. TFHC's work on this matter diverted a significant amount of TFHC's resources and resulted in delays on other projects and case files. Rodriguez Aff. ¶ 13.

On or around May 6, 2022, Plaintiff Espinosa and TFHC filed administrative complaints with O.C.R.C. (the "Commission"). Espinosa Aff. ¶ 17; Rodriguez Aff. ¶ 12. The Commission

---

[1] Defendant concedes as much in their MSJ. "If someone wants to live at Tracy Creek, they must submit an application. . If a person makes an inquiry, but does not apply . . . , Edward Rose cannot approve or deny anything." *Def. MSJ*, pg. 3. The Fair Housing Act permits a prospective applicant to obtain an accommodation first before applying for a unit, because an applicant should not be required to apply, pay fees, and sign a lease before knowing whether or not an accommodation will be granted. *See Simmons v. T.. Assocs. Mgmt.,* 287 F.Supp.3d 600, 602 (W.D. Va. 2018) (denying defendant's motion to dismiss where they argued that reasonable accommodations are not available for non-tenants among other statutory exceptions).

found that Defendant's policies and procedures of requiring an Ohio doctor's verification be submitted directly to management was overly restrictive and not compliant with the Fair Housing Laws or Technical Policy T-31.3 of the Commission, which limits the ability of housing providers to require an Ohio medical license to verify the need of a disability. Rodriguez Aff. ¶ 14.

**LAW AND ARGUMENT**

Defendant's Motion for Summary Judgment must be DENIED. At the outset, it is important to note that Defendant misstates the law in their Motion. As such, Plaintiffs will provide the proper standards and show that it is actually the Plaintiffs who are entitled to summary judgment. In 1988, Congress enacted the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601-3631, to expand the Fair Housing Act's antidiscrimination protections to include individuals with disabilities. It was a declaration of congressional policy that people with disabilities can no longer be relegated to the periphery or transitional zones within our communities and that people with disabilities must be as free as anyone else to choose where to live. *Assisted Living Assocs. L.L.C. v. Moorestown Twp.,* 996 F. Supp. 409, 437 (D. N.J., 1998). Unlawful discrimination on the basis of disability includes the refusal to make reasonable accommodations in rules or policies when such accommodations may be necessary to afford [disabled individuals] an equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(b). An accommodation is considered to be reasonable so long as it does not impose an undue burden. *Southeastern Community College v. Davis*, 442 U.S. 397, 412, 99 S. Ct. 2361, 2370 (1979). Unlawful discrimination on the basis of disability also includes making housing unavailable because of disability or imposing different terms, conditions, or privileges in the rental of a dwelling, or in the provision of services or facilities in connection with such dwelling. 42 U.S.C. § 3604(f)(1) and (2).

In this matter, Defendant: (1) refused a reliable therapist verification letter; and (2) committed other violations of the FHA when TFHC engaged in testing. Such violations included: (A) the failure to process an accommodation request until after an applicant applied for a unit, paid fees, and signed a lease; and (B) requiring a physician be licensed in Ohio to verify a disability. Rodriguez Aff. ¶ 9. For these reasons, this Court should deny the Defendant's Motion.

## I. Plaintiff must prevail on its terms, conditions, and privileges claim because Defendant's policy made it impossible for her to obtain an accommodation, thus treating her differently from others.

Defendant states in its Motion that, "The FHAA prohibits discriminating "against any person… in the provision of services or facilities in connection with such dwelling, because of a handicap of… that person…."" *Def. MSJ*, pg. 8. Defendant then goes on to argue that Plaintiffs must proceed under the *McDonnell Douglas* framework. Plaintiffs dispute that the *McDonnell Douglas* framework is applicable to the reasonable accommodation claim as described later in this Response, and Plaintiffs further dispute that it is applicable to any of its FHAA claims. However, Plaintiffs acknowledge that it *may* be applicable to the terms, conditions, and privileges claim found in ¶¶ 75, 83, and 84 of the Complaint. As such, Plaintiffs will evaluate both the direct, circumstantial, and indirect evidence under which it is proceeding.

First, Defendant omits the actual provision of the law that Plaintiffs are proceeding under for Paragraphs 75, 83, and 84 in the Complaint. As described in the Complaint, under the FHAA and substantially equivalent state law found in R.C. § 4112.02(H), it is unlawful:

> To discriminate in the . . rental, or to otherwise make unavailable or deny, a dwelling to any . . renter because of a handicap of—
> (A) that . . renter, [;]
> (B) a person . . intending to reside in that dwelling after it is so . . rented, or made available; or
> (C) any person associated with that . . renter; <u>or</u>
>
> (2) To discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or

> facilities in connection with such dwelling, because of a handicap of—
> (A) that person; or
> (B) a person residing in or intending to reside in that dwelling after it is so . .  rented, or made available; or
> (C) any person associated with that person.

*See* 42 U.S.C. §§ 3604(f)(1) and (2). Courts have generally held that the "otherwise make unavailable" and terms, conditions, and privileges language includes "[t]he imposition of more burdensome application procedures, of delaying tactics, and of various forms of discouragement by resident managers and rental agents". *See Corey v. Sec'y, United States HUD,* 719 F.3d 322, 326-27 (4th Cir. 2013).

The proper framework for a terms, conditions, and privileges claim where there is no direct evidence is as follows: a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified to receive certain terms, conditions, or privileges of rental; (3) she was denied those terms, conditions, or privileges; and (4) defendant bestowed the terms, conditions, or privileges to a similarly situated party during the time period relatively near when the denial to the plaintiff. *Martinez v. Optimus Props., LLC,* C.D.Cal. No. 2:17-cv-03581-SVW-MRW, 2018 U.S. Dist. LEXIS 228573, *11-14, 2018 WL 6039875 (June 6, 2018). If there is no direct evidence and the plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its actions. *See McDonnell Douglas Corp. v. Greene*, 411 U.S. 792, at 802-03 (1973). If the defendant meets that burden, then the burden shifts back to the plaintiff to show that the stated reason is pretextual. *See McDonnell Douglas*, 411 U.S. at 804.

In lieu of the *McDonnell Douglas* presumption, plaintiff may simply produce direct evidence demonstrating that a discriminatory reason more likely than not motivated defendant and that defendant's actions adversely affected the plaintiff. *Martinez*, at *12. Discriminatory comments are direct evidence of discrimination. *Jinrun Gao v. Brickyard Apts*., 495 Fed. Appx.

742, 744 (7th Cir. 2012); *see also Corey v. Sec'y, United States HUD*, 719 F.3d 322, 326-27 (4th Cir. 2013) (affirming that discriminatory comments and imposition of different application conditions are direct evidence). Discriminatory policies are direct evidence of discrimination. *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 919-20 (10th Cir. 2012).

In this matter, Defendant defaults to the burden shifting framework of *McDonnell Douglas* without acknowledging that there is direct evidence of discrimination. As argued in Plaintiffs' Motion for Summary Judgment, Espinosa sought housing with Defendant. Espinosa Aff. ¶ 4. Espinosa notified Defendant that they and their spouse each had ESAs. Espinosa Aff. ¶ 6. Espinosa asked about making a reasonable accommodation request to have the ESA at the apartment and to waive any pet fees. Espinosa Aff. ¶ 8. The leasing agent made discriminatory comments, including: (1) Espinosa's physician had to communicate directly with Defendant and submit their company's disability verification form to Defendant (Espinosa Aff. ¶ 9); (2) Espinosa's therapist verification form was insufficient and would not be accepted (without even seeing it) (Espinosa Aff. ¶ 10); and (3) that ESAs are pets. (Espinosa Aff. ¶ 6). Espinosa never received any form of follow-up from Defendant. Espinosa Aff. ¶ 15. Defendant's fair housing policy (*See Pl. Response,* Exhibit #1) requires an Ohio licensed physician to verify the disability, which is a violation of the Fair Housing Laws and Technical Policy T-31 of the Commission. *See Pl. Response,* Exhibit #2, pg. 7 (". . a health services provider does not have to hold an Ohio license to verify the need of the animal.").

The leasing agent's statements regarding Defendant's policies and failure to follow up discouraged Espinosa from moving forward. Espinosa Aff. ¶ 16. Because Defendant's written policy and leasing agent's statements regarding Defendant's policies are direct admissions and they adversely affected Espinosa in that Espinosa (1) had to move further from work; (2) lost housing opportunity at Tracy Creek; and (3) had to pay utilities that were otherwise covered at

Tracy Creek (Espinosa Aff. ¶ 16), the Court need not analyze the terms, conditions, and privileges claim under the *McDonnell Douglas* framework. Simply, there is sufficient direct evidence of discrimination. Notwithstanding Plaintiffs' view that there is direct evidence of discrimination, Plaintiffs will next rebut Defendant's other non-reasonable accommodation arguments.

**A. Even if *McDonnell-Douglas* applies, Espinosa established a covered disability.**

First, Defendant tenuously argues that Espinosa cannot establish a covered disability under the FHAA. *Def. MSJ*, Pg. 9-10. Under the FHAA, a disabled person qualifies as having a "handicap" in one of three ways: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 3602(h). Espinosa suffers from bi-polar and generalized anxiety disorders, both of which function as qualified handicaps that substantially limit a person's life. Espinosa Dep. pg. 31-40, *Plaintiffs' MSJ*, Exhibit 5. Espinosa received these diagnoses from a licensed therapist with whom they have extensively worked. *See Plaintiffs' MSJ*, Exhibit 5. Espinosa's therapist letter even states that Espinosa meets the definition of disabled under the Americans with Disabilities Act, the Rehabilitation Act of 1973, and the Fair Housing Act. *Id.* As such, Espinosa has a record of having such impairment and is regarded by a reliable third-party health provider as having such impairment. Espinosa Aff. ¶ 3.

The crux of Defendant's argument is that Espinosa has a good job; therefore, she is not disabled. But that is not the standard. Though landlords are not precluded from a limited inquiry to verify a disability, *Arnal v. Aspen View Condo. Ass'n*, 226 F. Supp. 3d 1177, 1184 (D. Colo. 2016), disclosure of details about the diagnosis or severity of a disability or medical records or a medical examination cannot be required in most cases. *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1287 (11th Cir. 2014).

Defendant misplaces reliance on *McCree*. In that case, no medical evidence was offered to support plaintiff's claim that she had depression. *McCree v. Lexington Vill. Apts. & Amurcon Corp.,* 2010 U.S. Dist. LEXIS 22873, *2 (E.D. Mich. 2010). Here, Espinosa has bi-polar and generalized anxiety disorder. Espinosa Dep. 31:23-25. Espinosa was diagnosed with both over ten years ago. Espinosa Dep. 32:1-3; 35:24-25. Espinosa receives treatment and offered a therapist verification letter to Defendant that discussed the "voluminous literature related to the therapeutic benefits of an emotional support animal" and Espinosa's need for her ESA. *Plaintiffs' MSJ*, Exhibit 5, Doc #16-5. Espinosa testified that she has been hospitalized because of said disabilities. Espinosa Dep. 36:3-7. Defendant subpoenaed Espinosa's records from Perrysburg Counseling and received such records confirming the diagnoses. As such, Espinosa easily established a covered disability.[2]

**B. Espinosa did not have to apply for a unit as Defendant misstated the law.**

Defendant next argues that Espinosa did not apply; therefore, she was not qualified to rent from them. As previously mentioned, Defendant misstated the law. Defendant cited *Mencer v. Princeton Square Apts*., 228 F.3d 631, 634-35 (6th Cir. 2000) for the elements of a prima facie housing discrimination case, but that case was analyzing claims under 42 U.S.C. §§ 1981, 1982 and 42 U.S.C. § 3604(a). *See Mencer*, 228 F.3d 631, 634-35. 42 U.S.C. § 3604(a) is a provision of the Fair Housing Act of 1968 which: (1) does not include disability; and (2) is a claim regarding the refusal to rent or negotiate to an applicant because of race, color, religion, sex, familial status, or national origin. Plaintiffs brought claims under the Fair Housing Amendments Act of 1988, found in 42 U.S.C. § 3604(f). Specifically, the only claim that *McDonnell Douglas* may be

[2] Verification should never include requests for medical records or require an individual to disclose a diagnosis. *See U.S. Department of Housing and Urban Development, Reasonable Accommodations and Modifications: Frequently Asked Questions,* https://www.hud.gov/program_offices/fair_housing_equal_opp/reasonable_accommodations_and_modifications/faqs#verification-of-disability (last visited Sept. 18, 2024).

applicable to is the terms, conditions, and privileges claim found in Paragraphs 75, 83, and 84 of the Complaint. As such, the *Mencer* standard is inapplicable.

Consequently, if the Court believes that there is insufficient direct evidence of discrimination for the terms, conditions, and privileges claim, then the Court would utilize the standard articulated in *Martinez*, where Espinosa would be required to demonstrate that: (1) she is a member of a protected class; (2) she was qualified to receive certain terms, conditions, or privileges of rental; (3) she was denied those terms, conditions, or privileges; and (4) defendant bestowed the terms, conditions, or privileges to a similarly situated party during the time period relatively near when the denial to the plaintiff. *Martinez*, at *11-14. As previously discussed, Espinosa can satisfy prong one because they do have a qualifying disability.

Turning next to prong two, Defendant concedes that Espinosa was gainfully employed and held good jobs, including their current job with a local court. *Def. MSJ*, Page 10. Espinosa offered a therapist verification letter but was rebuffed by Defendant's leasing agent. Espinosa Aff. ¶ 10. Espinosa has been granted reasonable accommodations from other housing providers. Espinosa Dep. 15:9-11. Consequently, Espinosa was qualified to receive certain terms, conditions, and privileges of rental from Defendant.

Next, Espinosa was certainly denied those terms, conditions, and privileges. Espinosa was informed by Defendant's representative that the therapist verification letter would not be accepted. Espinosa Aff. ¶ 10. Espinosa was instructed that it was a requirement that Defendant have direct contact and access with Espinosa's physician. Espinosa Dep. pg. 61. Espinosa was told by Defendant's representative that this was Defendant's company policy. Espinosa Aff. ¶ 13. Espinosa requested follow up information, yet no information was ever received by Espinosa. Espinosa Aff. ¶ 15. As a result, Espinosa knew it was futile to move forward Espinosa Aff. ¶ 16. As such,

Espinosa was subjected to differential treatment in the terms, conditions, or privileges of applying for, requesting a reasonable accommodation, and renting a unit with Defendant. Prong three has been satisfied.

Lastly, Defendant did bestow more favorable terms, conditions, and privileges to others. Defendant conceded in the Commission investigation that their leasing agent did not have actual authority to reject the verification letter and that verifications must generally be routed to the corporate director. *See Plaintiffs' MSJ Exhibit* 4, Doc. 16-4; PAGE ID #157. Yet, that did not occur here because the leasing agent summarily informed Espinosa that no verification letter was going to be accepted because it was against Defendant's company policy. Defendant also conceded that they do often grant reasonable accommodations, and that a physician is not always required to fill out their internal form. *See Def. MSJ*, pg. 2. Espinosa was told the exact opposite during the initial inquiry and application process. Espinosa Aff. ¶¶ 9, 10, 12-13. Therefore, Espinosa was subjected to differential treatment in the application process and can meet their prima facie burden.

**C. Defendant cannot show a legitimate, non-discriminatory reason for its action, and its stated reason is pretext for discrimination.**

Defendant argues that they had legitimate, non-discriminatory reasons for their actions. *Def. MSJ*, pg. 11-12. Defendant contends that Espinosa never applied for a unit or submitted a letter regarding an ESA. Defendant contends that a first-floor unit was not available. Defendant's arguments are unpersuasive, because intent is irrelevant for a reasonable accommodation; furthermore, their stated reason cannot be a legitimate, non-discriminatory reason.

Defendant's actions, comments, and lack of follow up after an uncomfortable conversation dissuaded Espinosa from applying for housing (Espinosa Aff. ¶ 14-16), thus those discriminatory comments cannot function as a legitimate, non-discriminatory reason for denying Espinosa an accommodation. Additionally, TFHC's testing demonstrated that an accommodation would not

have been granted until after Espinosa applied for a unit, paid fees, and signed a lease. Rodriguez Aff. ¶ 9. It would have been futile to apply or provide the verification letter because Defendant's agent had already informed Espinosa that it would not be accepted pursuant to Defendant's discriminatory company policy. Espinosa Aff. ¶¶ 12-13; Espinosa Dep. 68:17-25. As such, Defendant utilizing its leasing agent to serve as a barrier to Espinosa applying for or requesting an accommodation cannot possibly be a legitimate, non-discriminatory reason. The public policy reality of that outcome would be that any housing provider could have its leasing agents state, "No reasonable accommodations are ever granted," and then utilize the argument that no one has ever requested an accommodation when they are inevitably sued. Such a result would in effect make all federal and state fair housing laws toothless.

Even assuming arguendo that Defendant did have a legitimate, non-discriminatory reason for imposing different terms, conditions, and privileges on Espinosa, they would be pretext for discrimination. To show pretext, Plaintiff must merely demonstrate that the proffered reasons: "(1) had no basis in fact, (2) were not the actual reasons, or (3) were insufficient to explain the action." *Reeves v. Rose,* 108 F. Supp. 2d 720, 726 (E.D. Mich. 2000).

Defendant contends that they apply the same criteria to all applicants: "they must submit an application" and because Espinosa failed to do so they were in effect not denied housing opportunity. *Def. MSJ*, Page 12. However, Defendant utilized the incorrect framework in its Motion, thus the statute they analyzed (42 U.S.C. § 3604(a)) differs from what Plaintiffs alleged (42 U.S.C. § 3604(f)). Notwithstanding that fact, it is not a surprise that Defendant claims that an application is essential as it is exactly what TFHC's testing showed. Rodriguez Aff. ¶ 9. Disabled applicants like Espinosa are subjected to an intense and invasive application process to even get to the reasonable accommodation process. Espinosa Aff. ¶¶ 6; 10; 15; Rodriguez Aff. ¶¶ 9-10.

Here, Espinosa was stonewalled during the application process because of the leasing agent's discriminatory comments and failure to follow up. Consequently, the reasons stated by Defendant are insufficient to explain their action, not the real reason for its action, and have no basis in fact. Therefore, Plaintiffs are able to establish pretext. Plaintiffs also reiterate that: (1) there is direct evidence of discrimination; and (2) even if the Court is not satisfied with the direct evidence of discrimination, Defendant failed to establish legitimate, non-discriminatory reasons for their actions. The Court should DENY Defendant's Motion for Summary Judgment.

## II. Plaintiff must succeed in its claim for denial of a reasonable accommodation request as Defendants rely on the notion that it had no intent which is irrelevant.

Defendant contends that Plaintiffs' failure to accommodate claims lack merit because: (1) Defendant did not know of any alleged disability; (2) the requested accommodation was not necessary; and (3) Defendant did not refuse the accommodation. Plaintiffs will dispute all three in turn and demonstrate that Defendant is not entitled to summary judgment.

First, it is important to note that *McDonnell-Douglas* does not apply to reasonable accommodation claims. "'Failure to reasonably accommodate' is an alternative theory of liability" that is "separate from intentional discrimination." *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 562, 60 Fed. R. Evid. Serv. 1616 (7th Cir. 2003); *accord Austin v. Town of Farmington*, 826 F.3d 622, 627 (2d Cir. 2016) (noting that § 3604(f)(3)(B) does not require that the refusal "be the result of a discriminatory animus toward the disabled"); *Hunter on behalf of A.H. v. District of Columbia*, 64 F. Supp. 3d 158, 179 (D.D.C. 2014) (holding that "'failure to accommodate' claims do not require proof of intentional discrimination" (citing *Cinnamon Hills Youth Crisis Center, Inc. v. Saint George City,* 685 F.3d 917, 922–23 (10th Cir. 2012))); *Developmental Services of Nebraska v. City of Lincoln*, 504 F. Supp. 2d 726, 738 (D. Neb. 2007) ("evidence that the [defendant's] denials of these applications for reasonable

accommodation were motivated by discriminatory animus is immaterial to [plaintiff's] reasonable accommodation claim"); *see also Edwards v. Gene Salter Properties*, 671 Fed. Appx. 407 (8th Cir. 2016) (upholding reasonable accommodation claim, after rejecting intent and impact claims); *Anderson v. City of Blue Ash*, 798 F.3d 338, 360–64 (6th Cir. 2015) (holding that plaintiffs' evidence concerning disabled child's need for home-based service animal was sufficient to support reasonable accommodation but not intentional discrimination claim under the Fair Housing Act). Notwithstanding the foregoing, Plaintiffs will rebut each of Defendant's arguments.

**A. Defendant had actual knowledge of Espinosa's disability.**

Defendant unpersuasively argues that Espinosa did not mention a disability. *Def. MSJ*, pg. 12. Defendant cites *to Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 468 (11th Cir. 2009) for the proposition that Espinosa's failure to provide the therapist verification letter did not give them any meaningful opportunity to review Espinosa's request. However, *Hawn* is easily distinguishable.

*Hawn* involved a condominium owner that acquired a dog and then wanted the animal to live with him despite a no pet policy. *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n*, 347 Fed. Appx. 464, 465 (11th Dist. 2009). The plaintiff initially referred to his dog as a "pet," "pup", or "companion," not an ESA. *Id.* Importantly, the dog was already residing with plaintiff, in violation of the rules, when the request was made. *Id.* Here, Espinosa consistently referred to their cat as an ESA. Espinosa Aff. ¶ 6. Espinosa further asked Defendant's leasing agent about making a reasonable accommodation request to have the ESAs at the apartment and waive any pet fees. Espinosa Aff. ¶ 8. Unlike *Hawn*, Espinosa is not a current resident of the Defendant trying to circumvent its policies. Instead, Espinosa requested an accommodation for their ESA during the initial inquiry process and even notified Defendant's agent that an ESA is not a pet. Espinosa Aff.

¶ 7. This case is more analogous to *Perez v. Cambeyro*, S.D.Fla. No. 15-21958-CIV, 2015 U.S. Dist. LEXIS 175721, *9 (Sep. 1, 2015), which later distinguished *Hawn*. That court found:

> Defendants' reliance on *Hawn* is misplaced. . . the determinative factor in *Hawn* was not the insufficiency of doctors' notes, but rather plaintiff's failure to respond to defendants' requests for additional information; . . . . Here, and unlike the facts in *Hawn*, Perez alleges he offered additional information but was still rebuffed. (See Compl. ¶ 21). Perez alleges he made numerous requests for accommodation, that — in contrast to *Hawn* — Defendants refused immediately, without bothering to inquire further. *Id.*

Like *Perez*, Espinosa used the term "ESA" and offered a therapist verification letter to verify the disability. Espinosa Aff. ¶ 11. Espinosa asked about making a reasonable accommodation request with a therapist verification letter. Espinosa Aff. ¶ 8. Defendant's leasing agent immediately rejected that verification letter without seeing it. Espinosa Aff. ¶ 13. Defendant's agent stated that the company policy was to have direct contact with the applicant's physician. Espinosa Aff. ¶ 14. Espinosa requested follow-up and never received any communication. Espinosa Aff. ¶ 15. The terms "reasonable accommodation," "ESA," and "verification letter from my therapist" were certainly notice of a disability. There is no *genuine* dispute that Defendant had knowledge of Espinosa's disability.

**B. The requested accommodation was necessary because ESAs have long been held to be reasonable and necessary and Espinosa's verification letter established the necessity of the accommodation requested.**

Espinosa's request for an ESA and waiver of the pet fees were both reasonable and necessary. Under the FHA, "A qualified disabled individual's request for an accommodation must be granted if it is both: (1) reasonable and (2) necessary." *Vance v. City of Maumee*, 960 F. Supp. 2d 720, 728 (N.D. Ohio 2013). In the face of unlawful housing discrimination, the "three operative elements" of the FHAA's reasonable accommodation requirement are "equal opportunity," "necessary," and "reasonable." *Anderson v. City of Blue Ash*, 798 F.3d 338, 360 (6th Cir. 2015).

The FHAA "links the term 'necessary' to the goal of equal opportunity. *Id*. at 361. Plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Id.* The crux of a reasonable accommodation claim rests on the question of reasonableness and necessity. *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014). The necessity element deals with whether the requested accommodation would fix an issue that otherwise would result in less enjoyment for a disabled individual than a similarly situated non-disabled person. *Id.* at 541.

Defendants argue that Espinosa cannot prove necessity because the therapist verification letter is conclusory. *Def. MSJ*, pg. 15. Defendant's attempt to harmonize the facts of *Nason* with the case at bar is insufficient. In *Nason*, plaintiff began housing her mother's cat in her apartment when her mother fell ill, contrary to the apartment's pet policy. *Nason v. Stone Hill Realty Ass'n*, 1996 Mass. Super. LEXIS 471, *15, Mass L. Rep 305 (1996). *Nason* involved a pet, not an ESA. Espinosa was denied a reasonable and necessary accommodation for her ESA—not for a pet. Finally, Defendant's reliance on *Brower v. Roose*, No. 24-Cv-10702, 2024 U.S. Dist. LEXIS 72233 (E.D. Mich. Apr. 19, 2024) is unpersuasive because that case: (1) analyzed a motion for preliminary injunction without a full record; (2) included a plaintiff requesting four ESAs in a single unit, which is entirely different than what Espinosa was requesting; and (3) the letter did not state that plaintiff's anxiety resulted in limitations, which again, is different than Espinosa's letter.

As referenced in Plaintiffs' Motion for Summary Judgment, the facts of this case more closely align with that of the *Bhogaita* case. In *Bhogaita v. Altamonte Heights Condo. Ass'n,* 765 F.3d 1277 (11th Cir. 2014), a tenant was granted partial summary judgment on the failure to grant an ESA as a reasonable accommodation. In that case, plaintiff suffered from PTSD. *Id.* at 1281. Plaintiff purchased a condo managed by the defendant, and defendant had a rule against animals

over 25 pounds. *Id.* Plaintiff acquired a dog that exceeded the weight limit and was subsequently given a notice to remove the animal. *Id.* Plaintiff responded by notifying the defendant that it was an emotional support animal. *Id.* The defendant association then requested additional information including a sworn statement from plaintiff's doctor and sought documentation on the training that the dog had received. *Id.* at 1283. Rather than responding to the defendant's inquiries, plaintiff filed a complaint. *Id.* In affirming the district court's grant of partial summary judgment to plaintiff, the Eleventh Circuit found that housing providers need only the information necessary to apprise itself of the disability and the desire and *possible need* for an accommodation. *Id.* at 1287 (emphasis added). The court noted that detailed information about the nature of a person's disability is not necessary for determining whether an accommodation is required. *Id.* As such, the additional information requested after the initial notification of disability by the plaintiff exceeded what was required. *Id.* Consequently, defendant was liable to plaintiff.

Defendant now questions for the first time the necessity of the accommodation request over three years *after* informing Espinosa that a therapist verification letter would be insufficient and not compliant with their discriminatory policy. The letter clearly states that: (1) Espinosa is disabled under the FHA; (2) the ESA assists Espinosa in alleviating their limitations and living a productive life; and (3) the therapist would be "more than willing to answer any questions that you may have regarding my recommendation." *See Plaintiffs' MSJ,* Exhibit 5, Doc ID 16-5. Because Defendant's leasing agent refused the verification letter, Defendant cannot now claim that the disability was in effect not necessary when they failed to even consider or evaluate it over three years ago. Espinosa received the same ESA accommodation from another local housing provider (Espinosa Dep. pg. 13-14), which is further evidence of necessity.

### C. Defendant refused to make the accommodation by refusing the verification letter, making discriminatory comments, requiring that all verification letters come from Ohio-licensed physicians, and failing to follow up.

Defendant next argues that it did not refuse the accommodation. *Def. MSJ,* pg. 15-16, DOC ID 17. Defendant absolutely denied the request. Espinosa asked for: (1) permission to have their ESA; and (2) a waiver of the pet fee for their ESA. Espinosa Aff. ¶ 8. Similar to *Bhogaita*, Plaintiff Espinosa sought housing and attempted to submit initial documentation proving the necessity for their ESA. Espinosa Aff. ¶¶ 10-13. Espinosa notified Defendant's agent that they had a letter from their therapist regarding the need for an ESA. *Id.* Defendant's agent stated that ESAs are pets and that their policy was to have direct contact with Espinosa's physician and that Defendant's form had to be filled out by Espinosa's physician. Espinosa Aff. ¶ 14. Defendant's agent expressed that the therapist's letter was insufficient, despite the fact that the agent had never seen it. Espinosa Aff. ¶ 10. As such, the request was denied as a result of Defendant stating that the verification letter from Plaintiff Espinosa's therapist was insufficient and would not be accepted. Espinosa was further stonewalled when the agent stated that the ESA was a pet. Espinosa Aff. ¶¶ 6, 16.

Neither statement from Defendant's agent is in line with the FHA, because disability verification can be provided by any third party who knows about the disability, including any reliable third party, such as a therapist.[3] Espinosa's therapist was a reliable third party who could have verified the disability and need for an ESA. If Defendant doubted that the request was reasonable or necessary, they could have accepted the therapist verification letter and attempted to schedule a meeting with Espinosa and their therapist. However, that never occurred because the leasing agent stonewalled Espinosa in the same way that TFHC's tester discovered that Defendant

---

[3] *See* U.S. Dep't of Justice & U.S. Dep't of Hous. & Urban Dev., Joint Statement of the Department of Justice and the Department of Housing and Urban Development on Reasonable Accommodations Under the Fair Housing Act (May 17, 2004), https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/joint_statement_ra.pdf.

requires an application and payment of fees prior to entertaining a reasonable accommodation request. Espinosa Aff. ¶¶ 10-14; 15; Rodriguez Aff. ¶¶ 9-10.

Defendant's actions and policies require disabled applicants to submit to Defendant's company form, providing direct access to a prospective applicant's physician, who must be licensed in Ohio. This in effect creates an unlawful barrier to housing that non-disabled applicants will never experience. *See Laflamme v. New Horizons, Inc.,* 605 F.Supp.2d 378 (D.Conn. 2009) (finding that housing provider's policy of leasing apartments only after inquiring into prospective tenants' medical and personal histories constituted exactly the discrimination that was forbidden by the FHA). As such, Defendant refused to make the reasonable accommodation request. Plaintiffs respectfully request that this Court DENY Defendant's Motion for Summary Judgment.

**III. Defendant failed to properly train its leasing agents.**

Lastly, Defendant argues that Plaintiff cannot establish a negligent training claim. The employment relationship between Bick and the Defendant is not contested. Defendant merely contends there was no incompetence on the part of Bick, that even if Bick was incompetent, Defendant was not aware of Bick's incompetence, Plaintiffs suffered no injury, and Defendant provides discrimination training. However, Defendant's arguments are unpersuasive.

Bick was incompetent. Bick, allegedly without actual authority, stated that a therapist verification letter would not be accepted, which according to Defendant's counsel, is not even Defendant's policy. Espinosa Aff. ¶ 13. Bick allegedly submitted follow up information to an incorrect or made-up email address after the uncomfortable conversation with Espinosa, which Espinosa obviously did not receive. Espinosa Aff. ¶ 15. Bick stated incompetently that ESAs are pets. Espinosa Aff. ¶ 6. Since it is the Defendant's own policy at issue, Bick was not professionally trained or supervised on how to lease to disabled tenants. Defendant also failed to conduct any

type of audit to ensure that Espinosa received follow up regarding the request for an accommodation or available floor plans. Espinosa suffered economic and non-economic injury. Espinosa Dep. Pg. 49–50. Furthermore, TFHC suffered an injury by the Defendant frustrating its mission and diverting its scarce resources. Rodriguez Aff. ¶ 13. Thus, Plaintiffs are entitled to damages from the Defendant for its negligent training to its employees. Therefore, Plaintiffs respectfully request that this honorable Court DENY Defendant's Motion for Summary Judgment.

## CONCLUSION

Plaintiffs, Fair Housing Opportunities of Northwest Ohio, Inc., and Silma Espinosa, respectfully request that the Court DENY Defendant's Motion for Summary Judgment, grant Plaintiffs' Motion for Summary Judgment on all claims, and schedule a hearing on damages.

Respectfully submitted,

/s/ C. Jacob Davis


C. Jacob Davis (#0101745)
George Thomas (#0083354)
Nalls Davis
33 White Allen Avenue | Dayton, OH 45405
Phone: (937) 813-3003 | Fax: (937) 660-4400
Jacob.Davis@nallslaw.com
gthomas@toledofhc.org
*Attorneys for Plaintiffs*


## CERTIFICATION REGARDING PAGE LIMITATIONS

This matter is assigned to a standard track. I certify this Memorandum complies with the page limitations specified in Local Rule 7.1(f).

s/ C. Jacob Davis


C. Jacob Davis (#0101745)
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, C. Jacob Davis, Attorney for Plaintiffs, hereby state that the foregoing Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment was electronically filed on this 20th day of September, 2024. Defendants' counsel will receive an electronic copy via the Pacer E-filing system.

Respectfully submitted,

/s/ C. Jacob Davis

______________________________

C. Jacob Davis (#0101745)
*Attorney for Plaintiffs*