IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC

and

SILMA ESPINOSA,

Plaintiffs,

v.

EDWARD ROSE DEVELOPMENT COMPANY, LLC.,

Defendant.

Case No. 3:23-cv-01297-JJH
Hon. Jeffrey J. Helmick

**DEFENDANT EDWARD ROSE DEVELOPMENT COMPANY, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 16)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... III

STATEMENT OF ISSUES PRESENTED .......... V

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

II. COUNTER-STATEMENT OF FACTS .......... 1

A. Edward Rose Complies with All Fair Housing Laws .......... 1

B. Leasing Agent Mary Lynn Bick's Employment and Training at Tracy Creek .......... 2

C. Espinosa's Limited Interaction with Bick and Tracy Creek .......... 2

D. Tracy Creek Contacts Espinosa on Multiple Occasions, Without a Response .......... 3

E. TFHC's Testing Finds No Evidence of Discrimination .......... 4

F. Plaintiffs Nonetheless File Their Baseless Lawsuit .......... 5

III. STANDARD OF REVIEW .......... 5

IV. ANALYSIS .......... 6

A. Plaintiffs' Reasonable Accommodation Claims Fail as a Matter of Law .......... 6

1. Espinosa Never Requested any Accommodation .......... 6

2. Espinosa Fails to Establish a Covered Disability .......... 7

3. Defendant Had No Actual Knowledge of Espinosa's Alleged Disability .......... 8

4. Espinosa Presents No Evidence Regarding the Necessity of an ESA .......... 9

5. Edward Rose Never Denied any Accommodation Request .......... 9

a) A Request for Information Is Not a Denial .......... 10

(1) Plaintiffs Cited Authority Supports Edward Rose's Position That .......... 10

It Does Not Demand Comprehensive Medical Information .......... 10



57423891.7

b) Espinosa Submitted No Documentation for an ESA Request ..... 12

c) Edward Rose Eagerly Sought to Lease an Apartment to Espinosa ..... 13

d) Plaintiffs Misstate Edward Rose's Policy ..... 13

6. Plaintiffs Misrepresent the Testing Results ..... 14

B. Plaintiffs' Attempt to Bring an Untimely Section 3604(c) Claim Must Fail ..... 15

C. Plaintiffs Apply the Wrong Standard for a Discrimination Claim ..... 17

D. Plaintiffs' Negligent Training and Supervision Claim Is Wholly Unfounded ..... 18

E. Plaintiffs Prematurely Raise Damages in a Motion for Summary Judgment ..... 19

V. CONCLUSION ..... 19

CERTIFICATE OF COMPLIANCE WITH L.R. 7.1 ..... 21

## TABLE OF AUTHORITIES

**Cases** **Page**


*Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009) .................................................... 5, 6

*Ali v. Louisville Metro Hous. Auth.*, No. 3:22-CV-463-CHB, 2023 WL 4564779, at *10 (W.D. Ky. July 17, 2023), appeal dismissed, No. 23-5716, 2023 WL 7458347 (6th Cir. Sept. 22, 2023) ........................................................................................................................................ 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) 6

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277 (11th Cir. 2014) .................. 12

*Camp v. Star Leasing Co.*, No. 11AP–977, 2012 WL 3291798 (Ohio Ct. App. Aug. 14, 2012)... 8

*Campbell v. Robb*, 162 F. App'x 460, 466 (6th Cir. 2006) .......................................................... 16

*Davis v. Echo Valley Cond. Ass'n.*, 349 F.Supp.3d 645, 656 (E.D. Mich. 2018)..................... 5, 15

*Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir. 1998) .................................. 7

*Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1031 (6th Cir. 1994).............................. 19

*Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*, 508 F.3d 366, 371 (6th Cir. 2007)........................................................................................................ 17

*Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 468 (11th Cir. 2009) 8

*Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014) ...................... 6, 9

*In re CMS Energy Sec. Litig.*, 403 F. Supp. 2d 625, 631 (E.D. Mich. 2005) .............................. 19

*Johnson v. Kroger Co.*, No. 2:18-CV-1240, 2019 WL 3024460, at *4 (S.D. Ohio July 11, 2019) ........................................................................................................................................ 18

*Laflamme v. New Horizons, Inc.*, 605 F. Supp. 2d 378 (D. Conn. 2009) ..................................... 10

*Perez v. Cambeyro*, No. 15-21958-CIV, 2015 WL 9942641, at *4 (S.D. Fla. Sept. 1, 2015) ....... 8

*Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968, 976 (6th Cir. 2019)............................... 9

*Salisbury v. City of Santa Monica*, 998 F.3d 852, 860 (9th Cir. 2021) ....................................... 15

*Sigmon v. Appalachian Coal Properties, Inc.*, 400 F. App'x 43, 49 (6th Cir. 2010) ................. 7, 9

*Wells Fargo Bank, NA v. MPC Invs., LLC*, 705 F. Supp. 2d 728, 734-735 (E.D. Mich. 2010)..... 6

*Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003)....................................... 5

**Statutes**

24 C.F.R. § 100.201(b) ........ 8

42 U.S.C. § 3602(h) ........ 8

OHIO REV. CODE ANN. § 4112.01(A)(13) ........ 8

**Other Authorities**

FHEO Notice 2020-01, p. 11 ........ 11

FHEO Notice 2020-01, p. 9, 11 ........ 11

FHEO Notice, p. 9; Technical Policy T-31.3.1, p. 8 ........ 13

Ohio Admin. Code R. 4757-5-13(A)(1) ........ 15

Technical Policy T-31.3.1, p. 8 ........ 11, 15

Technical Policy T-31.3.1, p. 9 ........ 11

**Rules**

Fed. R. Civ. P. 56(a) ........ 5

## STATEMENT OF ISSUES PRESENTED

1. **Should the Court deny Plaintiffs' Motion for Summary Judgment because Defendant never refused to make an accommodation, and, among other things, Espinosa never requested an ESA, Defendant did not request comprehensive medical records, and Plaintiffs' failure-to-accommodate claims otherwise fail as a matter of law?**

| | |
|---|---|
| Defendant answers: | Yes. |
| Plaintiffs answer: | No. |
| This Court should answer: | Yes. |

2. **Should the Court deny Plaintiffs' Motion for Summary Judgment because Plaintiff cannot prove discrimination as Defendant advised Espinosa that ESAs are accepted and followed up with Espinosa on multiple occasions to no avail?**

| | |
|---|---|
| Defendant answers: | Yes. |
| Plaintiffs answer: | No. |
| This Court should answer: | Yes. |

3. **Should the Court deny Plaintiffs' Motion for Summary Judgment where Plaintiffs fail to present any evidence that Defendant was aware of its employee's purported incompetence in advance of the call with Espinosa and the agent received fair housing training?**

| | |
|---|---|
| Defendant answers: | Yes. |
| Plaintiffs answer: | No. |
| This Court should answer: | Yes. |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Fair Housing Opportunities of Northwest Ohio, Inc. d/b/a The Fair Housing Center ("TFHC") and Silma Espinosa ("Espinosa") (collectively, "Plaintiffs") oddly attempt to secure summary judgment by relying on self-serving affidavits alone and disregard their own testimony. Likewise, Plaintiffs intentionally ignore several key pieces of evidence that disprove their entire case. Once the Court reviews this evidence, the only conclusion that can be reached is Plaintiffs' claims are without merit and must be dismissed.

First, Plaintiffs' failure to accommodate claim fails as Defendant Edward Rose Development Company, LLC ("Edward Rose") never denied Espinosa an ESA request. In fact, Espinosa never actually made an accommodation request. Moreover, Espinosa was required to fill out an emotional support animal ("ESA") verification form, but, nonetheless, this form is limited in scope and follows federal and state guidance. Second, there is no discrimination as Edward Rose advised Espinosa that ESAs are accepted and followed up on multiple occasions. Finally, the negligent training or supervision claim is futile. Plaintiffs have presented no evidence or rebutted Edward Rose's evidence that it had any knowledge of its agent's purported incompetence. For all of the reasons stated below, Plaintiffs' motion should be denied, and judgment should be awarded in Edward Rose's favor on all counts.

## II. COUNTER-STATEMENT OF FACTS

### A. Edward Rose Complies with All Fair Housing Laws

Edward Rose manages housing communities, including Tracy Creek. **Ex. A**, ¶¶ 1-2. It complies with fair housing laws and requires employees to follow its fair-housing policies. *Id.* at ¶ 4; **Exs. B-C.** Employees must also complete regular fair housing training. **Ex. A**, ¶ 5.

Where a disability and the related need are readily apparent, no supporting documentation is needed for an accommodation request. **Ex. A**, ¶ 7; *see also* **Ex. D**, ER000084. If the disability

is not apparent, a resident may (i) submit a supporting letter regarding the requested accommodation (including for an ESA), or, (ii) if the resident has no documentation, they may fill out a provided verification form. **Ex. A**, ¶ 8; **Ex. F**; *see also* **Ex. D**, ER000083. The form is intended to assist the resident. **Ex. A**, ¶ 10. It avoids follow ups and ensures the correct information is obtained. *Id.* at ¶ 10. The release is limited to the following requested information: (1) if the person is disabled under the FHA; (2) if the person has a disability-related need for a service/companion animal; (3) identification of the animal; and (4) if one animal is sufficient. **Ex. F**. While this form is helpful, it is not required. **Ex. A**, ¶ 8; **Ex. D**, ER000083. Edward Rose routinely grants ESA requests directly from healthcare providers. **Ex. A**, ¶ 11; *see also* **Ex. G.**

### B. <u>Leasing Agent Mary Lynn Bick's Employment and Training at Tracy Creek</u>

Mary Lynn Bick worked at Tracy Creek for almost 17 years, first as a leasing agent and then an office coordinator. **Ex. A**, ¶ 16. She completed Edward Rose's fair housing training during her tenure. *Id.* at ¶ 21. During her employment, Bick only had one written warning, in 2010, and this warning had nothing to do with accommodation requests. *Id.* at ¶ 17.

### C. <u>Espinosa's Limited Interaction with Bick and Tracy Creek</u>

Espinosa (they/them) states they began an apartment search in 2021. **Ex. H**, 41:8-12. Espinosa found Tracy Creek online and submitted a message. *Id.* at 50:10-11; **Ex. I**, Response to RFA Nos. 10-11. On June 9, 2021, Espinosa spoke with Bick for less than ten minutes. **Ex. H**, 63:1-2; **Ex. J**. According to Espinosa, Bick asked if they had any pets, and Espinosa answered they have an ESA. **Ex. H**, 67:17-20. While Espinosa claims Bick replied, "that's basically a pet," this is disputed and of no consequence. *Id.* at 67:21-22. The Tracy Creek application includes a pet section clearly providing an option to identify ESAs/service animals. **Ex. K.** Espinosa concedes they do not know if Bick's comment was referencing the application. **Ex. H**, 72:9-15.

Espinosa asked if there would be a pet fee, and Bick answered no. *Id.* at 67:24-25.

According to Espinosa, Bick advised Espinosa that Tracy Creek could fax a form to Espinosa's physician and once the physician completed it, Tracy Creek would process the request. *Id.* at 67:25-68:4. Espinosa claims to have told Bick they already had a therapist letter and that Bick replied Bick would have to submit the form. *Id.* at 68:7-8, 68:20-22. Espinosa inquired, "[a]re you sure I can't just submit a letter that I have?" *Id.* at 69:13-14. Espinosa claims Bick answered she would fax the form to the physician. *Id.* at 69:17-19. However, when questioned if Bick ever said Espinosa's letter would be rejected, Espinosa stated they did not recall. *Id.* at 71:10-15. In fact, Bick did not state whether an ESA request would be approved or denied, because she had no authority to do so. *Id.* at 106:25-107:2; **Ex. A**, ¶ 17. All such requests are sent to management. **Ex. A**, ¶¶ 17-18; **Ex. E**. And there was nothing to review because Espinosa never submitted a letter. **Ex**. **H**, 92:18-22. This was one, very short phone call. *Id.* at 63:1-2. Even Espinosa cannot swear Bick rejected their ESA letter. *Id.* at 71:11-13.

Espinosa claims to have lost interest in Tracy Creek because of Bick. *Id.* at 62:14-16. However, Espinosa did not apply to any other apartment complex in the summer of 2021. *Id.* at 47:17-19. Instead, Espinosa waited until Perry Lake Village had availability and moved into that community, because their sister lived there. *See id.* at 10:4-5; 42:19-23; 44:9-11, 44:17-18. They resided at Perry Lake until April 2024 and then purchased a home. *Id.* at 9:12-15, 10:2-5.

In Espinosa's contradictory and self-serving affidavit, Espinosa now claims Bick rejected the ESA letter, but this is belied by sworn testimony. At deposition, Espinosa stated they could not swear that Bick rejected their letter. *Compare* ECF No. 16-1, ¶ ¶ 10, 13 *with* **Ex. H**, 71:11-13.

### D. <u>Tracy Creek Contacts Espinosa on Multiple Occasions, Without a Response</u>

Following the call, Bick emailed Espinosa on multiple occasions to see if they were interested in applying, including on June 9, 2021, June 11, 2021, and June 25, 2021. **Ex. L.** Espinosa never responded to Bick's messages. *Id.* MeetElise, Edward Rose's virtual assistant,

also contacted Espinosa on three occasions to see if they were still interested in an apartment. **Ex. J**. Altogether, Edward Rose attempted to contact Espinosa no less than **six times** following the call with Bick.[1] **Exs. J, L.** Espinosa never responded. *Id.* Espinosa conceded they never (i) followed up with Tracy Creek, (ii) asked to speak to management, (iii) submitted their therapist letter, or (iv) submitted a rental application. **Ex. H**, 92:12-22, 107:3-8. However, the record is clear that Tracy Creek still was interested in renting an apartment to Espinosa. **Exs. J, L.**

**E. <u>TFHC's Testing Finds No Evidence of Discrimination</u>**

Espinosa discussed the matter with TFHC, and TFHC conducted matched pair testing. **Exs. M-O.** For testers claiming to have disabilities, TFHC instructed them to "[c]asually mention that you have an assistance [animal] and a verification letter from your **therapist** (not a physician)…" *Id.* (emphasis in original). At no time did TFHC instruct testers to inquire if they could submit an ESA request before applying for an apartment. *See id.* TFHC conducted three rounds of testing. **Exs. M-O.** The first tester failed to return the materials. **Ex. M.** The second told the agent she had a therapist's letter and asked if she would be charged fees for her ESA. ECF No. 17-18**,** 3:38-3:54. The agent said, no, and never stated a letter would be unacceptable or that the tester must fill out the ESA verification form. *Id.* at 3:55-3:59.

Unsatisfied, TFHC conducted a third round of testing. **Ex. O.** TFHC claims this third round confirmed Edward Rose's policy violated the FHAA, but this is untrue. **Ex. P**, 142:17-21. At no time did the tester mention she had a therapist letter. ECF No. 17-20**.** Instead, she merely stated she had an ESA, and the agent replied, "OK, not a problem." *Id.* at 4:43-4:51. The tester said she wanted a new apartment by the end of the month, so the agent told the tester about the

---

[1] Espinosa claims they never received any emails because the address was incorrect. *See* ECF No. 16-1, ¶ 15. However, Espinosa admits they sent an email to Tracy Creek, and it replied to that same email address. **Ex. J**, Response to RFA Nos. 10-11.

application process and that, once approved, she could complete other items such ESA requests. *Id.* at 4:52-4:57, 7:06-7:10, 13:08-13:29. Again, the tester never said she had a therapist letter, and the agent never stated the form was the only way to get an ESA approved. *See id.* In fact, the second and third testers both spoke to the same agent. ECF Nos. 17-18, 17-20. Accordingly, TFHC's testing confirms Edward Rose has no policy or procedure of rejecting a therapist's letter. *Id.*

Although TFHC recorded the testers' communications, it failed to provide them to the Court. Instead, Plaintiffs submitted a conclusory affidavit, claiming that testing uncovered "a consistent pattern of housing violations," but this is plainly contradicted by the actual recordings. *Compare* ECF Nos. 17-18, 17-20 *with* ECF No. 16-2, ¶¶ 9-11.

**F. <u>Plaintiffs Nonetheless File Their Baseless Lawsuit</u>**

Despite the above, Plaintiffs filed this lawsuit, alleging: (1) failure to accommodate by mandating an ESA form and submitting a rental application before making an ESA request, (2) discrimination on the same grounds, and (3) negligent supervision and training. ECF No. 1. While Plaintiffs also rely on the Ohio Civil Rights Commission ("OCRC")'s findings, this has zero probative value and should be stricken. *See Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009).

## III. STANDARD OF REVIEW

When deciding cross motions for summary judgment, the Court "'must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party.'" *Davis v. Echo Valley Cond. Ass'n.*, 349 F.Supp.3d 645, 656 (E.D. Mich. 2018) (quoting *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The court

must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). When the movant bears the ultimate burden of persuasion, "it must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would be entitled to a directed verdict at trial." *Wells Fargo Bank, NA v. MPC Invs., LLC*, 705 F. Supp. 2d 728, 734-735 (E.D. Mich. 2010) (internal quotation marks and citation omitted). Here, Plaintiffs have not met their burden, and their motion should be denied.

## IV. ANALYSIS

### A. Plaintiffs' Reasonable Accommodation Claims Fail as a Matter of Law

To establish their failure to accommodate claims, Plaintiffs must prove: (1) they requested an accommodation; (2) they suffer from a covered disability; (3) defendant knew or reasonably should have known of the disability; (4) the accommodation was necessary to afford an equal opportunity to use and enjoy the dwelling; (5) the accommodation is reasonable; and (6) the defendant refused to make the accommodation. *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014); *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011). Here, Plaintiffs utterly fail to make this showing.

#### 1. Espinosa Never Requested any Accommodation

Plaintiffs' accommodation claims fail at the most basic level: Espinosa never actually requested an accommodation. *See e.g., Hollis*, 760 F.3d at 541 (holding a plaintiff must prove "she requested an accommodation"); *see also Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042,

1046 (6th Cir. 1998) (similar holding under the ADA); U.S. Department of Housing and Urban Development, FHEO-2020-01, "Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act" (January 28, 2020) ("FHEO Notice"), p. 8 ("the housing provider is not required to grant a reasonable accommodation that has not been requested."). The landlord is not required or expected to speculate as to a prospective resident's disability or need or desire for an accommodation. *See Gantt*, 143 F.3d at 1046.

Espinosa admits they did not make an accommodation request, but merely inquired about it. Espinosa states that, "I asked the employee **about** making a reasonable accommodation request to have our ESAs at the apartment and waive any pet fees." ECF No. 16-1, ¶ 8 (emphasis added). Espinosa did not *submit* a request – or their provider's letter. *See id.*; **Ex. H**, 92:18-20. This mere inquiry is not the same as an actual ESA request.

### 2. <u>Espinosa Fails to Establish a Covered Disability</u>

While Espinosa claims to have a "disability" (ECF No. 16-1, ¶ 3), this legal conclusion is not sufficient to create a triable issue of fact. For example, in *Sigmon v. Appalachian Coal Properties, Inc.*, 400 F. App'x 43, 49 (6th Cir. 2010), the plaintiff moved for summary judgment on defendant's breach of contract counterclaim. 400 F. App'x at 46. In response, the defendant relied on affidavits claiming that an oral agreement was reached. *Id.* at 49. The Sixth Circuit held that such affidavits were of little value as "it cannot be said that the affidavits offer anything beyond conclusory allegations and bald conclusions of law." *Id.*

Here, Espinosa merely alleges they are a "person with a disability. The disability is a mental impairment which requires an ESA for my emotional and social wellbeing." ECF No. 16-1, ¶ 3. Like *Sigmon*, these are bare legal conclusions. Under the FHAA, a disability is defined as a: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment, or (3) being regarded as having such an

impairment." 42 U.S.C. § 3602(h); Ohio Rev. Code Ann. § 4112.01(A)(13). An impairment substantially limits a major life activity if a person is "**significantly restricted**" in their ability to perform a major life activity, which in turn, is defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Camp v. Star Leasing Co.*, No. 11AP–977, 2012 WL 3291798 (Ohio Ct. App. Aug. 14, 2012), at *10 (emphasis added); 24 C.F.R. § 100.201(b); Ohio Rev. Code Ann. § 4112.01(A)(13).

Espinosa does not even attempt to prove each element of a covered disability. Nor does the therapist's letter establish a disability. The social worker's letter simply declares Espinosa meets the "definition of disabled under the…[FHA]." ECF No. 17-10. While Edward Rose may have accepted this letter if Espinosa had submitted it with an actual ESA request, such bald assertions are insufficient to carry Plaintiffs' burden in this lawsuit. In fact, neither Espinosa nor their provider has identified any major life activity that has been significantly restricted. Likewise, there is no showing of any substantial limitation. Indeed, Espinosa works and lives independently. **Ex. H**, 15:19-16:4, 16:16-17:2, 17:19-18:10, 30:16-31:2 (testifying they have a consistent work history, supervise 8 employees, and have no workplace accommodations).

### 3. <u>Defendant Had No Actual Knowledge of Espinosa's Alleged Disability</u>

Espinosa admits they never disclosed they had a disability. *See supra* Section II(C), ECF No. 16-1. Unlike the plaintiff in *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 468 (11th Cir. 2009), a case cited by Plaintiffs, where he actually submitted multiple provider letters in support of his service animal request, here, Espinosa never submitted their letter. *Cf. Perez v. Cambeyro,* No. 15-21958-CIV, 2015 WL 9942641, at *4 (S.D. Fla. Sept. 1, 2015) (holding defendants were on notice of a disability where the property owner visited plaintiff in the hospital, plaintiff made repeated accommodation requests, plaintiff supplied a doctor's letter, an attorney sent a demand, and defendants corresponded with plaintiff's counsel). Conversely, a mere

reference of having an ESA is not sufficient to impute knowledge of Espinosa's alleged disability.

#### 4. Espinosa Presents No Evidence Regarding the Necessity of an ESA

Plaintiffs spend much of their briefing arguing the reasonableness of an ESA request, but gloss over the necessity requirement. *See Hollis*, 760 F. 3d at 541. At most, Plaintiffs assert that Espinosa's ESA request is "necessary to assist with emotional and social support as well as overall well-being." ECF No. 16, PageID. 132. In support of this bare assertion, Plaintiffs only cite paragraph 3 of Espinosa's affidavit: "I am the Plaintiff and a person with a disability. The disability is a mental impairment which requires an ESA for my emotional and social wellbeing." *Id.*; ECF No. 16-1, ¶ 3. Per *Sigmon*, such bald conclusions in a self-serving affidavit are insufficient to support a motion for summary judgment. 400 F. App'x at 49.

#### 5. Edward Rose Never Denied any Accommodation Request

While Espinosa now states in their affidavit that Edward Rose's agent advised Espinosa that the therapist's letter was unacceptable, this clearly contradicts Espinosa's earlier deposition testimony. *Compare* ECF No. 16-1, ¶ 10 *with* **Ex. H**, 70:10-15. Espinosa was directly questioned about whether the agent explicitly told them that the therapist letter would not be accepted, and Espinosa stated they could not recall, and later admitted it was possible the agent never told them the letter would be rejected. **Ex. H**, 70:10-15; 71:11-13. Such contradictory statements are not sufficient to avoid summary judgment on Plaintiffs' claims. *See e.g., Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968, 976 (6th Cir. 2019) (holding the district court did not abuse its discretion when it refused to consider plaintiff's post-deposition affidavit that contradicted her deposition testimony). Moreover, Bick could not reject this letter, as Espinosa never submitted it and Bick had no authority to accept or deny ESA requests. **Ex. H**, 92:18-20; **Ex. A**, ¶ 17. In fact, Espinosa admits they never received any correspondence from Edward Rose denying Espinosa's alleged ESA request. **Ex. I**, Answer to RFA No. 34.

#### a) <u>A Request for Information Is Not a Denial</u>

Even accepting Plaintiffs' allegations as true (that Edward Rose required Espinosa to fill out its ESA verification form), this does not amount to a denial of an ESA. Plaintiffs oddly claim Edward Rose seeks to invade medical records, but Plaintiffs ignore the actual form. The ESA form mirrors HUD and OCRC guidance concerning information a landlord may request. **Ex. F**; FHEO Notice; Technical Policy T-31.3.1.

##### (1) <u>Plaintiffs Cited Authority Supports Edward Rose's Position That It Does Not Demand Comprehensive Medical Information</u>

Plaintiffs rely on *Laflamme v. New Horizons, Inc.,* 605 F. Supp. 2d 378 (D. Conn. 2009) to claim that Edward Rose's ESA verification form is invasive, but *Laflamme* is easily distinguishable. In *Laflamme*, the defendant required applicants to authorize disclosure of "comprehensive medical records and background information." 605 F. Supp.2d at 381. The inquiry went beyond a "threshold determination" of whether plaintiff was disabled. *Id.* at 391. Specifically, the forms required plaintiff to authorize a full release of all "medical information concerning any past or present diagnoses" amongst other requested items, including any psychological and psychiatric reports. *Id.* at 391-392.

Here, no such invasive forms are required. Instead, the limited release is for a provider to answer two basic questions that mirror HUD Guidance. **Ex. F.** The ESA verification form simply asks for a "yes" or "no" response to two questions:

1. The above-named individual is disabled as defined above.
2. In your professional opinion, does the above-named individual have a disability-related need for a service/companion animal at the dwelling in order to have the same opportunity that a non-disabled individual has to use and enjoy the site?

*Id.* These questions are nearly identical to the questions provided by HUD and OCRC in assessing

a request for an accommodation.[2] *See* FHEO Notice 2020-01, p. 9, 11; *see also* Technical Policy T-31.3.1, p. 9. In fact, with respect to the second question of a disability related need, HUD and OCRC demand more specific information than Edward Rose's ESA verification form. FHEO Notice 2020-01, p. 11; Technical Policy T-31.3.1, p. 9. HUD guidance indicates that the information of a disability-related need consists of specific information as to the assistance the ESA provides or specific information of the relationship between the disability and the ESA need. FHEO Notice 2020-01, p. 11. OCRC likewise permits information "**show[ing]** the relationship between the person's disability and the need for the requested accommodation." Technical Policy T-31.3.1, p. 9 (emphasis added). Finally, HUD and OCRC guidance both state that the failure to provide documentation are reasonable grounds to deny an accommodation request. FHEO Notice 2020-01, p. 11 ("lack of such documentation in many cases may be reasonable grounds for denying a requested accommodation."); Technical Policy T-31.3.1, p. 8 ("Conversely, a landlord may deny a request for an exception to a no pet policy if a person, who does not have a readily apparent or known disability, fails to provide appropriate documentation as requested.")

Plaintiffs cited *Overlook* claiming that the inquiry must not be highly intrusive, but Plaintiffs again ignore the facts of the case. In *Overlook*, the plaintiffs submitted a psychologist letter in support of an ESA request, but it specified no diagnosis or the related need for the accommodation. 415 F. App'x at 622. Accordingly, the court held that, while the housing provider was not entitled to the broad access of confidential medical and school records it demanded, the provider *was entitled to additional information* to verify that a qualifying disability existed, and the proposed accommodation was related to the disability. *Id.*

Again, here, Espinosa submitted no information supporting their ESA request. Even if

[2] The ESA verification form has also been held enforceable by an Administrative Law Judge from the Iowa Department of Inspection and Appeals. **Ex. Q.**

Edward Rose had required Espinosa to complete the ESA verification form as Espinosa claims (which it did not), this form is limited to the information needed to verify a disability and the disability related need for an ESA. *See also Ali v. Louisville Metro Hous. Auth.*, No. 3:22-CV-463-CHB, 2023 WL 4564779, at *10 (W.D. Ky. July 17, 2023), appeal dismissed, No. 23-5716, 2023 WL 7458347 (6th Cir. Sept. 22, 2023) (holding that plaintiff failed to show defendant refused to make the accommodation because there was no evidence that, had defendant "received the proper documentation from a medical professional, it would have denied plaintiff's request. Until an accommodation request is denied, there is no discrimination under the FHA.") (internal quotation marks and citation omitted)).

**b) <u>Espinosa Submitted No Documentation for an ESA Request</u>**

Plaintiffs further cite *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277 (11th Cir. 2014*)* in support of the proposition that Edward Rose denied Espinosa's ESA request, but Plaintiffs failed to present an accurate recitation of the facts in that case. In *Bhogaita*, the plaintiff initially submitted two provider letters to the condo association, which stated that, due to plaintiff's mental illness, he suffered certain limitations, including social interactions and coping with stress and anxiety, and to alleviate these symptoms, plaintiff was prescribed his dog. 765 F.3d at 1281. The condo association, in turn, requested additional information regarding the disability, including the exact nature of the impairment, how long he has been treated for this impairment, and how many sessions he has had with his provider. *Id*. at 1281-1282. In response, plaintiff submitted another letter, which provided additional details of his impairment and need for his ESA. *Id*. at 1282. The association sent two additional requests for supplemental information of his disability and treatment. *Id*. at 1282-1283. Given these facts, the Court found the plaintiff offered the necessary information of the nature and cause of his disability, the limitations caused by his disability, and how the ESA alleviated his symptoms. *Id*. at 1286-1287.

Unlike *Bhogaita* where the plaintiff submitted three letters in support of his ESA request, Espinosa provided none. **Ex. H**, 92:18-20.[3] Additionally, while the condo association in *Bhogaita* requested extensive information of plaintiff's disability and ESA need, Edward Rose's ESA verification form merely asks two basic questions as detailed above. Further, it is undisputed that Espinosa called Edward Rose via phone, and it had no opportunity to observe any disability. Moreover, Espinosa's purported disability is not physical or readily observable. *See* FHEO Notice, p. 9; Technical Policy T-31.3.1, p. 8. Accordingly, supporting information was needed here. *Id.*

**c) <u>Edward Rose Eagerly Sought to Lease an Apartment to Espinosa</u>**

Plaintiffs continue to intentionally ignore well-documented evidence that multiple communications were sent to Espinosa's email address on file following Espinosa's conversation with Bick. **Exs. J, L.** Specifically, Edward Rose attempted to contact Espinosa on no less than **six occasions.** *Id.* While Espinosa claims they never received the messages, Espinosa conceded they sent a message stating they were interested in an apartment, and Edward Rose replied to the same email account. **Ex. I**, Response to RFA Nos. 10-11. Even if Espinosa claims they never received such emails, these emails show that Edward Rose never rejected Espinosa's request, as it contacted Espinosa on multiple occasions to rent Espinosa an apartment, and an ESA was not an issue. **Exs. J, L.**

**d) <u>Plaintiffs Misstate Edward Rose's Policy</u>**

Plaintiffs further attempt to claim that Edward Rose's policy is limited to only accepting letters from physicians, but this is false. Indeed, when the second tester mentioned they have a therapist letter, the agent never advised the tester the letter would not be accepted and must be

---

[3] Plaintiffs misleadingly claim that Espinosa proffered documentation to support the accommodation request, which was rejected by Edward Rose, but this is contradicted by Espinosa's own deposition testimony. *Compare* **Ex. H**, 92:18-20 *with* ECF No. 16, PageID. 132.

from a physician. ECF No. 17-18. Finally, Plaintiffs refer to Edward Rose's ESA policy but fail to include the policy which explicitly states that a medical professional also includes a therapist. **Ex. R**.

### 6. Plaintiffs Misrepresent the Testing Results

Although Plaintiffs claim TFHC's testing proved disabled applicants must apply for an apartment and pay fees before submitting an ESA request, and also must use Edward Rose's ESA form, such assertions are unfounded. Tellingly, Plaintiffs attempt to support their claims with Rogriguez's affidavit – as opposed to the actual record. Plaintiffs again omit critical evidence. Indeed, Rodriguez testified that the complete conversations between the testers and the agents are captured in TFHC's recordings – and the recordings do not support such conclusions. **Ex. P**, 128:22-129:8, 134:6-12, 141:9-13; ECF Nos. 17-18, 17-20. Plaintiffs try to pin their claims to the third pair of testing, but it is clear the tester failed to follow TFHC's script. *See* ECF No. 17-20. A critical part of TFHC's script was for the tester to tell the agent that she had a therapist letter. **Exs. M-O.** Yet, the tester never mentioned a therapist letter. ECF No. 17-20. Instead, the tester stated she had an ESA, and the agent proceeded to explain how she could apply and request an ESA . *Id.* At no time did the tester disclose to the agent she had a therapist letter, nor did she state she would like to submit an ESA request before applying. *Id.* The tester just continued to ask questions about renting by the end of the month. *Id.* In fact, the only tester to disclose she had a therapist letter was the second tester, and the agent never advised her the letter would be unacceptable or she must apply first. ECF No. 17-18. Accordingly, TFHC's testing confirms Edward Rose has no policy that rejected therapist letters or mandated the use of a specific form.

Furthermore, while Plaintiffs attempt to claim Edward Rose has a policy of requiring an applicant to first apply for an apartment before submitting an ESA request, this is not true. Nonetheless, even if this was the policy, this would not be impermissible. For the FHAA to apply,

the landlord must receive consideration from the prospective applicant, otherwise, the landlord is not obligated to consider an accommodation. *Salisbury v. City of Santa Monica*, 998 F.3d 852, 860 (9th Cir. 2021). The consideration means "a performance consisting of an act other than a promise, or a forbearance, or the creation, modification, or destruction of a legal relation." *Id.* (internal quotation marks and citation omitted). In other words, an applicant's inquiry of applying for an apartment is not sufficient to confer consideration as there is no landlord-tenant relationship that would require a landlord to entertain an accommodation request.

**B. <u>Plaintiffs' Attempt to Bring an Untimely Section 3604(c) Claim Must Fail</u>**

While not actually pled in their complaint, Plaintiffs now allege that Espinosa was "stonewalled" from obtaining an accommodation by Bick's supposed comment that the ESA was "basically a pet." ECF No. 16, PageID. 132. Edward Rose assumes that Plaintiffs are attempting to untimely bring a 42 U.S.C. § 3604(c) claim. But such a claim is not properly before the Court, as Plaintiffs never asserted this cause of action. *See* ECF No. 1; *see Davis*, 945 F.3d at 496 ("if the plaintiff raises the new claims for the first time in the summary-judgment briefing, it generally subjects a defendant to unfair surprise, because the defendant has no opportunity to investigate the claim during discovery.") (internal quotation marks and citation omitted).[4] Nonetheless, even if the Court were to consider such claims, they still fail.

To prove a § 3604(c) violation, a plaintiff must present evidence that: (1) the landlord made

---

[4] Plaintiffs also attempt to litigate yet another issue for the first time at summary judgment (which does not appear in their Complaint). In a footnote, they claim Edward Rose's policy regarding provider licensure is unlawful. *Compare* ECF No. 16, PageID. 132 *with* ECF No. 1. As with their other unpled claim, this claim should be summarily dismissed. *Davis*, 945 F.3d at 496; *see also Gate Guard Servs. L.P. v. Perez,* 14 F. Supp. 3d 825, 833 (S.D. Tex. 2014) (holding that an argument raised in a footnote is insufficient and may be disregarded by the court). The argument is nonetheless futile as licensure is required under Ohio state law and OCRC guidance. *See* Ohio Admin. Code R. 4757-5-13(A)(1); Technical Policy T-31.3.1, p. 8.

a statement; (2) the statement was made with respect to the rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination on a prohibited basis. *Campbell v. Robb*, 162 F. App'x 460, 466 (6th Cir. 2006). A litigant may prove a § 3604(c) violation in one of two ways: by proof that the landlord made the statement with the actual intent to discriminate or by proof that an "ordinary listener" would naturally interpret the statement as indicating a preference for or against a protected group. *Fair Hous. Res. Ctr., Inc. v. DJM's 4 Reasons Ltd.*, 499 F. App'x 414, 415–16 (6th Cir. 2012). Here, Plaintiffs present no evidence showing an actual intent to discriminate, and an ordinary listener would not construe the alleged statement as proof of discriminatory animus against disabled applicants with ESAs. *See DJM*, 499 F. App'x at 415–16. In fact, Edward Rose routinely approves ESA requests.

The Sixth Circuit opinion in *DJM* illustrates the baselessness of Plaintiffs' claim. In *DJM*, the Sixth Circuit affirmed a jury verdict that found the defendants' statements about a blanket "no pet policy" ***was not facially discriminatory***. 499 F. App'x at 416. There, the fair housing center tested defendants' advertisements for rental property that stated "no pets." *Id.* at 414. The center conducted paired testing with a non-disabled prospective tenant and disabled tenants who needed an ESA or a seeing-eye dog. *Id.* During these tests, the defendants emphasized the no-pets policy, making such statements as: "'You told me you didn't have a pet'; 'is the animal a dog?'; 'does the dog live with you all the time?'; 'well, that's my definition of a pet'; 'The ad said 'no pets,'' and 'it is a pet and I'm not going to allow it.'" *Id.* at 415. The court held that, in evaluating whether such statements are discriminatory, the plaintiff may prove discrimination in one of two ways: by proof of actual intent to discriminate or effect on the ordinary listener. *Id.* With the ordinary listener standard, the court upheld the jury instructions that this standard is objective, and the listener is "neither the most suspicious nor the most insensitive." *Id.* at 416 (internal quotation marks and citation omitted). "When applying the ordinary listener test, context is relevant to assist

the factfinder in determining the manner in which a statement was made and the way an ordinary listener would have interpreted it." *Id.* (internal quotation marks and citation omitted).

Here, Bick's purported statement that the ESA was a pet is likewise not facially discriminatory. Unlike *DJM*, where defendants explicitly stated no animals would be permitted even when the testers stated they had an ESA and seeing-eye dog, Bick never stated that the ESA was not acceptable. In looking at the context of the statements, Espinosa admitted that in the same conversation, Bick advised Espinosa they would not be charged any fees for having an ESA. **Ex. H**, 67:24-25. Further, Tracy Creek's application provides a section for applicants to input their pet information and then check if it is a companion or service animal. **Ex. K.** Espinosa admits they do not know if Bick was just referencing the application itself. **Ex. H**, 72:9-15.

**C. <u>Plaintiffs Apply the Wrong Standard for a Discrimination Claim</u>**

Plaintiffs rely on a Fourth Circuit case for their discrimination claim, but fail to even acknowledge the Sixth Circuit's application of proving a discrimination claim under the FHAA. Under Sixth Circuit precedent, a plaintiff can establish a violation by showing either disparate treatment or disparate impact. *Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*, 508 F.3d 366, 371 (6th Cir. 2007). Here, Plaintiffs fail under either theory.

Plaintiffs' claim that Edward Rose imposed different terms, conditions, and privileges, but this is plainly false. Plaintiffs present no evidence that Espinosa was subjected to different rental terms or conditions. Rather, they attempt to retread their flawed arguments regarding Bick's alleged statement concerning "pets," but, as stated above, this was not a discriminatory statement. (*See* per Section IV(5)(d), *supra*). Furthermore, Plaintiffs seek a second bite at the apple on their failure to accommodate claim, alleging Edward Rose had an invasive accommodation policy. However, as detailed in Section IV(5)(a)(1), there was no invasive policy. Plaintiffs also reallege that Edward Rose failed to follow up with Espinosa, but this is patently untrue. **Exs. J, L**; Section

IV(5)(c). Plaintiffs are hard pressed to show an imposition of different terms and conditions as In addition, Edward Rose followed up on multiple occasions with testers who posed as having an ESA. **Ex. S.** There is absolutely no evidence of disparate treatment.

**D. <u>Plaintiffs' Negligent Training and Supervision Claim Is Wholly Unfounded</u>**

Plaintiffs have presented no evidence of negligent training and supervision besides their conclusory assertions. This is not sufficient to secure summary judgment. Indeed, Plaintiffs cite *Johnson v. Kroger Co.*, No. 2:18-CV-1240, 2019 WL 3024460, at *4 (S.D. Ohio July 11, 2019), but *Johnson* actually supports Edward Rose's position. In *Johnson*, the court denied plaintiff's motion to amend to include a negligent training and supervision claim as it did not contain sufficient factual allegations to meet the standard. 2019 WL at *5. The plaintiff claimed the employer failed to train its staff, including the loss prevention specialist that accused plaintiff of stealing, on racial profiling and stereotyping. *Id.* at *4. Plaintiff was arrested for theft, but the charges were subsequently dropped for lack of evidence. *Id.* at *1. Plaintiff alleged that while the specialist worked for the defendant for 10 years, he was never provided any training on racial discrimination or stereotyping. *Id.* at *4. The plaintiff further alleged that after the charges were dropped, the defendant failed to investigate or question the specialist about the incident. *Id.* at *4. The court held that "[w]hile these allegations, if true, are concerning, they do not allow the Court to infer that, before the events in question, [the specialist] was incompetent and that Defendant … had actual or constructive knowledge of [the specialist]'s incompetence." *Id.* The court reasoned that without such knowledge, plaintiff's proposed claim is futile. *Id.*

Here, Plaintiffs present no evidence that Edward Rose had knowledge of Bick's purported "incompetence" prior to her conversation with Espinosa. In fact, the record supports the opposite conclusion. *See* **Ex. A**, ¶ 17 (noting that in her 17-year tenure with the company, Bick never received discipline for accommodation requests). The failure to present evidence of an employer's

knowledge of the employee's incompetence alone is sufficient to dismiss the claim. *Johnson*, 2019 WL 3024460, at *5. Plaintiffs further assert that Edward Rose failed to train its staff, but presented no evidence supporting this claim. ECF No. 16, PageID. 138. Instead, they merely claim Edward Rose's policy reduces housing and cite Rodriguez's affidavit, claiming that testing revealed a consistent pattern of fair housing violations. Yet, Rodriguez testified that the negligent training claim is limited to Bick's conversation with Espinosa, and none of the testers spoke to Bick. **Ex. P**, 175:16-21; ECF Nos. 17-18, 17-20. Nonetheless, the testing does not show any "reduced housing." The only tester who followed TFHC's script was the second tester, and the employee at no time advised the tester that the therapist letter would be rejected, or that she would have to fill out the ESA verification form. ECF No. 17-18. More, the allegations are simply unfounded. It is undisputed that Bick received annual training on fair-housing issues. **Ex. A**, ¶¶ 5, 21.

### E. <u>Plaintiffs Prematurely Raise Damages in a Motion for Summary Judgment</u>

Plaintiffs are putting the proverbial "cart before the horse" by addressing TFHC's purported damages. *See Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1031 (6th Cir. 1994); *In re CMS Energy Sec. Litig.*, 403 F. Supp. 2d 625, 631 (E.D. Mich. 2005). Accordingly, this claim of damages should not be considered at this stage.

## V. <u>CONCLUSION</u>

The Court should deny Plaintiffs' Motion for Summary Judgment.

Respectfully submitted,

By: */s/ Matthew S. Disbrow*

Matthew S. Disbrow (MI-P65378)
(Admitted pro hac vice)
Haba K. Yono (MI-P81114)
(Admitted *pro hac vice)*
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313)-465-7372
mdisbrow@honigman.com
hyono@honigman.com

Dated: September 27, 2024

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I hereby certify that this case is assigned to a Standard Case Management Track, ECF No. 9, and the foregoing Response adheres to the page limitations set forth in Local Rule 7.1(f).

Respectfully submitted,

HONIGMAN LLP

By: */s/ Matthew S. Disbrow /*
Matthew S. Disbrow (MI-P65378)
(Admitted *pro hac vice*)
Haba K. Yono (MI-P81114)
(Admitted *pro hac vice*)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7000
F: (313) 465-8271
mdisbrow@honigman.com
hyono@honigman.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2024, a copy of the foregoing Response was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: */s/ Matthew S. Disbrow /*
Matthew S. Disbrow (MI-P65378)
(Admitted *pro hac vice*)
Honigman LLP