# EXHIBIT D

# FH 128 – Fair Housing Module 8: Reasonable Accommodations

Legal Disclaimer: The contents of this course are intended to convey general information only and not to provide legal advice or opinions. The information in this course should not be construed as and should not be relied upon for legal advice in any particular circumstance or fact situation. An attorney should be contacted for advice on specific legal issues.

This course contains links to other websites which are provided for convenience only. These websites are not affiliated with, associated with, or endorsed by Yardi Systems, Inc. or its affiliated companies.

**Page 1 – Welcome**

[Narrator]

It's time to take an in-depth look at reasonable accommodations. We first introduced this topic in Module 2.

Click Next, and let's take a closer look at some specific examples of reasonable accommodations.

**Page 2 – Reasonable Accommodations**

[Narrator]

Reasonable accommodations are a legal responsibility in the property office, and have a very specific procedure that is dictated by fair housing laws. Remind us, Melanie, what does it mean to offer reasonable accommodations?

[Property Manager]

Certainly! Fair housing laws call for not only protection of people with disabilities but also special considerations. People with disabilities have a right to equal opportunity when it comes to enjoying one of our units, which means that we might need to make what is called a "reasonable accommodation." A reasonable accommodation might be a modification to a certain rule or policy, a difference in service, or in some cases, changes made to the property and/or unit.

[Narrator]

Can you give us some examples?

[Property Manager]

Yes. Providing an assigned parking space close to the resident's unit is a good example. Allowing a blind resident to keep a guide dog despite a no-dog policy. Allowing, and in some instances paying, for the installation of grab bars in a wheelchair-bound resident's unit. Providing translated newsletters for foreign language speakers. If you click the button on this page, you'll see a larger list of potential accommodations.

[Narrator]

And, remember, the law calls for accommodations or modifications that are deemed "reasonable." These examples fall under that category. If you are unsure if an accommodation or modification is "reasonable," you should ask your supervisor.

**Page 3 – Reasonable Accommodation Policies and Procedures**

[Narrator]

There are a lot of ways we can offer assistance to our residents. Take us through a request for reasonable accommodation.

[Property Manager]

Sure. Just the other day we had a resident come in and ask for an assigned parking space close to his unit. Since we don't assign parking spaces at Summerland Square, doing this would be breaking our policy and require us to put up signage, which in turn could result in more requests.

From the moment a request comes in, it is our right, in some cases, to ask the resident for proof that the request is based on a documented medical condition or diagnosis. Typically the resident submits a letter from a physician or we call them directly to verify that the resident has a disability that requires this accommodation or modification. We must not ask them *what* their disability is or *when* they'll get better, or anything related to the disability. Why? Because this might result in a fair housing complaint if we deny the spot or if we make the resident feel uncomfortable. Therefore, seeking verification is nothing more than asking a healthcare professional to vouch for the need for an assigned parking spot.

[Narrator]

How did you do this for the resident requesting an assigned parking space?

[Property Manager]

I'm glad you asked. In our case, the other day, I actually didn't need a letter or phone call from the physician. The resident in question was clearly mobility impaired, as he was using a walker and displayed a clear limp. HUD and the Department of Justice have taken a very clear position that we may not ask for verification if the need is readily apparent. (For instance, if the resident is in a wheelchair or if they are using a white cane due to blindness.)

In our case, we saw the need was readily apparent and set the steps in motion to grant the assigned parking spot without the need for proof.

[Narrator]

What happens if other people then begin to request parking spots?

[Property Manager]

We'll handle each request one by one. This is our policy for all accommodation and unit modification requests.

**Page 4 – Assistance Animals and Care Givers**

[Narrator]

We've mentioned assistance animals already as a good example of a reasonable accommodation. As such, the resident would be allowed to keep an animal that may not be permissible in other circumstances. Melanie, can you ask a resident to pay a pet deposit for an assistance animal?

[Property Manager]

We can't, Jim. As a reasonable accommodation, the assistance animal is not considered a pet. Even if we did allow dogs (we do not), a guide dog for a blind resident does not fall under the same category. We may not charge a pet deposit or restrict size or breed of the animal based on established policy. The one thing we can ask is that the resident picks up the animal's waste in and outside the unit.

[Narrator]

Thanks for the clarification, Melanie. What about live-in care givers? Like guide dogs, they do not fall under the same restriction, correct?

[Property Manager]

You are absolutely correct. If an elderly resident, for instance, needs a live-in care giver, we treat it as a reasonable accommodation. We can use modified screening but we can't ask for rental or credit history.

**Page 5 – Unit Modification Requests – Who Pays?**

[Narrator]

A reasonable modification is similar to an accommodation but it is specifically a request to alter the premises or structure, like installing a raised toilet seat or a visual fire alarm. The question of who pays for unit modifications is a bit trickier. To help us get through those laws, I've asked Tasha, our Director of Compliance, to help us one more time. Tasha, who pays for unit modifications?

[Director of Compliance]

It depends on the property type and request. At a market-rate property like the one we manage here, the resident is typically the one who pays for a new grab bar or installation of a visual alarm. If our property, in any way, received direct federal funding by running any of the affordable programs below, then we would be the ones responsible for the modifications under Section 504 of the Rehabilitation Act of 1973, provided the modifications do not impose an undue financial or administrative burden. Below is a list of affordable programs that fall under Section 504 regulations. If you need a refresher on that law, go ahead and pause the audio and click here. When you're done, click play again to continue.

**Page 6 – Accessibility Requirements (Assignment Question)**

[Narrator]

Modifications aren't always a request because part of being fair housing compliant means offering housing and facilities that are fully accessible. What are the requirements for accessibility?

[Director of Compliance]

Being compliant depends on when the property was built or substantially renovated. The chart below explains everything in depth, but let's go over the high points.

After June 2, 1988, any property that is federally assisted must comply with the Uniform Federal Accessibility Standards.

Any property that is built after March 13, 1991 must comply with the Fair Housing Design and Construction Manual.

Lastly, properties that are new or renovated after January 1, 1993 must comply with the Americans with Disability Act's Accessibility Guidelines (ADAAG).

What does all of this mean? Let's work backwards.

ADAAG requires that common areas of your property have no architectural barriers to persons with mobility, visual, and hearing impairments. This covers entrances, telephones, alarms, signage, and many other parts of the common area.

The Fair Housing Design and Construction Manual calls for accessible building and entrance routes for dwellings and common areas, doors that are usable to people with physical disabilities, accessible routes into and through dwellings, accessible light switches, electrical outlets, and thermostats, reinforced bathroom walls for the installation of grab bars, and lastly, usable kitchens and bathrooms.

The Uniform Federal Accessibility Standards are similar to ADAAG. Feel free to click on the accessibility links in the table to learn more.

When you're finished reviewing the information above, take a moment and move around your property or think about many of the units at your property. Is your property accessible? In the box below, list any concerns you may have and follow up with your supervisor.

**Page 7 – Conclusion**

[Narrator]

You should now have a good understanding of reasonable accommodations. Remember, a reasonable accommodation is a request to alter the premises or structure. If the property receives direct federal funding, they are responsible for paying for the modifications under Section 504 of the Rehabilitation Act of 1973 - provided the modifications do not impose an undue financial or administrative burden.

Were you surprised to learn that as a reasonable accommodation, assistance animals are not considered pets?

We also looked at requirements for accessibility, and saw that compliance requirements are based on when the property was built or substantially renovated. If you'd like to review those requirements, click here.

Otherwise, let's move on to Module 9, Complaint Process, where we'll learn who can file a Fair Housing complaint, and the process this complaint follows.