# EXHIBIT P

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| FAIR HOUSING OPPORTUNITIES OF NORTHWEST OHIO, INC., et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 3:23-cv-01297 |
| | ) | Judge Jeffrey Helmick |
| EDWARD ROSE DEVELOPMENT COMPANY, LLC, | ) | |
| Defendant. | ) | |

\- - -

DEPOSITION
OF
CHRISTINA RODRIGUEZ

TAKEN AT: The Hilton Garden Inn Toledo Downtown
101 N. Summit Street
Toledo, Ohio 43604

DATE: June 18, 2024

TIME: 9:31 a.m.

REPORTER: Shelly M. Reno, RPR

\- - -

Fortz Legal Support
www.FortzLegal.com
844.730.4066

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

FAIR HOUSING OPPORTUNITIES )
OF NORTHWEST OHIO, INC., )
et al., )
)
Plaintiffs, )
)
v. ) Case No. 3:23-cv-01297
) Judge Jeffrey Helmick
EDWARD ROSE DEVELOPMENT )
COMPANY, LLC, )
)
Defendant. )

\- - -

DEPOSITION
OF
CHRISTINA RODRIGUEZ

TAKEN AT: The Hilton Garden Inn Toledo Downtown
101 N. Summit Street
Toledo, Ohio 43604

DATE: June 18, 2024

TIME: 9:31 a.m.

REPORTER: Shelly M. Reno, RPR

\- - -

A. So I assigned Jacqueline, to, again, select testers, to create test covers for two testers to provide another -- to do another matched-pair test and where one person would be a person with a disability and an assistance animal with a letter from a therapist, and the other person would be a person without a disability.
Q. Okay. So same script as before --
A. Yes.
Q. -- with the first testing?
A. Yes.
Q. Okay. And then no submission of application, and no submission of a therapist letter to Tracy Creek Apartments, correct?
A. Correct.
Q. Okay. And with the testing done -- I think it was done in October of 2021, again, the instructions that Jacqueline would have provided to these testers would be contained -- all of that would be contained in the testing form?
A. Yes.
Q. Okay. And those testers for July of 2021 had -- I mean, sorry, of October of 2021, the second round of testing --
A. Yeah.

Q. -- they had recorded their test with Tracy Creek Apartments, correct?
A. Correct.
Q. Okay. So everything in terms of that verbal communications between the tester and the agents would be contained in those recordings, correct?
A. Correct.
Q. Okay. So the first pair of testing was done in July. You said you waited about a month to get Kristen Anderson's testing documentation back, didn't hear from them, so it was invalidated. Then you said around this time is when Jacqueline came --
A. Onboard.
Q. -- onboard. And do you know when exactly?
A. I don't recall. I want to say it was -- I don't recall. At least a couple of months before October, because I know I had been training her that time, so by October, I felt that she was, you know, doing really well and understood how to set up testing, and so she was tasked to set up the matched-pair testing.
Q. Was this the first testing she did on her own?
A. I don't -- I don't believe necessarily was

say?
A. So specifically what the requirements were at Tracy Creek, whether they would accept a therapist verification or whether they were -- required it to be from a doctor, physician.
Q. Okay. So as to the second pair of testing, as to that conversation, that verbal conversation was contained within the recording, correct, between Patricia Fisher, who you had played -- who was the person with the disability, correct?
A. Correct.
MS. YONO: All right. I would like to mark this as Exhibit F.
(Whereupon, Defendant's Exhibit F was marked for identification.)
Q. Are you familiar with this document?
A. Yes.
Q. So I'm going to take you to B-48 through B-52. Are these documents that were supplied by Jacqueline to the testing coordinator?
A. Yes.
Q. I mean to the tester.
A. To the tester, yes. That's correct.
Q. And this was supposed to be stating that

testing.
Q. Do you know when this was prepared?
A. I don't know specifically when this was prepared.
Q. Is this document provided to anyone?
A. No. I believe that this was created just to provide likely to George so that we could discuss what the next steps would be.
Q. Okay. And the summary that Jacqueline provided as to the conversations, those are also just contained in the recordings that were supplied to the Ohio Civil Rights Commission, correct?
A. Yes.
Q. Okay. And I think you misstated earlier. You said the second pair of testing showed that there was a verification form that needed to be filled out, but Jacqueline does not provide that in the October testing. She said -- if you read Plaintiff's 200, the second to last paragraph, she was not given a clear explanation of the process to make a reasonable accommodation request for her assistance animal.
A. I'm sorry. What was the question?
Q. You stated earlier that based on that second pair of testing, a verification form was

needed, but Jacqueline does not summarize -- summarize it as such. Instead, she says there was no clear explanation given.

MR. DAVIS: Objection. And which paragraph are you on?

MS. YONO: The second to last paragraph of Plaintiff's 200. It starts with several months later beginning in October 2021, the Fair Housing Center conducted testing.

A. So, yeah, I referred to the -- I'm sorry, the third matched-pair test is when we -- it was clarified, I believe, so --

Q. Oh, okay.

A. -- it would have been the one in January 2022.

Q. So when you were speaking earlier how the second pair of testing showed that a verification form was needed, you were actually referring to the third --

A. Yes.

Q. -- pair of testing?

A. I'm so sorry, because I -- I --

MR. DAVIS: Let her finish.

A. I'm sorry.

A. I'm sorry?
Q. Do you understand that in the Complaint, a count has been brought for negligent training and supervision?
A. Yes.
Q. And who is that brought against, which employees?
A. I -- I don't recall specifically. I'd have to check the Complaint. I'm sorry.
(Whereupon, Defendant's Exhibit L was marked for identification.)
Q. So if you go to Count III, Page 13 --
A. Uh-huh.
Q. -- provide negligent training and supervision.
A. So, yeah, I see here that the allegation is that the defendant negligently provided inadequate training to Mary Lynn Bick.
Q. Okay. So is it just with respect to Mary Lynn Bick?
A. Yes.
Q. Okay. You spoke earlier about funding with respect to the Fair Housing Center. You said with respect to the -- we're done with the Complaint -- with the Espinosa matter, it was funded