# EXHIBIT Q

**IOWA CIVIL RIGHTS COMMISSION**

# STATE OF IOWA

KIM REYNOLDS, GOVERNOR
ADAM GREGG, LT. GOVERNOR

KRISTEN STIFFLER, EXECUTIVE DIRECTOR

2/19/2024

EDWARD ROSE MILLENIAL DEVELOPMENT, LLC (OWNER)
6101 NEWPORT RD.
KALAMAZOO, MI 49003

RE: CP# 05-23-79998
HUD# 07-23-1685-8
COMMISSIONER MARCELENA ORDAZ v
EDWARD ROSE MILLENIAL DEVELOPMENT, LLC (OWNER),

Dear EDWARD ROSE MILLENIAL DEVELOPMENT, LLC (OWNER):

The Iowa Civil Rights Commission (ICRC) has completed its investigation of the above-captioned complaint.

The Administrative Law Judge has determined a no probable cause finding effective as of the date of this letter. Please refer to the enclosed Administrative Law Judge's Order and Case Summary.

As a result of this finding, ICRC will take no further action on this case.

The Complainant has the following legal options:

1. To request the Iowa Civil Rights Commission reconsider this decision and reopen the case. The request must be made within thirty (30) days from the date of this letter. Should the request for reconsideration be made, you will receive a copy of the request.
2. To file an appeal in district court within thirty (30) days.
3. To file a civil action in district court within two (2) years of the alleged discriminatory practice. The two-year period does not include any time during which an administrative hearing was pending.

If you have any questions, please contact our office. Thank you.

Iowa Civil Rights Commission

Enclosure: ALJ Order and Investigator's Report
Copy: File
HABA K. YONO, Respondent's Attorney

Please help us improve our complaint process by completing a short evaluation at
https://icrc.iowa.gov/file-complaint/complaint-process-evaluation

Iowa Civil Rights Commission, 6200 Park Avenue, Suite 100, Des Moines, Iowa 50321-1270
515-281-4121 / 1-800-457-4416 / Fax 515-242-5840 / icrc@iowa.gov

BEFORE THE IOWA CIVIL RIGHTS COMMISSION

**NO PROBABLE CAUSE ORDER**

| | |
|---|---|
| **CP#** | 05-23-79998 |
| **HUD #** | 07-23-1685-8 |
| **Complainant** | Marcelena Ordaz |
| **Respondents** | Edward Rose Millennial Development, LLC |

## STATEMENT OF THE CASE

Iowa Civil Rights Commissioner Marcelena Ordaz ("Complainant") filed a complaint with the Iowa Civil Rights Commission ("the Commission") alleging a discriminatory practice in the area of housing on the basis of disability. Complainant named Edward Rose Millennial Development, LLC as the Respondent. The complaint was reviewed by the Commission staff and determined to fall within the investigative jurisdiction of the Commission. Accordingly, the complaint was assigned to a Commission investigator who conducted an investigation.

At the conclusion of the investigation, the investigator prepared the attached written report detailing the witnesses interviewed, the documents reviewed, and summarizing the investigative findings. Pursuant to Iowa Code section 216.15(3) and 161 Iowa Administrative Code 3.13(1), this complaint now comes before the undersigned administrative law judge for consideration.

## ANALYSIS

The undersigned hereby adopts the factual findings contained in the attached investigative report. Based on the information contained therein, the undersigned administrative law judge concludes that probable cause does not exist to believe that a discriminatory practice occurred.

## ORDER

Based on the information contained in the attached investigative report, the undersigned administrative law judge determines that no probable cause exists to support the allegation of discrimination. The complaint and discrimination charges are hereby dismissed.

Kristine M. Dreckman
Administrative Law Judge

# Investigator's Report

To: Brenna Bormann, Housing Lead Worker

From: Mathew Gore, Attorney 1

Subject: Marcelena Ordaz v. Edward Rose Millennial Development, LLC
CP# 05-23-79998, HUD# 07-23-1685-8

## RECOMMENDATION

After conducting a thorough investigation and based on all the information collected, I recommend the administrative law judge determine no probable cause exists to believe Respondents committed a discriminatory practice in violation of Iowa Code §§ 216.8A(3)(c)(2) or 216.8A(3)(b)(2).

## Complaint

On May 19, 2023, Commissioner Marcelena Ordaz (Commissioner Ordaz) filed a complaint with the Iowa Civil Rights Commission (ICRC), which was cross-filed with the U.S. Department of Housing and Urban Development (HUD) on May 26, 2023. The complaint alleged discrimination on the basis of disability in the area of housing. The complaint alleged Respondent Edward Rose Millennial Development, LLC (Edward Rose) maintains a policy governing requests for reasonable accommodation which violates fair housing law. The complaint reads:

> *Sections: 804(f)(3)(B) and 804(f)(2)(B) [Iowa Code §§ 216.8A(3)(c)(2) and 216.8A(3)(b)(2)]*
> *Issue: Failure to Make a Reasonable Accommodation, Discriminatory Terms and Conditions*
> *Basis: Disability*
> *Allegations: Policies which violate Fair Housing Act and Iowa Civil Rights Act*
>
> *Under the Federal Fair Housing Act (and the Iowa Civil Rights Act) it is illegal to refuse to make reasonable accommodations in rules, policies, practices, or services, when the accommodations are necessary to afford the person equal opportunity to use and enjoy a dwelling. Complainant alleges Respondent is violating federal and state fair housing laws by implementing the following policies.*
>
> *(1) Respondent has sole discretion to refuse authorization for any animals that are "not compatible with the policies of the apartment community," but do not explain how compatibility is defined or determined. Under this policy, it appears that Respondent is intending to reserve the right to refuse assistance animals based on type, breed, size, etc.*
>
> *(2) Respondent's Emotional Support Animal policy requires Complainant's "licensed medical practitioner" to be "licensed and practicing within the same state as the tenant-applicant and the support animal."*
>
> *(3) Respondent's policy specifically limits "licensed medical professional" to licensed counselors or therapists, or D.O.'s, M.D.'s, or P.A.'s. In the Joint Statement of the Department of Housing and Urban Development and the United States Department of Justice titled "Reasonable*

*Accommodations under the Fair Housing Act," issued May 17, 2004, it states on page 13, Question 18, that "A doctor or other medical professional, a peer support group, a non-medical service agency, or a reliable third party who is in a position to know about the individual's disability may also provide verification of a disability."*

*(4) Respondent's "Service/Companion Animal Request Verification form" asks for the tenant-applicant's care provider's name and address and asks for the tenant-applicant's signature authorizing the release of requested information to Respondent. In the Joint Statement of the Department of Housing and Urban Development and the United States Department of Justice titled "Reasonable Accommodations under the Fair Housing Act," issued May 17, 2004, it states on page 13, Question 18, that a housing provider may not ordinarily inquire as to the nature and severity of an individual's disability. However, in response to a request for a reasonable accommodation, a housing provider may request reliable disability-related information that is necessary to verify that the person meets the Act's definition of disability (an impairment that substantially limits one or more major life activities), describes the needed accommodation, and shows the relationship between the person's disability and the need for the requested accommodation. See also Iowa Code section 216.8C(3). In most cases, an individual's medical records or detailed information about the nature of a person's disability is not necessary for this inquiry.*

*(5) Respondent insists their "Service/Companion Animal Request Verification form" is required to be filled out and submitted for a reasonable accommodation request. In the Joint Statement of the Department of Housing and Urban Development and the United States Department of Justice titled "Reasonable Accommodations under the Fair Housing Act," issued May 17, 2004, it states on page 10, Question 12, that a reasonable accommodation request can be made orally or in writing. Housing providers must give appropriate consideration to reasonable accommodation requests even if the requestor makes the request orally or does not use the provider's preferred forms or procedures for making such requests. Further, Iowa Code section 216.8C(6) states, "This section does not limit the means by which a person with a disability may demonstrate, pursuant to state or federal law, that the person has a disability or that the person has a disability-related need for an assistance animal or service animal."*

**Subject Property**

According to the Dallas County Assessor's Office, the subject property known as Strathmore Apartment Homes located at 1260 S. Jordan Creek Parkway in West Des Moines, Iowa, is owned and managed by Edward Rose. The subject property is a multi-family residential structure containing 72 housing units.

**Complainant's Allegations**

Iowa Code § 216.8C governs statements by health care providers in support of requests for reasonable accommodation involving assistance animals.[1] It requires health care providers to meet three criteria in order to make a written finding in support of a request for reasonable accommodation: to have met with the requester in person or by telemedicine; to be sufficiently familiar with the individual and their

---

[1] Iowa Code § 216.8C applies only to health care providers professionally licensed by the state of Iowa.

disability; and to be legally and professionally qualified to make the finding.[2] However, Iowa Code § 216.8C(6) acknowledges that the Iowa Civil Rights Act (ICRA) does not limit the means by which a person with a disability may demonstrate the existence of either a disability or a disability-related need for an assistance animal under state or federal law.

ICRC also utilizes HUD guidance documents on the Fair Housing Act (FHA) in its interpretation and application of the ICRA's housing provisions. FHEO-2020-01 is HUD's most current guidance document related to requests for reasonable accommodation related to assistance animals.[3] With respect to documentation from health care providers used to establish the existence of a disability or disability-related need for an assistance animal, HUD recognizes that this often comes in the form of documentation or statements by a licensed health care provider. The guidance also differentiates between statements by health care providers related to the requester and certifications or registrations asserting that the animal in question is an assistance animal. The guidance takes no position on what qualifies a health care provider to provide such documentation other than to say that it should be based on "personal knowledge of the individual."[4]

The instant complaint was initiated by ICRC after the investigation of a previous housing complaint filed against Respondent.[5] Although the ICRC ultimately determined no probable cause existed to believe Respondent had engaged in a discriminatory practice with respect to that file, information was collected during the course of that investigation which suggested that Respondent operated under a policy and procedure governing requests for reasonable accommodation in housing which did not comply with fair housing law. Specifically, the ICRC found that Respondent's practice governing assistance animals requires documentation from a health care provider located in the same state as the tenant requesting the accommodation, or in the state from which the tenant has relocated within the previous year. Respondent's standard rental agreement also contains a pet policy with the following provision:

> [Respondent] will authorize guide, leader or service dogs or support animals as required by federal law and the law of the state where the [subject property] is located, provided that [Respondent] shall have absolute and sole discretion in all cases to refuse authorization for any animals that are not compatible with the policies of the [subject property].

**Respondents' Defenses**

Respondents deny their reasonable accommodation policy violates any provision of fair housing law. Respondents assert that their policy and procedure are intended and implemented to ensure the accuracy and quality of the information collected when processing requests for reasonable accommodation related to assistance animals.

*Respondent's Policies and Procedures*

---

[2] Iowa Code § 216.8C(2).

[3] FHEO-2020-01 is available at https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf (Last accessed January 26, 2024).

[4] FHEO-2020-01, at p. 11.

[5] Burns v. Edward Rose Millennial Development, LLC; CP# 01-23-79464, HUD# 07-23-1306-8. Closed with a determination of No Probable Cause on April 25, 2023.

With respect to the provision in the pet policy identified above, Respondent asserted that there are no breed or size restriction in place and characterized the provision as a reservation of the right to remove an animal for conduct issues such as disruptive or aggressive behavior. Respondent's tenant rules and regulations also contain no provision related to size or breed of animal; they require tenants to obtain Respondent's written consent prior to bringing any animal onto the property, dispose of any resulting animal waste, and maintain direct control over the animal at all times.

Respondent provided a copy of its policy and procedure dealing with requests for reasonable accommodation involving assistance animals.[6] Respondent's policy reads in relevant part as follows:

> [T]he medical provider must be licensed and practicing within the same state as the applicant/resident requesting accommodation.[7] If an applicant is relocating from out of state, the medical provider may be licensed and practicing in the state they are relocating from. If the medical provider is located outside the state where the resident resides, a Telehealth visit must be documented on [Respondent's medical verification form] or the letter. If the letter does not indicate the date and time of a Telehealth visit, then the entire [Respondent's medical verification form] must be completed prior to submission. In all instances, the medical provider must be located within the United States, and the verification must be within the past year.

Respondent asserted that they require a health care provider be licensed in the jurisdiction where their patient is located, or had recently relocated from, because that is generally a requirement of professional licensure and practice. Respondent referred to several provisions of the Iowa Code governing licensure of health care professionals and noted that health care providers are required to be licensed in the jurisdiction where the patient is located at the time care is provided.[8] Iowa Code § 216.8C(2) states that, in order to make a finding regarding disability and disability-related need for an assistance animal, health care providers must have met with the individual either in person or via telemedicine, be sufficiently familiar with the individual and their disability, and be legally and professionally qualified to make their finding. Respondent asserts this is intended to ensure that information is coming from providers acting within the scope of their licensure. Respondent went on to state that the licensed professionals enumerated in their policy is not intended to be all-inclusive, but rather illustrative of potential examples.

With respect to their accommodation request form, Respondent asserts that only the first section of the form is required, and that this can easily be completed by the property manager without any additional input. Respondent's form ERS510 first asks for general information on the individual requesting accommodation, including name and address and, when the request is being made by a third party, their relationship to the individual.[9] The form also asks whether the individual is seeking approval of a service or assistance animal. Respondent asserts that further completion of the form is only required in cases where a health care provider's statement is not provided, or is incomplete. Respondent also stated that the language used in the provider's section of the form essentially mirrors that used in Appendix A, Form 1 developed by ICRC. The only addition is that Respondent asks for

---

[6] Respondent's policy is noted to have been issued on March 22, 2023, and most recently updated on May 30, 2023.

[7] Respondent's policy states medical provider "may include a doctor, nurse, PA, [or] social worker."

[8] Iowa Code §§ 148, 152, 154B-D.

[9] Respondent's form incorporates the same definition of disability found in the FHA and ICRA.

the date and time of a telehealth session if that was how the provider and patient met. Respondent asserts this is requested based on Iowa Code § 216.8C(2)(a) requirement for meeting either in person or via telemedicine.

## SUMMARY OF INVESTIGATION

ICRC Investigator gathered and analyzed the following documents: ICRC Questionnaire responses provided by Respondent; Respondent's reasonable accommodation policy; Respondent's health care provider's statement; Respondent's standard rental agreement; and Respondent's tenant rules and regulations.

### Findings of Fact

Following are the investigative findings of fact:

- Marcelena Ordaz is a commissioner with the Iowa Civil Rights Commission (ICRC).
- Iowa Code § 216.15(1) authorizes ICRC or its commissioners to make, sign, and file complaints alleging violation of Iowa Code Chapter 216.
- On May 19, 2023, Commissioner Ordaz filed the instant complaint with ICRC, alleging violations of Iowa Code Chapter 216.
- The instant complaint was filed based on information and evidence collected during the investigation of a previous housing complaint involving Respondent.
- Respondent Edward Rose Millennial Development, LLC (Respondent) owns and operates a 72 unit residential rental structure located in West Des Moines, Iowa.
- Iowa Code § 216.8C(2) requires an Iowa licensed health care provider to meet with an individual in person or via telemedicine, be sufficiently familiar with the individual and their disability, and be legally and professionally qualified to make a finding in order to provide a statement supporting a request for reasonable accommodation involving an assistance animal.
- FHEO-2020-01 does not provide guidance on what qualifications a health care provider needs in order to provide documentation supporting a request for reasonable accommodation involving an assistance animal other than to say that documentation is reliable "when the provider has personal knowledge of the individual."
- Respondent's current policy governing requests for reasonable accommodation in housing involving assistance animals requires that the issuing health care provider be licensed and practicing in the same state as the requester, or in a state from which the requester is relocating within the previous 12 months and has received care.
- Respondent also requires that the date and time of a telehealth appointment be documented, if services are provided remotely.
- With respect to medical or health information requested, Respondent's verification form essentially mirrors the language of Appendix A, Form 1 developed by ICRC.
- Respondent's current policy states that medical professionals may include a doctor, nurse, physician's assistant, or social worker.
- Respondent's tenant rules and regulations contain no specific provisions related to size or breed of animal; they require tenants to obtain Respondent's written consent prior to bringing any animal onto the property, dispose of any resulting animal waste, and maintain direct control over the animal at all times.

**Analysis**

The Iowa Civil Rights Act (ICRA) prohibits discrimination in housing because of disability.

> A person shall not discriminate against another person in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of a disability of a disability of any of the following persons.
> (1) That person.
> (2) A person residing in or intending to reside in that dwelling after it is sold, rented, or made available.
> (3) A person associated with that person.

Iowa Code §216.8A(3)(b).

*Reasonable Accommodation - Disability*

Discrimination based on disability includes a "refusal to make reasonable accommodations in rules, policies, practices, or services, when the accommodations are necessary to afford the person equal opportunity to use and enjoy a dwelling." Iowa Code § 216.8A(3)(c)(2).

To prove denial of a reasonable accommodation for a disability, Complainant must show: (1) they are disabled; (2) Respondent knows or should reasonably be expected to know of the disability; (3) the accommodation is necessary to afford Complainant an equal opportunity to use and enjoy the dwelling; (4) the requested accommodation is reasonable; and (5) Respondents refused to make such an accommodation. See *State ex rel. Henderson v. Des Moines Mun. Housing Agency, et al.*, 791 N.W.2d 710, at *5 (Iowa Ct. App. 2010) (unpublished). The burden of proof is on the Complainant to show the requested accommodation is reasonable on its face. *U.S. Airways Inc. v. Barnett,* 535 U.S. 391 (2002); see *also State of Iowa ex rel. Henderson v. Des Moines Mun. Housing Agency, et al.*, 745 N.W.2d 95, at 3 (Iowa Ct. App. 2007) (unpublished). Respondents can show a requested accommodation is unreasonable if it would impose an undue hardship and administrative burden on the housing provider. See Joint Statement of the Department of Housing and Urban Development and the Department of Justice, *Reasonable Accommodations Under the Fair Housing Act,* 7 (May 17, 2004).

1. Whether Complainant has a disability?

The Federal Fair Housing Act (FHA) defines disability as: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such impairment." 42 U.S.C. § 3602(h). "Major life activities" include activities "such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201 (2013). The Iowa Civil Rights Act (ICRA) defines "disability" and "major life activities" as the FHA. Iowa Code § 216.2(5); ICRC Rule 161-9.3.

Respondent's policy applies only to those individuals who meet the definition of disability, which it shares with the FHA and ICRA. Based on the evidence collected, Respondent's applied definition of disability complies with state and federal fair housing law.

2. Whether Respondent knew or should have known Complainant had a disability?

As stated above, Respondent incorporates the same definition of disability as used in the FHA and ICRA. Respondent requires either completion of their accommodation request form or a statement by a health care provider which includes a finding of disability as defined by Respondent's policy and the FHA/ICRA. Based on the evidence collected, Respondent would have actual knowledge of any disability being asserted by an individual requesting accommodation.

3. Whether the accommodation is necessary to afford Complainant an equal opportunity to use and enjoy the dwelling?

The housing provider must keep in mind the reasonable accommodation must permit the individual with a disability to experience the full benefit of tenancy. See *McGary v. City of Portland*, 386 F.3d 1259, 1262-64 (9th Cir. 2004). The accommodation must also be "necessary" to that individual's enjoyment of his or her dwelling. Joint Statement, *Reasonable Accommodations*, at 6. Furthermore, "to show that a requested accommodation may be necessary, there must be an identifiable relationship, or nexus, between the requested accommodation and the individual's disability." Joint Statement, *Reasonable Accommodations* at 6.

Respondent requires either that a health care provider supply their own statement regarding disability-related need for an assistance animal, or complete their form which asks the provider to establish that such a need exists. The health care provider's section of Respondent's form essentially mirrors ICRC Appendix A, Form 1, which can be used by health care providers to establish the disability-related need for an assistance animal. The only difference is that Respondent's form also asks for the date and time of visit if the health care provider is providing services via telehealth. Respondent correctly asserts that there is no prohibition against this request in the ICRA or FHA, and additionally states that it is intended to ensure that information provided is based on the provider's personal knowledge of the requester's disability and need. As the information serves a legitimate interest of Respondent to collect and evaluate information related to the disability-based need for a request for accommodation, and it is not expressly prohibited, the evidence collected indicates that it is not unreasonable for Respondent to include this question on their form.

4. Whether the requested accommodation is reasonable?

"Reasonable accommodation" is defined as "a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces." Joint Statement, *Reasonable Accommodations* at 6. The burden of proof is on the Complainant to show the requested accommodation is reasonable on its face. See, e.g., *U.S. Airways Inc. v. Barnett*, 535 U.S. 391 (2002); see also *State of Iowa ex rel. Henderson v. Des Moines Mun. Housing Agency, et al.*, 745 N.W.2d 95, at 3 (Iowa Ct. App. 2007) (unpublished). Respondent is only obligated to provide an accommodation "if the request has been made." *Meadowland Apts. v. Schumacher*, 813 N.W.2d 618, 626 (S.D. 2012). A request

for accommodation does not have to be made on any specific or official form, and there are not any specific words or phrases that must be used. *See* Joint Statement, *Reasonable Accommodations* at 10-11.

Respondent asserts that the health care providers enumerated in their reasonable accommodation policy are illustrative rather than exhaustive, and the evidence collected indicates this is not prohibited under the ICRA or FHA. Under Iowa Code § 216.8C(2), a health care provider is required to meet with the individual requesting accommodation in person or via telemedicine, be sufficiently familiar with the individual and their disability, and be legally and professionally qualified to make the requested finding in order to provide a statement substantiating a request for accommodation. ICRC has typically interpreted the "legally and professionally qualified" portion consistent with Respondent's interpretation; i.e., that a provider must be properly licensed and working within the scope of their licensure. Respondent is also correct that a licensed health care provider who provides services in a jurisdiction where they are not licensed is ordinarily operating outside the scope of their licensure, and that for the purpose of telemedicine, the provider is providing services in the jurisdiction where their patient is located at the time service is provided.

Respondent's policy requires either that the provider be licensed and practicing in the jurisdiction in which the patient is located, or in a jurisdiction from which the patient has relocated within the past 12 months and received care. By meeting either of these requirements, a provider is ordinarily operating within the scope of their licensure, and Respondent can more readily find that the provider is making a finding based on "personal knowledge of the individual" as called for under FHEO-2020-01. Based on the evidence collected, Respondent's requirements regarding licensure of health care professionals do not violate any express prohibition under the ICRA or FHA, and are reasonably related to their interest in receiving accurate and credible information.

Likewise, Respondent's reservation of the right to deny or remove an assistance animal based on conduct issues such as aggressive or harmful behavior, waste disposal issues, or disruption of other tenants as "not compatible with the policies of the apartment community" is consistent with the ICRA and FHA. Housing providers are not required to approve an accommodation that poses a direct threat to health or safety if reasonable steps cannot be taken to mitigate that threat. *See* Joint Statement, *Reasonable Accommodations*, at 4-6. Additionally, housing providers who address problematic conduct consistently with their established practices and policies are not engaged in a discriminatory practice, even when those actions are directed toward an assistance animal. Tenants with assistance animals are still subject to rules, regulations, and lease provisions governing their conduct and the care of their housing units and common areas. See FHEO-2020-01, at 14.

5. Whether Respondents refused to make the requested reasonable accommodation?

As established above, because none of the identified provisions, policies, or procedures are prohibited under the ICRA or FHA, Respondent's application of them to requests for reasonable accommodation does not constitute a refusal of an accommodation.

## CONCILIATION

ICRC asked Complainant and Respondents about resolving the complaint through conciliation. Complainant and Respondents participated in the conciliation process. They did not come to a settlement. The case proceeded to the investigative phase of the complaint process.