UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Fair Housing Opportunities of Northwest Ohio, *et al.*,

Plaintiffs,

v.

Edward Rose Development Company, LLC,

Defendant.

Case No. 3:23-cv-1297

MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiffs Silma Espinosa and Fair Housing Opportunities of Northwest Ohio, Inc. dba The Fair Housing Center ("TFHC") filed suit against Defendant Edward Rose Development Company, LLC, alleging Defendant violated the Federal Fair Housing Act, 42 U.S.C. § 3601.01 *et seq.*, and the Ohio Fair Housing Act, O.R.C. § 4112.01, *et seq*. (Doc. No. 1). The parties cross-moved for summary judgment, (Doc. Nos. 16 and 17), and filed responses in opposition to summary judgment. (Doc Nos. 20 and 21). Defendant also filed a motion for leave to file a reply in support of its motion for summary judgment, (Doc. No. 22), which Plaintiffs oppose. (Doc. No. 23). For the reasons stated below, I deny Plaintiffs' motion for summary judgment, grant Defendant's motion for summary judgment, and deny Defendant's motion for leave to file a reply.

## II. Background

Edward Rose is a real estate development company that manages multiple housing communities, including Tracy Creek Apartments in Perrysburg, Ohio. (Doc. No. 16-4 at 2). TFHC is a civil rights organization dedicated to addressing and investigating alleged housing discrimination. (Doc. No. 16-3 at 3).

At the time of filing suit, Silma Espinosa was employed as the Court Services Commissioner for Toledo Municipal Court. (Doc. No. 17-9 at 9). Their[1] role included – among other things – overseeing a staff of eight, securing visiting judges, reporting office issues to supervisors, and managing judicial calendars. (*Id.* at 10). Prior to that position, Espinosa worked as a Fair Housing Specialist for TFHC. (*Id.* at 12).

On June 9, 2021, Espinosa contacted Tracy Creek Apartments regarding the availability of a two-bedroom, first-floor apartment and briefly spoke with leasing agent Mary Lynn Bick. (Doc. No. 16-1 at 1); (Doc No. 17-12 at 2); (Doc. No. 17-9 at 18, 22-23). During the conversation Bick asked whether Espinosa had any pets. (Doc. No. 17-9 at 24). Espinosa responded that they had an Emotional Support Animal ("ESA"). (*Id.*). According to Espinosa, Bick responded, "That's basically a pet." (*Id.*). Espinosa then asked whether they would be charged a fee for having an ESA. (*Id.*). Bick responded that no pet fee would apply, provided Espinosa's physician completed Defendant's ESA verification form confirming Espinosa's disability and the need for an ESA. (*Id.* at 24-25).

Espinosa informed Bick that they already possessed an ESA verification letter from a therapist. (*Id.* at 25). Espinosa initially asserted that Bick stated therapist documentation would not be accepted and that a physician would need to complete Defendant's verification form. (*Id.* at 25-27); (Doc. No. 16-1 at 1-2). Later in their deposition testimony, however, Espinosa acknowledged

[1] Espinosa uses "them/they/their" pronouns.

they could not recall whether Bick expressly rejected the therapist letter and conceded it was possible Bick never made such a statement. (Doc. No. 17-9 at 27-28).

At the end of the conversation, Espinosa requested general information and asked Bick to send a follow-up email. (Doc. No. 16-1 at 2). Defendant later sent multiple follow-up messages to an email address containing a misspelling of Espinosa's last name. (*Id.* at 14). Espinosa alleges they did not receive the communications. (Doc. No. 16-1 at 2); (Doc. No. 17-11 at 2-4). Espinosa did not submit the therapist letter, complete Defendant's verification form, contact management, or otherwise continue the accommodation process. (Doc. No. 16-1 at 2); (Doc. No. 17-9 at 30); (Doc. No. 17-11 at 4).

Following the conversation with Bick, Espinosa contacted TFHC, which subsequently conducted testing at Tracy Creek Apartments. (Doc. Nos. 17-15, 17-16, and 17-17). Testers posed as prospective tenants and were instructed to have a "substantial conversation with the rental agent" and to "casually mention that you have an assistance animal and a verification letter from your therapist (not a physician)." *Id.*

Tester number two informed the leasing agent that she had an ESA and a therapist letter and asked whether a fee would apply. (Doc. No. 17-18 at 3:38-3:54). The agent responded that no fee would be charged and did not mention Defendant's verification form. (*Id.*).

Another tester informed a leasing agent that she had an ESA and was seeking housing by the end of the month. The agent replied "OK, not a problem." (17-20 at 4:43-4:57). Later, the agent instructed:

> Once approved [for a lease] we would have you come in and fill out the service animal paperwork so we can send it to your medical provider. You would give us their name, address, and fax number, we would send them that, and it would come back and say "yes, its approved" and we waive the fee.

*Id.* at 13:08-13:29.

Espinosa and TFHC subsequently filed complaints with the Ohio Civil Rights Commission, ("OCRC"). (Doc. Nos. 16-3). Espinosa alleged that Defendant violated housing laws by refusing therapist verification, requiring direct communication with a physician, and maintaining a policy of refusing to consider ESA requests until after prospective tenants have applied for housing and signed a lease. (*Id.* at 5). TFHC made similar claims, arguing these policies exceeded the parameters of the Fair Housing Act ("FHA"), and deterred the disabled from applying for housing. (Doc. No. 16-3 at 2-3). TFHC further alleged that Defendant's conduct had caused it "to divert resources to this investigation and has frustrated the mission of TFHC." (*Id.*).

On February 9, 2023, the OCRC issued a Letter of Determination finding probable cause that Defendant engaged in discriminatory housing practices. (Doc. No. 16-4 at 5). Specifically, the OCRC concluded that testing revealed Defendant had a policy of delaying consideration of accommodation requests until after the leasing process was completed. (*Id.* at 2-3). The OCRC also found that Defendant refused to engage in the interactive process regarding Espinosa's request for an ESA. (*Id.* at 4). Further, Defendant's policy required disability verification to be sent directly from physicians to management – a requirement more restrictive than permitted under Ohio Revised Code § 4112, *et esq*.[2] (*Id.* at 2-4).

[2] OCRC cites The Ohio Civil Rights Commission's Technical Policy T-31.3, which states in relevant part: "The Commission takes the position that any health service provider may have a role in supporting a disabled person's need for an ESA, not just a medical doctor. The Commission also recognizes that a tenant may provide information from a non-medical entity supporting the need for an ESA."

The OCRC also addressed alleged violations related to breed restrictions and same-state provider requirements. (Doc. No. 16-4 at 4-5). But Plaintiffs do not bring claims related to breed restriction. Nor do they advance arguments challenging Defendant's same-state provider policy until moving for summary judgment. (Doc. No. 16 at 10); (Doc. No. 20 at 9). Because a plaintiff may not amend a complaint by raising new claims for the first time at summary judgment, s*ee Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005), I will not consider arguments regarding breed restrictions or same-state provider licensing.

Plaintiffs later filed this action alleging violations of the FHA, Ohio Revised Code § 4112.01, *et seq*., and negligent training and supervision. (Doc No. 1 at 11-14).

## III. Standard

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant and all reasonable inferences are drawn in the nonmovant's favor. *See, e.g.*, *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (citing cases). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

"This standard of review remains the same for reviewing cross-motions for summary judgment." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441 (6th Cir. 2021). That is "where, as here, the parties filed cross-motions for summary judgment, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (internal quotation marks and further citation omitted).

## IV. Analysis

Plaintiffs allege Defendant violated the FHA and Ohio housing laws by (1) failing to grant Espinosa's request for a reasonable accommodation; (2) imposing different terms, conditions, and privileges in the rental of a dwelling; and (3) violated Ohio tort law by negligently supervising and training its agents. (Doc. No. 1 at 11-14).

The FHA prohibits discriminating "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with [a] dwelling, because of a

handicap of that person." 42 U.S.C. § 3604(f)(2)(A). Discrimination includes a "refusal to make accommodations in rules, policies, practices, or services, when such accommodation may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). When a plaintiff advances a claim under § 3604(f), they "may proceed under any or all of three theories: disparate treatment, disparate impact, and failure to make reasonable accommodations." *Smith and Lee Assocs. Inc., v. City of Tayor, Mich.*, 102 F.3d 781, 790 (6th Cir. 1996). Additionally, the FHA and the Ohio Fair Housing Act are "substantively identical" and therefore, federal case law analyzing the FHA applies equally to Ohio Fair Housing claims. *See Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 n.2 (6th Cir. 2011) (further citations omitted).

## A. FAILURE TO MAKE A REASONABLE ACCOMMODATION

Plaintiffs allege Defendant failed to provide them with a reasonable accommodation in violation of federal and state law. (Doc. No. 16 at 13). A plaintiff advancing a reasonable-accommodation claim must establish that:

> (1) [they] suffer from a disability within the meaning of the FHA; (2) the defendant knew or should reasonably have known of the disability; (3) the requested accommodation may be necessary to afford an equal opportunity to use and enjoy the dwelling; (4) the requested accommodation is reasonable; and (5) the defendant refused the accommodation.

*Overlook*, 415 F. App'x at 621 (internal quotation marks and citation omitted). A plaintiff bears the burden of establishing each element of the claim. *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014) (citations omitted).

### 1. Disability under the FHA

Courts often look to the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") when interpreting the FHA. *See United States v. Hialea House. Auth.*, 418 F. App'x 872, 876 (11th Cir. 2011) ( "[W]e look to case law under the [RA] and the [ADA] for guidance evaluating reasonable accommodation claims under the FHA."); *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1149

(9th Cir. 2003) ("[W]e have applied RA regulations and case law when interpreting the [Fair Housing Amendments Act of 1988 ("FHAA")'s] reasonable accommodation provisions."); *McCree v. Lexington Vill. Apartments*, No. 08-14185, 2010 WL 931859, at *6 (E.D. Mich. Mar. 11, 2010) ("The ADA has language that mirrors the FHA in all material respects and courts often look to the ADA for guidance in interpreting the FHA.") (citation omitted); *Hansen v. Liberty Partners, LLC*, No. 3:04-1099, 2005 WL 3527162, at *7 (M.D. Tenn. Dec. 22, 2005) ("Because of the similarities in language between the two acts, courts often look to and relay on ADA cases in applying the FHAA.") (citations omitted). The Sixth Circuit has acknowledged that "[t]he FHA uses the term 'handicap' rather than 'disability,' but the two terms have interchangeable meaning in [the context of the FHAA]." *Hollis*, 760 F.3d at 545 n.1.

Under the FHA, an individual is disabled if: (1) they suffer from a physical or mental impairment which substantially limits one or more major life activities; (2) have a record of having such an impairment; or (3) are regarded as having such an impairment. 42 U.S.C. § 3602(h)(1-3). Major life activities include – but are not limited to – "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Plaintiffs argue that Espinosa's diagnoses of bipolar disorder and generalized anxiety disorder are impairments that substantially limit major life activities. (Doc. No. 20 at 13). Plaintiffs emphasize that Espinosa's therapist determined that Espinosa "meets the definition of disabled" under the FHA and recommended an ESA. (Doc. No. 16-5 at 2).

Defendant responds that the record does not show Espinosa's impairments substantially limit a major life activity. (Doc. No. 17 at 17-18). Defendant notes that at the time of filing suit, Espinosa maintained full-time employment in a supervisory role, independently commuted to work, and recently purchased a home – evidence that Espinosa's major life activities were not substantially

limited. (*Id.* at 18). Defendant further argues that the therapist letter contains largely conclusory assertions and provides limited detail regarding the nature or extent of any substantial limitations. (*Id.* at 23).

Whether viewing the record in the light most favorable to Plaintiffs or to Defendant, a reasonable jury could conclude Espinosa is disabled under the FHA. The record indicates Espinosa was diagnosed with bipolar disorder and generalized anxiety disorder, engaged in ongoing treatment– including therapy and medication – and has been hospitalized due to suicidal ideation. (Doc. No. 17-9 at 15-16). These facts could lead a reasonable jury to conclude Espinosa was substantially limited by her mental illness. *See Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 134 F. App'x 921, 925-26 (6th Cir. 2005) (under the ADA a plaintiff who was terminated after a suicide attempt established employer perceived her as suffering from depression that limited her in the major life activity of caring for herself); s*ee also Wheeler v. Am. Univ.*, 619 F. Supp. 3d 1, 20 (D.D.C. 2022) (finding that under the ADA and RA, suicidal ideation requiring academic leave of absence was "enough to survive summary judgement" on question of disability); *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 168 (2d Cir. 2003) ("A mental illness that impels one to suicide can be viewed as a paradigmatic instance of inability to care for oneself. It therefore constitutes a protected disability under the [RA].").

Further, in 2008 Congress amended the ADA to broaden the definition of "substantially limits." Federal regulations interpreting the ADAA identify bipolar disorder as an impairment that will "virtually always" substantially limit brain function – a major life activity. 29 C.F.R. § 1630.2((j)(3)(ii)-(iii).[3] While the Sixth Circuit has not definitively addressed the extent to which the

[3] Some courts question whether the ADAA's broadened interpretation of "substantially limits" applies to the FHA, noting that while Congress expanded the definition of "disabled" under the ADAA, it chose not to amend the FHA in a similar fashion. *See, e.g.*, *Bhogaita v. Altamonte Heights Condo. Assn., Inc.*, 756 F.3d 1277, 1288 (11th Cir. 2014) (applying "pre-ADAA" definition of disability to FHA claim); *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 54 n.10 (2d Cir. 2015)

ADAA's expanded interpretation of "substantially limits" applies to the FHA, courts have recognized that the FHA is a remedial statute entitled to broad construction. *See Linkletter v. W. & S. Fin. Grp., Inc.*, 851 F.3d 632, 637 (6th Cir. 2017) (as a remedial statue, FHA provisions "should be broadly interpreted and applied with the Fair Housing Act's purpose in mind"); *Hous. Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc.*, 943 F.2d 644, 646 (6th Cir. 1991) ("Courts have given a broad reading to the FHA in order to fulfill its remedial purpose.") (abrogated on other grounds by *Tenn. Conf. of the NAACP v. Lee*, 139 F.4th 557 (6th Cir. 2025)).

While Defendant argues that Espinosa is not disabled because she is gainfully employed, "the [disability] definition is met even if the difficulties are not insurmountable." *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998). And a plaintiff may "achieve some measure of success despite [their] disability." *Peters v. Univ. of Cincinnati Coll. of Med.*, No. 1:10-CV-906, 2012 WL 3878601, at *6 (S.D. Ohio Sept. 6, 2012)

Considering Espinosa's history of bipolar disorder, their prior hospitalization for suicidal ideation, ongoing treatment for mental illness, and therapist's statements, I conclude a reasonable jury could find Espinosa's mental illness substantially limits major life activities. Thus, there is a genuine dispute of material fact as to whether Espinosa is disabled under the FHA. But, as explained below, even if Plaintiffs prove a disability, no reasonable jury could find they have established the remaining elements of a failure-to-accommodate claim.

**2. Knowledge of Disability**

Plaintiffs argue that a party "'need not affirmatively identify his or her disability to affirmatively trigger FHA protection.'" (Doc. No. 16 at 14) (quoting *McClendon v. Bresler*, No. 22-55068, 2022 WL 17958633, at *1 (9th Cir. Dec. 27, 2022)) (further citation omitted). Plaintiffs assert

---

(applying pre-ADAA standards to FHA claim because Congress did not amend FHA's definition of disability when it amended the ADA).

that statements like "I have a therapy animal" should place a property manager on notice of an individual's disability. (Doc. No. 16 at 14). Thus, Plaintiffs contend that Espinosa's statements informing Bick of their ESA and therapist letter sufficiently imputed knowledge of a disability. (Doc. No. 16 at 14, 18).

Defendant responds that it did not know whether Espinosa had a qualifying disability. (Doc. No. 17 at 20-21). Defendant asserts that, because Espinosa never disclosed they had a disability or identified the limitations resulting from their alleged impairments, Espinosa's statements to Bick are insufficient to prove it knew or should have known of a disability. (*Id.*) Moreover, Espinosa never submitted the therapist letter or otherwise provided documentation concerning their disability or need for accommodation. (*Id.* at 21).

Based on the record evidence, a reasonable jury could not conclude Defendant knew of Espinosa's disability. True, Espinosa need not use the word "disabled" to put Defendant on notice of their disability. But they must convey enough information for Defendant to recognize an impairment that substantially limits a major life activity. *Cf. King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 563-64 (6th Cir. 2022) (stating under the ADA the relevant question is not whether defendant knew of plaintiff's medical condition, but whether it knew the condition substantially impaired plaintiff's ability to perform the essential functions of her job) (further citation omitted). *See also Kooman v. Boulder Bluff Condos.*, 833 F. App'x 623, 627-28 (6th Cir. 2020) (holding plaintiff failed to establish "knowledge" element because statements failed to convey plaintiff had a physical impairment that substantially limited a major life activity).

Here, Espinosa's disability was unobservable. And yet, Espinosa failed to submit documentation containing sufficient information to put Defendant on notice that they had a qualifying disability. Although Espinosa may have mentioned having an ESA and a therapist letter, many individuals without disabilities participate in therapy, and Espinosa's claim they owned an ESA

does not automatically establish a qualifying disability under the FHA. *See id.* (finding summary judgment appropriate because statements that plaintiff was "feeble," "in bad health," "not very well balanced on his legs," and had fallen were insufficient to establish knowledge, noting that the statements "describes a lot of older people but not necessarily disabled people" and did not show defendant knew of an impairment that substantially limited a major life activity).

Even when viewing the record in the light most favorable to Plaintiffs, a reasonable jury could not conclude based on Espinosa's limited statements that Defendant knew or should have known of the alleged disability. Thus, Defendant is entitled to summary judgement. *See Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 568 (6th Cir. 2023) (holding under the ADA, "A prima facie case is not made out if the decisionmaker is unaware of an employee's disabilities or restrictions, even if the decisionmaker has general knowledge that a disability exists."); *see also Moore v. Next Generation Hosp., LLC*, No. 24-4050, 2025 WL 3025607, at *6 (6th Cir. Oct. 29, 2025) (concluding under the ADA defendant was not aware of plaintiff's disability until plaintiff provided letter from medical provider).

**3. Necessity**

Further, based on the record evidence, a reasonable jury also could not conclude Espinosa's ESA was necessary. Plaintiffs argue that Espinosa's ESA was necessary because it "assist(s) with emotional and social support as well as overall well-being." (Doc. No. 16 at 17). Plaintiffs contend that the FHA does not require extensive medical details to establish necessity, (Doc. No. 16 at 16), and point to Espinosa's therapist letter to support their argument that an ESA was necessary. (Doc. No. 16-5 at 2); (Doc. No. 20 at 22). Further, they argue Defendant improperly demanded more information than the FHA permits, without first considering the therapist letter. (Doc. No. 20 at 21-22).

Defendant counters that the record fails to establish a nexus between Espinosa's alleged disability and the requested accommodation. (Doc. No. 17 at 23). Defendant claims the therapist

letter contains largely conclusory assertions, and offers little explanation as to *how* an ESA alleviates the effects of Espinosa's alleged impairments. (*Id.*). While Espinosa's affidavit states they are disabled and "require[ ] an ESA for my emotional and social wellbeing," (Doc. No. 16-1 at 1), Defendant asserts that self-serving "bald conclusions" in an affidavit cannot support summary judgment. (Doc. No. 21 at 15). *See also Sigmon v. Appalachian Coal Properties, Inc.*, 400 F. App'x 43, 49 (6th Cir. 2010). Moreover, because Espinosa can successfully treat her mental illness through medication and therapy, Defendant argues an ESA is not necessary. (Doc No. 17 at 23).

Under the FHA, the term "necessary" requires more than a showing that the accommodation would be "merely helpful or conducive." *Kooman*, 833 F. App'x at 628 (quoting *Cinnamon Hills Youth Crisis Ctr., Inc. v. St. Geroge City*, 685 F.3d 917, 923 (10th Cir. 2012)). The Sixth Circuit has explained that "[t]he necessity element is . . . a causation inquiry that examines whether the requested accommodation or modification would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled person would receive." *Hollis*, 760 F.3d at 541. Thus, a plaintiff must establish that "but for" the requested accommodation, they would be deprived of the equal opportunity to enjoy the housing. *Id.*

Viewing the record in the light most favorable to Plaintiffs, a reasonable jury could not conclude an ESA was necessary for Espinosa to have an equal opportunity to enjoy an apartment at Tracy Creek. The therapist letter states in general terms that Espinosa has "certain limitations," and that the therapist is "recommending [an ESA] to help [Espinosa] in dealing with [their] disability better." (Doc. 16-5 at 2). Espinosa's therapist opines that an ESA will "improve [Espinosa's] ability to lead a better life while fully enjoying and using the dwelling," (*Id.*). But the letter provides limited detail regarding Espinosa's symptoms and how an ESA would ameliorate those symptoms. *See Brower v. Roose*, No. 24-cv-10702, 2024 WL 1694860, at *5 (E.D. Mich. Apr. 19, 2024) (finding plaintiff failed to establish necessity where physician's letter did not address extent of anxiety,

establish significant functional limitations, or imply that designating plaintiff's cat an ESA was necessary to alleviate symptoms). While Espinosa's therapist suggests an ESA would "help" Espinosa, recommending an ESA to *help* with an alleged disability falls short of establishing that a disability is *necessary*. *Compare Gamane v. Laman*, No. 1:22-cv-1199, 2023 WL 4290063, at *4 (W.D. Tenn. June 30, 2023) (holding a physician's letter suggesting a plaintiff "would benefit" from a second ESA failed to establish necessity) *with Whitacre v. City of Southgate*, 651 F. Supp. 3d 893, 896, 899-900 (E.D. Mich. 2023) (finding a genuine dispute regarding necessity where plaintiff's mental illness impaired communicating, sleeping, and eating, and a provider testified ESA would alleviate anxiety and depression by creating a calm environment and providing purpose).

Espinosa claims through their affidavit that they are disabled and require an ESA. (Doc. 16-1 at 1 ). But as Defendant correctly notes, unsupported "'affidavits setting forth "ultimate or conclusory facts and conclusions of law" are insufficient to either support or defeat a motion for summary judgement.'" *Sigmon*, 400 F. App'x at 49 (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)).

On this record, a reasonable jury could not conclude that, but for an ESA, Espinosa would be denied the equal opportunity of enjoying the housing of their choosing. Thus, Defendant is entitled to summary judgment on the "necessary" element.

### 4. Denial of reasonable accommodation

The parties next dispute whether Defendant refused or constructively denied the accommodation request.

A refusal to make a reasonable accommodation may be either express or constructive. Constructive denial may occur where a housing provider causes unreasonable delay, engages in stonewalling, or otherwise fail to reach an agreement on an accommodation request. *See Overlook*, 415 F. App'x at 621-22. But the FHA does not require a housing provider to grant a requested

accommodation immediately. *Moody v. Gongloff*, 687 F. App'x 496, 499 (6th Cir. 2017). Nor does a request for additional information necessarily constitute a denial. Where a disability is non-apparent, a housing provider may seek additional information to evaluate the request. *Overlook*, 415 F. App'x at 621.

Plaintiffs argue Defendant denied the accommodation request by referring to Espinosa's ESA as a "pet," rejecting the therapist verification letter, and insisting on direct contact with Espinosa's physician. (Doc. No. 16 at 16-17). Plaintiffs also contend Defendant failed to engage in the interactive process and imposed unnecessary barriers that discouraged Espinosa from pursuing housing at Tracy Creek. (*Id.* at 9), (Doc. No. 20 at 8).

Defendant responds that it never denied any accommodation request, but sought information permitted under the FHA. (Doc. No. 17 at 24). Defendant notes that Espinosa concedes in their deposition and requests for admission that: (1) they do not recall Bick stating the therapist letter would be denied; (2) they never submitted the letter, and (3) Defendant never expressly denied the accommodation request. (*Id.*; Doc. No. 21 at 15; Doc. No. 21-10 at 5). (*See also* Doc. No. 17-9 at 27-28, 30-32). Finally, Defendant argues that its verification form was not overly intrusive, and thus did not constitute a constructive denial of Espinosa's request. (Doc. No. 21 at 16-18).

Based on the record, I find a reasonable jury could not conclude Defendant denied Espinosa's accommodation request. First, the record does not support a finding that Defendant expressly denied the accommodation request. While Espinosa alleged in their affidavit that Bick said the therapist letter would be rejected, (Doc. No. 16-1 at 1-2), they acknowledged during prior deposition testimony that they could not recall whether Bick expressly made such a statement. (Doc. No. 17-9 at 27-28). Plaintiffs offer no persuasive justification for this contradiction. *See Reich v. City of Elizabethtown*, 945 F.3d 968, 976 (6th Cir. 2019) (noting that at summary judgment, an

affidavit that directly contradicts sworn prior testimony should be disregarded absent "persuasive justification for the contradiction").

While Plaintiffs allege Defendant refused to engage in the interactive process, the record shows otherwise. Defendant attempted to continue communications with Espinosa after the initial phone call by sending multiple follow-up emails regarding apartment availability and next steps in the process. (Doc. No. 17-12 at 2-3); (Doc. No. 17-14 at 2). Although the emails were allegedly sent to an incorrect address and therefore not received by Espinosa, these follow-up efforts undermine Plaintiffs' assertion that Defendant refused to engage in the interactive process.

Importantly, Espinosa never submitted supporting documentation, never provided the therapist letter, never completed Defendant's verification form, never spoke with management about alleged concerns, never reinitiated contact with Defendant, or otherwise continued to engage in the interactive process. *See Ali v. Louisville Metro Hous. Auth.*, No. 3:22-CV-463, 2023 WL 4564779, at *10 (W.D. Ky. Apr. 28, 2025) (holding that plaintiff was unlikely to succeed on failure-to-accommodate claim where he failed to respond to defendant's request for documentation and never submitted doctor's letter stating accommodation was necessary); *Leonard v. Hocking Metro. Hous. Auth.*, No. 2:24-CV-3932, 2024 WL 4227056, at *2 (S.D. Ohio Sept. 18, 2024) (finding no constructive denial of accommodation where plaintiff did not respond to requests for information and moved before defendant deprived them of ESA) (report and recommendation adopted by No. 2:24-CV-03932, 2025 WL 634436 (S.D. Ohio Feb. 27, 2025)).

Nor does the record establish that Defendant has a policy of only accepting verification from physicians. When the second tester mentioned having an ESA and therapist letter, the agent confirmed no fee would apply and did not reject the letter. (Doc. No. 17-18 at 3:38-3:54). And Defendant's written policy expressly notes that therapist verification is sufficient to support an ESA request. (Doc. No. 21-19 at 2).

Further, the record does not support a finding that Defendant constructively denied Espinosa's accommodation request. As Defendant correctly notes, a request for additional information does not, standing alone, constitute constructive denial. That said, "[i]n some circumstances, a housing provider that refuses to make a decision unless a requestor provides unreasonably excessive information could be found to have constructively denied the request by 'stonewalling' and short-circuiting the process." *Overlook*, 415 F. App'x at 622.

Espinosa's alleged disability was nonapparent. Thus, Defendant was entitled to request additional information to verify the existence of a qualifying disability and need for an ESA. Only if Defendants inquiry was "unreasonably excessive" can it be said that it constructively denied Espinosa's request. *Id.*

Here, Defendant's verification form asked for confirmation that the applicant had a qualifying disability, a disability-related need for the accommodation, and whether one ESA would suffice. (Doc. No. 21-7 at 2). The form did not request medical records, treatment notes, or extensive personal information of the kind courts have found impermissibly intrusive or overly broad. *See e.g.*, *Overlook*, 415 F. App'x at 618 (observing that defendant was likely not entitled to requested "diagnosis of [plaintiff's] medical condition, contact information for her medical providers, a description of the treatment [plaintiff] was receiving, a description of services proved by [the ESA] and the training it had received, and plaintiff's school and medical records"); *Bhogaita*, 765 F.3d at 1281-82, 1287 (finding unreasonable inquiry where defendant requested plaintiff to divulge the exact nature of his impairment, how it substantially limited a major life activity, how long he had been receiving treatment for the impairment, how many sessions he previously had with his therapist, and the specific training the ESA had received); *Laflamme v. New Horizons, Inc.*, 605 F. Supp. 2d 378, 379, 390-92 (D. Conn. 2009) (inquiry violated the FHA because, prior to lease approval, disabled applicants were required to prove they could live independently, were emotionally

stable with no history of pathological behavior, possessed control over bodily functions, and show that medical needs were manageable through outpatient resources).

On this record, no reasonable jury could conclude Defendant requested excessive information or otherwise stonewalled Espinosa's request for an accommodation in a manner that constitutes a constructive denial of the request.

**5. Summary**

As set forth above, I conclude the record evidence is not sufficient to establish a genuine dispute of material fact as to whether Defendant had knowledge of Espinosa's disability or whether the requested accommodation was necessary. Nor does the record support Plaintiffs' claim that Defendant denied any request for a reasonable accommodation. Thus, Defendant is entitled to summary judgment on Plaintiffs' failure-to-accommodate claim.

**B. DISPARATE TREATMENT**

Plaintiffs also assert that Defendant violated the FHA by imposing discriminatory terms, conditions, or privileges in the rental of a dwelling. (Doc. No. 16 at 21). The FHA makes it unlawful "[t]o discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). Further, a housing provider may not "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a handicap." 42 U.S.C. § 3604(f)(2).

Plaintiffs argue that conduct prohibited by the "otherwise make unavailable" language in § 3064(f)(1) includes "the imposition of burdensome application procedures, of delaying tactics, and of various forms of discouragement by resident manager and rental agents." (Doc. No. 16 at 21).

First, Plaintiffs contend that Bick's statements actively discouraged Espinosa from applying for housing.[4] (*Id.*).

Second, Plaintiffs argue that Defendant's leasing requirements – which allegedly demand direct communication with a physician and require a prospective tenant to submit a housing application before considering an ESA request – "creates a barrier to housing that non-disabled applicants will never experience." (*Id.* at 21-22). Plaintiffs highlight Defendant's failure to respond to Espinosa's initial information request and denial of accommodation request as additional proof that Defendant "imposed different terms, conditions, and conditions on Espinosa during the leasing process which otherwise made housing unavailable." (*Id.*).

Defendant responds that Plaintiffs' disparate treatment claim must fail because the record does not show Espinosa was subjected to discriminatory terms or conditions and Plaintiffs cannot establish a prima facie case of housing discrimination. (Doc. No. 21 at 10).

A plaintiff asserting a disparate-treatment claim under the FHA "'must show proof of intentional discrimination.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012) (citation omitted). "This can be established either through direct evidence of intentional discrimination or through circumstantial evidence using the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."[5] *Id.*

---

[4] Defendant notes that – in making this allegation – Plaintiffs appear to be advancing a §3604(c) claim, which makes it unlawful to "make, print, or publish . . . any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap." 42 U.S.C. § 3604(c). Because Plaintiffs did not advance a § 3604(c) claim in the complaint, they cannot bring it now in their motion for summary judgment. *See Howard v. Tennessee*, 740 F. App'x 837, 843 (6th Cir. 2018).

[5] At times, Plaintiffs conflate their failure-to-accommodate and disparate treatment claims. Because the *McDonell Douglas* burden-shifting framework does not apply to failure-to-accommodate claims, *see Hollis*, 760 F.3d at 540, I will not evaluate the accommodation claim under that standard. Rather, I will consider if a reasonable jury could conclude Defendant's alleged policies surrounding ESA requests violate §§ 3604(f)(1) and (2).

**1. Direct evidence**

Direct evidence is evidence that, if believed, requires no inference to conclude that unlawful discrimination motivated the challenged conduct. *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). Statements that are ambiguous or require inferential steps to connect them to discriminatory intent are not direct evidence. *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 797 (6th Cir. 2013) (citation omitted).

Plaintiffs argue the record contains direct evidence of discriminatory intent, noting that discriminatory comments and policies constitute direct evidence of discrimination. (Doc. No. 20 at 11-12). Plaintiffs assert Bick made three "discriminatory comments, including: (1) Espinosa's physician had to communicate directly with Defendant and submit their company's disability verification form to Defendant . . . ; (2) Espinosa's therapist verification form was insufficient and would not be accepted (without even seeing it) . . . ; and (3) that ESAs are pets." (*Id.* at 12). Plaintiffs also argue that Defendant's requirement of "an Ohio licensed physician to verify the disability" is discriminatory because it violates "the Fair Housing Laws and Technical Policy T-31 of the Commission." (Doc. No. 20 at 12-13) (citing Doc. No. 20-1).

But no reasonable jury could conclude Defendant acted with an unlawful discriminatory motive from any of these statements or policies without drawing further inferences. Even when viewed in the light most favorable to Plaintiffs, Bick's assertion that Defendant required documentation directly from a healthcare provider rather than from an applicant falls far short of demonstrating Defendant intended to deny Espinosa's housing application because of her disability. Similarly, the fact that Bick equated Espinosa's ESA with a pet evidences, at most, a lack of understanding of an ESA's therapeutic role. Nothing in that statement constitutes direct evidence of discriminatory intent. *Compare Choices in Cmty. Living, Inc. v. Petkus*, 517 F. App'x 501, 508 n.3 (6th Cir. 2013) (finding statement that "we're not set up for disabilities" was not direct evidence of

discrimination because it "is ambiguous on discriminatory intent and requires an inference to find the same"); *with Aloqaili v. Nat'l Hous. Corp.*, 743 F. Supp. 1264, 1269-70 (N.D. Ohio 1990) (apartment manager's statement that tenant could "go back to [her] country if she didn't like it here" constituted direct evidence of discrimination).

Moreover, regardless of whether Plaintiffs are correct that a housing provider is not permitted to limit disability verification to a licensed physician rather than a more inclusive group of medical providers, the policy Plaintiffs cite does not include such a requirement. (*See* Doc. No. 20 at 12) (citing Doc. No. 20-1). Instead, that policy permits "[v]erification from a licensed medical practitioner," which is defined as a "Licensed Counselor/Therapist," a physician, or a physician's assistant. (Doc. No. 20-1 at 3). Plaintiffs' assertion that this policy is facially discriminatory lacks merit.

**2. Circumstantial evidence**

With no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies. *Hollis,* 760 F.3d at 539. That framework requires a plaintiff first to establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If a plaintiff satisfies that burden, the defendant must articulate a legitimate, nondiscriminatory reason for the challenged conduct. *Id.* at 802-03. The burden then shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.* at 804-05. The ultimate inquiry is "whether the plaintiffs have presented sufficient evidence to permit a reasonable jury to conclude they suffered an adverse housing action under circumstances giving rise to an inference of unlawful discrimination." *Lindsay v. Yates*, 578 F.3d 407, 416 (6th Cir. 2009) (internal quotation marks, alterations, and citations omitted).

To establish a prima facie case of housing discrimination arising from disparate treatment, plaintiffs must show: (1) they were members of a protected class; (2) applied for and were qualified to rent or purchase the housing; (3) were rejected; and (4) the housing remained available. *Mencer v.*

*Princeton Square Apartments*, 228 F.3d 631, 634-35 (6th Cir. 2000) (citation omitted). *See also Mercer v. Edward Rose & Sons, Inc.*, No. 21-11336, 2023 WL 2789621, at *5 (E.D. Mich. Apr. 5, 2023); *Sheppard v. Tai-Chi Kwok*, Case No. 5:18-cv-2832, 2019 WL 2996049, at *4 (N.D. Ohio July 9, 2019); *Choices in Cmty. Living, Inc. v. Petkus*, No. 3:11-CV-19, 2012 WL 1122368, at *6 (S.D. Ohio Apr. 3, 2012), *aff'd,* 517 F. App'x 501 (6th Cir. 2013). If a plaintiff establishes a prima facie case of discrimination, "the defendant must offer a legitimate nondiscriminatory reason for the housing decision made . . . [which] the plaintiff must show . . . is a pretext that masks discrimination." *Mencer*, 228 F.3d at 634

Plaintiffs argue *Mencer* does not apply here because that case dealt with claims brought under 42 U.S.C. §§ 1981 and 1982 as well as § 3604(a), but not to claims brought under § 3604(f). (Doc. No. 20 at 14). Plaintiffs believe the applicable prima facie elements are found in an unpublished case from the Central District of California – *Martinez v. Optimus Props. LLC*, No. 2:17-cv-3581, 2018 WL 6039875 (C.D. Cal. June 6, 2018). (Doc. No. 20 at 11, 15). According to Plaintiffs, *Martinez* requires that a plaintiff prove: (1) she is a member of a protected class; (2) she was qualified to receive certain terms, conditions, or privileges of rental; (3) she was denied those terms, conditions, or privileges; and (4) defendant bestowed the terms, conditions, or privileges to a similarly situated party during the time period relatively near denial to the plaintiff. (*Id.* at 15) (citing *Martinez*, 2018 WL 6039875, at *11-14).

Plaintiffs' argument is not persuasive because it inaccurately represents the holding in *Martinez*. The *Martinez* court applied the Ninth Circuit's prima facie elements only to the plaintiffs' claims of discrimination in violation of § 3604(b). *See Martinez*, 2018 WL 6039875, at *5, *11-14. That court did not conduct a prima facie analysis with respect to the plaintiffs' § 3604(f)(2) discrimination claim, concluding instead that the plaintiffs had failed to carry their burden under Rule 56(c) to cite to any facts in the record. *Id.* at *16. Thus, I decline to adopt Plaintiffs' position

on this issue and hold that the *Mencer* court's formulation of the prima facie elements is binding on this Court.

Defendant argues that Plaintiffs cannot establish a prima facie case under *Mencer*. Defendant claims Espinosa does not have a qualifying disability and was unqualified to rent because they never applied for housing. (Doc. No. 17 at 9, 11, 18-19). Plaintiffs respond that the record shows Espinosa was qualified to rent because they were "gainfully employed and held good jobs, including their current job with the court." (Doc. 20 at 15).

"Being 'qualified to rent' has been defined as 'ready and able to accept defendants' offer to rent or buy." *Mencer*, 228 F.3d at 635 (quoting *Schanz v. Vill. Apartments*, 998 F. Supp. 784, 788 (E.D. Mich. 1998)). Viewing the record in the light most favorable to Plaintiffs, Espinosa's rental history may support an inference that they were financially stable, but not that they were ready and able to accept an offer to rent. Defendant's rental requirements go beyond establishing sufficient income. In making tenancy determinations, Defendant also considers a prospective tenant's credit history, criminal history, employment history, income and assets, the proposed rent, and rental history. (Doc. No. 17-6 at 8-9).

Here, it is undisputed that Espinosa never applied for housing or otherwise relayed information to Defendant establishing their eligibility. Nothing in the record speaks to Espinosa's criminal history, credit worthiness, or income. Thus, the record contains insufficient evidence from which Defendant – or a reasonable jury – could determine whether Espinosa was "qualified" to rent.

Moreover, the record evidence demonstrates Defendant applied the same screening requirements to all individuals seeking housing, regardless of disability status. (*See* Doc. No. 17-2 at 3). Nothing in the record indicates that the requirements "were born of bias or inconsistently applied." Thus, a reasonable jury could not conclude Plaintiffs established a prima facie case of housing discrimination. *Mencer*, 228 F.3d at 635.

Even assuming Plaintiffs could establish a prima facie case of disparate treatment, Defendant has articulated a legitimate, nondiscriminatory reason for not granting an ESA or housing – Espinosa never submitted an application for housing or supporting documentation for an ESA. Thus, Espinosa never completed the ordinary screening procedures required of all prospective tenants. As a result, Defendant was unable to evaluate Espinosa's eligibility for housing or finalize their accommodation request. *See Schanz*, 998 F. Supp. at 789 (finding defendant had "justifiable business reasons" for denying housing where plaintiff failed to meet housing provider's rental requirements).

Further, Espinosa states in their deposition testimony that due to elderly age of their dog, they were seeking a two-bedroom, first-floor apartment. (Doc. No. 17-9 at 23, 42) But the record reveals no such apartment was available – another legitimate, nondiscriminatory reason for not renting to Espinosa. (*Id.* at 23); (Doc. No. 17-11 at 7).

Plaintiffs argue that the record shows Defendant's proffered reasons are pretextual. To show pretext, a plaintiff must prove that the proffered reasons: "(1) had no basis in fact, (2) were not the actual reasons, and (3) were insufficient to explain the action." *Reeves v. Rose*, 108 F. Supp. 2d 720, 726 (E.D. Mich. 2000) (citation omitted).

Plaintiffs argue Defendant's proffered reasons are pretextual because "Espinosa was stonewalled during the application process because of the leasing agent's discriminatory comments and failure to follow up. Consequentially the reasons stated by Defendant are insufficient to explain their action, not the real reason for its action, and have no basis in fact." (Doc. No. 20 at 18).

But it is undisputed fact that a first-floor, two-bedroom unit was unavailable, and that Espinosa never applied for an apartment or provided verification for an ESA. The record does not support the conclusion that these facts are untrue. And Plaintiffs' "mere conjecture that

[Defendant's] explanation is a pretext for intentional discrimination is an insufficient reason to deny summary judgment." *Yates*, 578 F.3d at 421.

Based on the record evidence, a reasonable jury could not conclude Espinosa was subjected to "an adverse housing action 'under circumstances giving rise to an inference of unlawful discrimination.'" *Id.* at 416 (quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 524, 529 (6th Cir. 2007)). Thus, Defendant is entitled to summary judgement on Plaintiffs' housing discrimination claims.

### C. NEGLIGENT TRAINING AND SUPERVISION

Plaintiffs also assert a state-law claim for negligent training and supervision. (Doc. No. 1 at 13-14).

Under Ohio law, to establish a claim for negligent hiring, retention, training, or supervision, a plaintiff must establish:

> 1) the existence of an employment relationship; 2) the employee's incompetence; 3) the employer's actual or constructive knowledge of that incompetence; 4) the employee's act or omission that caused the plaintiff's injuries; and 5) the employer's negligence in hiring, retaining, training, or supervising the employee proximately caused the plaintiff's injures.

*Herndon v. Torres*, 249 F. Supp. 3d 878, 887 (N.D. Ohio 2017) (citing *Sygula v. Regency Hosp. of Cleveland E.*, 64 N.E.3d 458, 471 (Ohio Ct. App. 2016)).

"[A]n underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 913 N.E.2d 939, 944-45 (Ohio 2009) (citation and quotation marks omitted). I concluded above that Plaintiffs failed to identify a genuine dispute of material fact as to their discrimination and failure-to-accommodate claims. Therefore, no reasonable jury could find in their favor on this claim either.

Defendant is entitled to summary judgment on Plaintiffs' negligent supervision and training claim.

### D. Leave to File a Reply

Defendant has filed a motion for leave to file a reply. (Doc. No. 22). Defendant asserts that I should grant its motion because Plaintiffs argue for the first time in their memorandum in opposition that the record contains direct evidence of discrimination. (*Id.* at 2).

I find this argument unpersuasive. Plaintiffs' motion for summary judgment expressly alleges that Defendant's remarks and policies violated the FHA. While Plaintiffs may not have expressly framed that evidence as direct evidence of discrimination, the absence of any burden-shifting analysis in Plaintiffs' summary judgment motion was sufficient to put Defendant on notice that Plaintiffs sought to establish their discrimination claim through direct evidence. Thus, I deny Defendant's motion to file a reply.

## IV. Conclusion

For the reasons stated above, I deny the motion of Plaintiffs Fair Housing Opportunities of Northwest Ohio, Inc. and Silma Espinosa for summary judgment, (Doc. No. 16), and grant the motion of Defendant Edward Rose Development Company, LLC for summary judgment. (Doc. No. 17). Further, I deny Defendant's motion for leave to file a reply. (Doc. No. 22).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge